UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JASON M. HATFIELD, P.A.                                                    PLAINTIFF

v.                                      No. 5:22-cv-05110

CESAR ORNELAS, ET AL.                                                  DEFENDANTS

**OPINION AND ORDER**

Before the Court is Plaintiff Jason Hatfield's ("Hatfield") motion to compel (Doc. 124) as to Cesar Ornelas, Mike McCoy, and Nunez & Associates ("Nunez"). Hatfield filed a brief (Doc. 125) in support of his motion, and Ornelas, McCoy, and Nunez responded jointly (Doc. 135). Hatfield filed a reply (Doc. 139), which the Court did not consider because Hatfield failed to seek leave to reply under the Final Scheduling Order. (Doc. 97, p. 3). For the reasons set forth below, Hatfield's motion will be GRANTED IN PART AND DENIED IN PART.

**I.   Background**

The facts of this case, as alleged, are set forth more fully in the Court's Opinion and Order on Motion to Dismiss (Doc. 63). The Court assumes familiarity with the allegations in this matter.

On March 1, 2023, McCoy, Ornelas, and Nunez (who are represented by the same counsel in this action) produced responses to 64 requests for production submitted to both McCoy and Ornelas and 11 interrogatories submitted to Nunez. (Doc. 124-3). Many, if not most, of these interrogatories were subject to objections, including on grounds of privilege; however, no privilege log was provided. *See generally id.* On March 7, Hatfield sent a "good-faith request" to Defendants' counsel in an attempt to resolve the objections, in which he agreed to narrow a few of his requests. (Doc. 124-1). Counsel then replied on behalf of all defendants on March 15, providing some additional information in response to the narrowed requests but standing by the

1

majority of the previous objections.  (Doc. 124-1, p. 13).  Unable to resolve their differences, the parties now ask the Court to resolve their dispute.  (Docs. 124, 129).

## II.   Privilege Log

Hatfield claims that Defendants here waived their privilege objections by failing to produce privilege logs when they withheld documents for privilege.  (Doc. 125, p. 12).  The Court will not deem the privilege waived.

Federal Rule of Civil Procedure 26(b)(5)(ii) requires parties withholding documents for privilege to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  A privilege log is the most conventional way to provide these descriptions.  As this Court held in *Isham v. Booneville Community Hospital*, however, "it is clearly not an established rule in federal courts that a party's delay or even failure to produce a privilege log constitutes a wholesale waiver of their right to assert privileges over documents subject to a request."  2015 WL 11117159, at *3 (W.D. Ark. April 23, 2015).  Given the central role of lawyer-client relationships in this action, the fact that the entities waiving privilege are lawyers (or law firm employees) and not clients, and the necessarily long time frame of relevance contemplated by a RICO claim, the Court declines to open the floodgates and deem all privilege waived as to these three defendants.

With that being said, Defendants have violated Rule 26(b)(5)(ii).  The Court will determine what sanctions, if any, are appropriate at a later date.

## III.   Specific Requests – Ornelas and McCoy

*Requests for Production 1–2:*

These requests are for "all agreements" (Request 1) and "all contracts" (Request 2) "between you and any lawyer or law firm." (Doc. 124-3, pp. 3–4). [1] Defendants [2] object to the requests as violating attorney-client privilege, state that they are withholding responsive documents due to the privilege, and further object that the requests lack reasonable particularity and are unlimited in time. *Id.* Subject to those objections, McCoy states that he does not believe that he possesses responsive non-privileged documents. *Id.* at 4. Ornelas states that he does not believe that he possesses any responsive documents to Request for Production 2. *Id.* at 29.

Defendants' objections miss the mark. First, attorney-client privilege "ordinarily does not apply to client identity and fee information." *United States v. Sindel*, 53 F.3d 874, 876 (8th Cir. 1995). The Court could not find any law indicating that the attorney-client privilege also shields the attorney's identity. Indeed, many courts have held that "the fact of the attorney-client relationship," which would necessarily entail the identity of the attorney, is not subject to the privilege. *Doe v. Elwood Pub. Sch. Dist.*, 2006 WL 3751315, at *7 (D. Neb. December 18, 2006) (collecting cases). Therefore, the essential contents of a contract to hire a lawyer are not privileged. Absent more specific objections, Defendants have failed to meet their burden to show that the privilege applies to the withheld documents. *See United States v. Ivers*, 967 F.3d 709, 715 (8th Cir. 2020) (burden to show privilege lies with party asserting privilege).

Additionally, the Court does not see how the requests lack reasonable particularity. The requests seek a defined class of documents (contracts or other agreements) entered into with a

---

[1] Because McCoy and Ornelas' responses are substantively identical, the Court cites only to McCoy's responses unless Ornelas' responses are different.

[2] In Section III, "Defendants" refers only to McCoy and Ornelas. In Section IV, "Defendant" refers to Nunez.

3

defined class of entities (lawyers and law firms) in a case which involves allegations of fraudulent agreements with, among others, lawyers and law firms.

As to the lack of a time limitation, the instant matter is a RICO case, and the temporal continuity of the illicit enterprise (which, again, allegedly involves fraudulent agreements with lawyers and law firms) is an element of the cause of action. *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 356 (8th Cir. 2011). However, the Court believes that some kind of time limitation is necessary to maximize the efficiency and relevance of discovery responses. Therefore, the Court will only require defendants to produce responsive documents dating within 10 years from the date Hatfield's claim was filed in this matter, which was June 7, 2022. If Hatfield is able to produce evidence showing that the enterprise began earlier, the Court will consider allowing discovery from earlier periods.

Finally, although Ornelas has represented that he does not believe that he possesses any documents responsive to Request for Production 2, this representation is a technically insufficient answer. "Even if there are no such documents, [a] plaintiff is entitled to a response as required by [Federal Rule of Civil Procedure] 34(b)." *Fishel v. BASF Group*, 175 F.R.D. 525, 531 (S.D. Iowa 1997). And Rule 34 refers to documents in a party's "possession, custody, or control," not just in its possession. Fed. R. Civ. P. 34(a)(1).

**Therefore, McCoy is directed to respond to Requests for Production 1 and 2 as to all responsive contracts and agreements executed on or after June 7, 2012. Ornelas is directed to respond to Request for Production 1 as to all responsive documents dating to on or after June 7, 2012. Ornelas is further directed to respond to Request for Production 2 with any responsive documents dating to on or after June 7, 2012 in his custody or control or to inform Hatfield that he has no such responsive documents in his possession, custody, *or* control.**

4

*Request for Production 7:*

This request is for "all documents relating to advertisements for GROUP OF LEGAL SPECIALTIES." (Doc. 124-3, p. 5).  Defendants object to the request as "vague and ambiguous" because it reaches documents other than the advertisements themselves, unlimited in time and scope, insufficiently particular, irrelevant, and disproportionate to the needs of the case.  *Id.* Subject to the objection, Ornelas states that he does not believe he possesses responsive documents. *Id.* at 30.  In later correspondence, counsel for both Defendants indicated that neither defendant believes he possesses responsive documents.  (Doc. 124-1, p. 14).

The Court will take Defendants' objections in turn.  First, the request is not vague or ambiguous simply because it reaches documents other than the advertisements themselves. Vagueness and ambiguity arise from the reader's inability to interpret a request, not the sweep of an otherwise-comprehensible request.  The proper objection for an inquiry that sweeps too far in scope is overbreadth.  The Court finds persuasive *Brown Bear v. Cuna Mut. Grp.*, 266 F.R.D. 310, 320 (D.S.D. 2009), which held that omnibus phrase like "relating to" or "concerning" does not create impermissible overbreadth where "the omnibus phrase modifies a sufficiently specific type of information, document, or event, rather than large general categories of information or documents."  "[A]dvertisements for GROUP OF LEGAL SPECIALTIES" is sufficiently specific to avoid overbreadth when combined with "relating to."  For the same reason, this request for production is not "unlimited in scope" or "insufficiently particular."

Second, while the Court will place a time limitation on the request, it will be a fairly long one and may be extended.  As addressed under "Requests for Production 1–2," *supra*, the temporal continuity of the alleged illicit enterprise is an element of a RICO claim.  Attached to Hatfield's complaint is a brochure produced by Group of Legal Specialties which instructs funeral home

employees on how to steer potential customers to Group of Legal Specialties.  (Doc. 18-8).  This indicates that Group of Legal Specialties is a part of the machinery within the alleged illicit enterprise; therefore, evidence of Group of Legal Specialties' continuity is relevant to the required showing of continuity for the enterprise as a whole.  (This disposes of the objection to the request's relevance as well.)  Because the continuity of Group of Legal Services' operations is relevant, the Court will allow discovery of all responsive documents dating to on or after June 7, 2012.  If Hatfield can produce evidence that Group of Legal Specialties was in operation before this time, the Court will consider allowing discovery into earlier documents as well.

Finally, the request is not disproportionate to the needs of this case.  Proportionality is determined based on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the information in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Both sides of this dispute allege illegal and fraudulent conduct by lawyers directed towards vulnerable people.  The Court must treat these allegations with the utmost gravity.  Accordingly, the issues at stake in this action are important.

As for the amount in controversy, Hatfield's damages arise from his inability to collect a 1/3 contingent fee on the Recinos family's settlement with J.B. Hunt.  (Doc. 63, pp. 3, 16–17).  In his Motion to Dismiss, separate defendant Noe Mancia represented that the settlement was "substantially higher than any known or advertised settlements ever secured by Mr. Hatfield." (Doc. 36, p. 5).  The highest settlement advertised on Hatfield's website is $2,500,000 for a wrongful death claim.  *Case Results*, JASON M. HATFIELD, P.A. (May 3, 2023, 11:29 AM), https://www.jhatfieldlaw.com/about/case-results/.  Even assuming that Mancia's representation was somewhat exaggerated, Hatfield's damages from the loss of the attorney's lien amount to

6

nearly $1 million *before* accounting for the treble damages and fee shifting available in a civil RICO action.  18 U.S.C. § 1964(c).

As for the parties' relative access to the relevant information, Defendants here appear to have been affiliated with Group of Legal Specialties, whereas Hatfield was not.  Therefore, Defendants are greatly advantaged in access to the relevant information.  The parties' resources are a relative unknown here, but Hatfield would assuredly need to expend more resources in retrieving this information on his own than Defendants would in producing it, even assuming that all of the relevant information could be retrieved without Defendants' cooperation.

As to the importance of the information in resolving these issues, the requested documents certainly will not dispose of the case entirely.  However, as discussed above, information about Group of Legal Specialties' advertising could provide important evidence of the conspiracy's continuity.  As to whether the burden or expense of the discovery outweighs its likely benefit, Defendants have failed to demonstrate any extraordinary burden in producing this relevant evidence, especially in light of the Court's narrowed time period.  Accordingly, this discovery is proportionate to the needs of the case.

Finally, although Defendants represent that they do not believe they possess responsive documents, this representation is technically insufficient for its failure to address responsive documents in Defendants' custody or control.

**Therefore, Defendants are directed to respond to Request for Production 7 with all responsive documents dating to on or after June 7, 2012, or to inform Hatfield that they have no such responsive documents in their possession, custody, or control.**

*Request for Production 8:*

This request is for "all documents relating to Nunez & Associates."  (Doc. 124-3, p. 5).

The defendants object on grounds of ambiguity, vagueness, overbreadth, lack of a time limit,

failure to use reasonable particularity, and disproportionality.  *Id.* at 5–6.  Subject to this objection,

Ornelas produced 12 items of discovery[3] with birthdates redacted.  *Id.* at 31.

The Court finds that this request is facially overbroad.  "[A] document request may be

overly broad on its face if it uses an omnibus term such as 'relating to,' 'pertaining to,' or

'concerning'" and does not "modif[y] a sufficiently specific type of information, document, or

event, rather than large or general categories of information or documents."  *Brown Bear*, 266

F.R.D. at 320.  Relation to Nunez & Associates, an entity for which both Defendants acted as

independent contractors, is too broad of a category in this instance.  Accordingly, the Court will

sustain Defendants' objections to the request as formulated, and Defendants will not be required

to produce any additional responsive documents in their possession, custody, or control.

*Request for Production 9:*

This request is for "all documents relating to or referencing Nunez Law Firm."  (Doc. 124-

3, p. 6).  Defendants object for lack of time limitation, vagueness, ambiguity, overbreadth, lack of

reasonable particularity, disproportionality, and potential violations of the attorney-client and work

product privileges.  *Id.*  Subject to these objections, Ornelas referred Hatfield to the discovery

produced in response to Request for Production 8.  *Id.* at 31.

As to documents "relating to . . . Nunez Law Firm," the Court will sustain the objection for

overbreadth as discussed under "Request for Production 8," *supra*.  As to documents "referencing

---

[3] It is unclear whether these represent 12 separate documents or a lesser number of documents totaling 12 pages.  Hatfield's response to the objection indicates that the discovery produced consisted solely of "a contract for legal representation involving Nunez Law Firm (unsigned) and Kherkher Garcia, LLP[,] dated December 1, 2020."  (Doc. 124-1, p. 3).

Nunez Law Firm," however, the request is not facially overbroad because "referencing" is not an omnibus term along the lines of "relating to," "pertaining to," or "concerning." Rather, "referencing" refers to a narrower class of discovery which specifically mentions the topic at issue. For example, while a gas receipt for business travel on Nunez Law Firm's behalf could conceivably "relate to" Nunez Law Firm, it would not "reference" Nunez Law Firm. Therefore, the second half of the request, for documents "referencing Nunez Law Firm," is not overbroad.[4] For similar reasons, it is not vague, ambiguous, or lacking in reasonable particularity.

As described under "Request for Production 7," *supra*, the Court does not find that the failure to limit this discovery to the facts of the present dispute is disproportional to the case. The Court will, however, limit the request to those documents dating to on or after June 7, 2012. As before, if Hatfield can produce evidence to show that earlier relevant documents exist, the Court will consider allowing additional discovery.

Defendants' privilege objections warrant further analysis. Hatfield takes issue with this objection on the grounds that Defendants are "not attorneys nor are they clients." (Doc. 124-1, p. 3). Defendants argue that, as representatives of a "Mexico-based attorney," their communications with clients qualify for attorney-client privilege. *Id.* at 15. Hatfield takes the position that, because Mr. Nunez is not licensed in the United States, American rules of confidentiality do not apply.

"Where, as here, alleged privileged communications . . . involved foreign attorneys . . ., this court defers to the law of the country that has the 'predominant' or 'the most direct and compelling interest' in whether those communications should remain confidential." *Astra Aktiebolag v. Andrx Pharms., Inc.*, 208 F.R.D. 92, 98 (S.D.N.Y. 2002) (collecting cases). "The

---

[4] Nunez & Associates has admitted that it is the same business concern as Nunez Law Firm. (Doc. 124-3, p. 52). Therefore, the Court also expects Defendants to produce documents referencing "Nunez & Associates."

jurisdiction with the predominant interest is either the place where the allegedly privileged relationship was entered into or the place in which that relationship was centered at the time the communication was sent." *Id.* (internal quotations omitted). In this case, the contract at issue was signed in Springdale, Arkansas, the clients and Defendants had only ever met in Springdale, and the topic of representation was a crash occurring near Springdale. For this reason, it is clear that the relationship was both entered into and centered in the United States. Therefore, the United States has the most, if not the only, "direct and compelling interest" in the continued confidentiality of these communications.

Under American (specifically, Eighth Circuit) law, "[t]he federal common law of attorney-client privilege applies to [a] civil RICO action." *In re Bieter Co.*, 16 F.3d 929, 935 (8th Cir. 1994). Under federal common law, as established by an unpublished rule of evidence known as Supreme Court Standard 503,

> "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client, (1) between himself or his representative and his lawyer or his lawyer's representative, or (2) between his lawyer and his lawyer's representative, or (3) by him or his lawyer to a lawyer representing another in a matter of common interest, or (4) between representatives of the client or between the client and a representative of the client, or (5) between lawyers representing the client."

*Id.* Standard 503 provides that "[a] 'lawyer' is a person authorized, or reasonably believed by the client to be authorized, in any state or nation." Sup. Ct. Standard 503(a)(2). Standard 503 also says that "[a] 'representative of the lawyer' is one employed to assist the lawyer in the rendition of professional legal services." Sup. Ct. Standard 503(a)(3). Here, where McCoy and Ornelas were assisting a Mexican lawyer (whose Mexican law license is not disputed) in speaking to clients, their communications fall within the scope of attorney-client privilege as defined in Standard 503.

Hatfield claims that any attorney-client privilege to which these communications would be entitled is waived by the crime-fraud exception, but Hatfield misunderstands the scope of the exception.  As discussed in the Court's previous Opinion and Order in this matter, the crime-fraud exception "only applies when the client obtained the lawyer's services to commit or plan what the client knew or should have known to be a crime or fraud."  (Doc. 98, p. 5).  Here, there is no indication that the clients in this interaction, the survivors of the accident victims, committed or planned any sort of fraud.  Therefore, attorney-client privilege applies.

The work-product privilege, on the other hand, does not necessarily apply.  The Eighth Circuit has held that the crime-fraud exception applies to work-product privilege as well as attorney-client privilege.  *In re Green Grand Jury Proc.*, 492 F.3d 976, 979–80 (8th Cir. 2007).  Further, it has held that attorney misconduct "may become relevant in cases where a party invokes the crime-fraud exception to discover documents protected by the attorney work product rule."  *In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 642 n.1 (8th Cir. 2002).  Although the Eighth Circuit has not decided the exception's application to the work-product privilege in the case of an innocent client whose lawyer has committed a crime or fraud, several other Circuits have held that the crime-fraud exception can apply based only on attorney misconduct.  *Drummond Co., Inc. v. Conrad & Scherer, LLP*, 885 F.3d 1324, 1337 (11th Cir. 2018) ("We hold that the district court properly concluded that the crime-fraud exception may be applied because illegal or fraudulent conduct by an attorney alone may suffice to overcome attorney work product protection."); *Moody v. I.R.S.*, 654 F.2d 795, 800 (D.C. Cir. 1981) ("An attorney should not be able to exploit the [work product] privilege for ends outside of and antithetical to the adversary system any more than a client who attempts to use the product to advance criminal or fraudulent ends."); *In re Grand Jury Matter #3*, 847 F.3d 157, 165 (3d Cir. 2017) ("A party seeking to apply the crime-fraud exception

must demonstrate that there is a reasonable basis to suspect . . . that the *lawyer or* client was committing or intending to commit a crime or fraud") (emphasis added) (internal alterations omitted).  Absent guidance from the Eighth Circuit, the Court finds this authority persuasive and holds that the crime-fraud exception may defeat work-product privilege where the attorney, but not the client, has participated in a crime or fraud.

To invoke the crime-fraud exception, Hatfield will first need to demonstrate "a factual basis adequate to support a good faith belief by a reasonable person that the crime-fraud exception applies." *BankAmericorp*, 270 F.3d at 642 (internal quotations omitted).  Besides a threshold showing of the fraud itself, this entails "a specific showing that a particular document or communication was made in furtherance of the . . . alleged crime or fraud." *Id.*  But Hatfield and the Court have no idea what "particular documents or communications" are at issue because Defendants have fallen short of their duty under Federal Rule of Civil Procedure 26(b)(5)(ii) to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  A privilege log is the most conventional way to provide these descriptions, but no descriptions in any form were provided.

**Therefore, Defendants are directed to respond to Request for Production 9 as to "documents . . . referencing Nunez Law Firm" dating to on or after June 7, 2012.  Any discovery withheld for privilege must be described in a privilege log or similar document in accordance with Federal Rule of Civil Procedure 26(b)(5)(ii).**

*Requests for Production 10–11:*

These requests are for documents "relating to or referencing" Steve Kherkher or Kherkher Garcia, LLP.  (Doc. 124-3, p. 6).  Defendants object to the requests as vague, ambiguous, unlimited

in time, and not limited to the facts of this case. *Id.* at 6–7. Subject to these objections, McCoy does not believe he possesses documents that are responsive to either request, although he is aware of materials attached to Hatfield's complaint which reference Steve Kherkher and Kherkher Garcia. *Id.* Ornelas stated that he did not believe that he possessed documents responsive to Request for Production 10; in response to Request for Production 11, he referred Hatfield to the discovery he produced in response to Request for Production 8. *Id.* at 31–32. In later correspondence, Defendants represented that they did not believe they possessed responsive documents to either inquiry. (Doc. 124-1, p. 15).

First, the Court does not find these requests vague or ambiguous. In making the vagueness and ambiguity objections, Defendants protest that the requests "reach an unspecified, broader category of documents." (Doc. 124-3, pp. 6–7). Again, Defendants' true objection seems to be to overbreadth, not vagueness or ambiguity. However, the request is not overbroad. Unlike Requests for Production 8 and 9, which called for the broad universe of documents in Defendants' possession "related to" Defendants' sometime employer, these requests pertain to communications with another individual and business for which Defendants did not work and with which Defendants presumably interacted much less frequently. Therefore, as to these defendants, "Steve Kherkher" and "Kherkher Garcia" are sufficiently specific categories of information to avoid overbreadth under *Brown Bear*. This specificity also precludes findings of vagueness or ambiguity. *See Clark v. Unum Grp.*, 2021 WL 4134520, at *6 (D.S.D. September 10, 2021) (use of omnibus terms did not create vagueness or ambiguity where inquiry passed *Brown Bear* test for overbreadth).

Second, the failure to limit discovery to the facts of this case are not objectionable for the reasons stated under "Request for Production 7," *supra*. Like Nunez & Associates, Kherkher and

Kherkher Garcia are alleged members of a conspiracy whose temporal continuity must be proven as part of Hatfield's case. Accordingly, evidence of the alleged conspirators' activities before Hatfield's involvement is relevant to the claims at issue. As before, the Court will limit the scope of discovery to 10 years before the claim was filed unless and until Hatfield produces evidence that the conspiracy between these defendants originated prior to that date.

Finally, the Court again reminds Defendants that although they have disclaimed possession of responsive materials, they also need to produce any responsive materials in their custody or control or disclaim possession, custody, *or* control of any such documents.

**Therefore, Defendants are directed to respond to Requests for Production 10 and 11 with all responsive documents dating to on or after June 7, 2012, or to state that they have no such responsive documents in their possession, custody, or control.**

*Request for Production 12:*

This request is for "all documents relating to payments you received from any lawyer or law firm." (Doc. 124-3, p. 7). Defendants object to the request as unlimited in time, ambiguous, vague, and seeking private financial data to which Hatfield has not demonstrated prima facie entitlement. *Id.*

As detailed under "Request for Production 7," *supra*, the Court finds that a long, but not indefinite, time period is appropriate. The scheme alleged involves fraudulent agreements with lawyers and law firms for profit, and the temporal continuity of the conspiracy is an element of the claim at issue. Accordingly, the Court will allow this request as to documents originating within 10 years of the complaint being filed, and will consider allowing discovery of earlier documents if Hatfield can show that they are relevant.

The claim is not vague or ambiguous.  "Payments you received from any lawyer or law firm" is sufficiently specific that the use of "relating to" does not create vagueness or ambiguity. *See* "Requests for Production 10–11," *supra*.

Finally, the Court can find no case establishing that "private financial data" as a category requires any showing of need or relevance beyond that required for any other discovery. Defendants correctly point out that most district courts in the Eighth Circuit require a dual showing of relevance and compelling need for the discovery of tax returns. *PSK, L.L.C. v. Hicklin*, 2010 WL 2710507 (N.D. Iowa July 8, 2010) (collecting cases).  The Court agrees that Hatfield has not demonstrated the compelling need necessary to produce tax returns, and the Court will not require Defendants to produce tax returns in response to this request.

However, the same heightened standard does not apply to bank statements or checks.  In *United States v. Wilson*, a criminal case, the Eighth Circuit stated that bank records were not "private papers" such that a subpoena could not issue for them.  806 F.2d 171, 175 (8th Cir. 1986). The Eighth Circuit also noted that there was "no 'legitimate expectation of privacy' in negotiable instruments." *Id.* (quoting *United States v. Miller*, 425 U.S. 435, 442 (1976)).  Per *Miller*, "negotiable instruments" include "checks and deposit slips" as well as "financial statements." *Miller*, 425 U.S. at 442.  *Miller* also indicates that the lack of privacy protection for bank records is not limited to criminal cases, pointing to legislative history which requires bank records to be maintained due in part to their "high degree of usefulness in . . . regulatory investigations and proceedings." *Id.* at 442–43.  Therefore, the Court declines to extend the protection afforded to tax records to all of Defendants' financial statements.  If Defendants are concerned about their privacy, they may treat these documents as confidential under the terms of the discovery order (Doc. 137) stipulated to by all parties in this matter.

As to the financial data's relevance, Hatfield has stated that these payments are evidence of "the composition of the enterprise, the continuity of the enterprise, the racketeering activity, and the pattern of racketeering activity." (Doc. 124-1, p. 3). This is a sufficient showing of relevance. Evidence of case-running by Defendants on behalf of lawyers and law firms, even those not named as defendants in this matter, could show the nature and continuity of an enterprise which the other defendants may have joined later. Evidence of previous transactions with other defendants would be still more relevant.

**Therefore, Defendants are directed to respond to Request for Production 12 with all responsive documents dating to on or after June 7, 2012, except that they are not required to produce tax returns.**

*Request for Production 13:*

This request is for "all documents relating to payments you made to or arranged with any funeral home." (Doc. 124-3, p. 7). Defendants object to the request as unlimited in time, ambiguous, and vague as to "relating to payments" and "arranged with." *Id.* McCoy also claims the request is overbroad and disproportionate because McCoy has worked in the funeral home industry for 35 years and sells preplanned funeral products. *Id.* Similarly, Ornelas states that the request is overbroad and disproportionate because Ornelas has an ownership interest in funeral homes. *Id.* at 32.

The Court does not find the request objectionable as to "documents relating to payments you made to . . . funeral homes." The category of "payments made to funeral homes" is sufficiently specific to avoid overbreadth under *Brown Bear* as well as vagueness or ambiguity. The Court will impose a 10-year time limit which can be extended on a showing that earlier responsive documents are relevant; the Court finds that this is sufficient to ensure the relevance of production.

As detailed under "Request for Production 10–11," *supra*, this action deals with important issues and a substantial amount is in controversy. Much of the relevant information will be in the possession of Defendants, meaning that they have easy access to it while Hatfield would not. The parties' resources are relatively unknown, but resolving the allegations of improper payments would make or break a substantial portion of the case against these Defendants. Finally, while the Court appreciates that both McCoy and Ornelas have careers in the funeral industry and there will be a certain burden associated with the discovery, activities in the course of those careers have been called into question such that the Court cannot say that the burden outweighs the benefit. Therefore, the Court will allow discovery as to documents related to payments made by Defendants to funeral homes.

The Court will, however, sustain Defendants' objection as to documents relating to payments "arranged with" funeral homes. "Arranged with" is too vague of a phrase to be "sufficiently specific" under *Brown Bear*. Defendants could potentially be said to have arranged a payment with a funeral home every time they successfully sold a client a funeral product. As written, the interrogatory is vague and overbroad, and the objection will be sustained in part.

**Therefore, Defendants are directed to produce for inspection and copying "all documents relating to payments you made to . . . funeral homes" on or after June 7, 2012.**

*Request for Production 14:*

This request is for "all documents relating to compensation you received from any lawyer or law firm." (Doc. 124-3, p. 7). Defendants object on grounds of ambiguity and vagueness as to "relating to compensation," lack of reasonable time limitations, overbreadth, and disproportionality. *Id.* at 8. Defendants also claim that Hatfield has not demonstrated prima facie entitlement to this "private and personal" financial data. *Id.* This request and the objections to it

are largely duplicative of "Request for Production 12," *supra*, and so the Court will adopt its analysis of that request here. As such, while the Court will impose a 10-year time limitation subject to a showing by Hatfield that relevant documents exist at earlier times, the objections are otherwise overruled.

**Therefore, Defendants are directed to respond to Request for Production 14 as to all responsive documents dating to on or after June 7, 2012, except that they will not be required to produce tax returns.**

*Request for Production 15:*

This request is for "all documents between you and any attorney." (Doc. 124-3, p. 8). Defendants object that the request violates attorney-client privilege and work-product privilege and states that they are withholding documents. *Id.* Hatfield has agreed to limit the request so that it does not include situations where Ornelas and McCoy personally engaged lawyers to represent them in personal matters. (Doc. 124-1, p. 4).

The Court has set out its view of the privilege issues raised by Defendants under "Request for Production 9," *supra*. Some documents between Defendants and the attorneys at Nunez & Associates could fall within the scope of Standard 503 as communications "between [a client's] lawyer and his lawyer's representative." However, it is not clear that Standard 503 would protect communication between Defendants and any other lawyers, as Standard 503 explicitly protects communications "between lawyers representing the client" but says nothing about those between a lawyer and another lawyer's representative. This silence is especially compelling in light of protections for communications "between [the client] himself or his representative and his lawyer or his lawyer's representative" contained within Standard 503. Clearly, the Supreme Court was aware that lawyers utilize representatives, so the fact that the protection for communications

"between lawyers representing the client" does not address the participation of representatives is unlikely to be an oversight.  When combined with the fact that "[t]he attorney-client privilege is narrowly construed," *Ivers*, 967 F.3d at 716, the Court holds that the attorney-client privilege does *not* extend to communications between Defendants and lawyers for whom they were not acting as representatives.  While such communications may be afforded the work-product privilege, Hatfield has raised the crime-fraud exception to that privilege, which will need to be addressed.

Unfortunately, the Court cannot address these issues now, as Defendants have once again failed to provide a privilege log or similar document.  As detailed under "Request for Production 9," *supra*, such a document is required under the Federal Rules of Civil Procedure and necessary to enable the Court and opposing counsel to evaluate claims of privilege.

**Therefore, the Defendants are directed to respond to Request for Production 15 in full, except as to attorneys retained for Defendants' personal matters as conceded by Hatfield.  Any discovery withheld for privilege must be described in a privilege log or similar document in accordance with Federal Rule of Civil Procedure 26(b)(5)(ii).**

*Request for Production 16:*

This request is for "all your diplomas, degrees, and educational certificates." (Doc. 124-3, p. 8).  Defendants object to the request as overly broad, lacking specificity, and unlimited in time, but state their willingness to disclose their education and related degrees.  *Id.*  Hatfield noted that neither Ornelas nor McCoy actually disclosed their education or related degrees. (Doc. 124-1, p. 4).  In response, counsel for Defendants stated that McCoy graduated Edwardsville High School, Illinois, and attended three years of college at Southern Illinois University – Edwardsville.  (Doc. 124-1, p. 16).  Counsel said that he would supplement Ornelas' information.  *Id.*

**To the extent that he has not already, Ornelas is directed to disclose his education and related degrees.**

*Request for Production 17:*

This request is for "all documents relating to or referencing lawsuits filed against you on claim of barratry." (Doc. 124-3, p. 8). Defendants object to the request as including documents protected by attorney-client privilege and work-product doctrine, as well as being vague and ambiguous as to reach and containing no scope or time limitations. *Id.* at 8–9. They state that they are withholding documents. *Id.* at 9.

The Court construes the objection to unlimited scope as an overbreadth challenge. The Court finds that past lawsuits for a certain cause of action are specific-enough "events" under *Brown Bear* to avoid creating overbreadth when combined with the omnibus term "referencing." Due to this specificity, the request is not vague, ambiguous, or unlimited in scope. The Court will implement a 10-year time limitation for the sake of efficiency but is willing to reconsider the length of the limitation upon a showing that earlier documents relevant to this case exist.

The Court discusses the issues of privilege under "Request for Production 9" and "Request for Production 15," *supra*. Insofar as Defendants are withholding documents, they need to produce a privilege log or similar document to allow Hatfield and the Court to evaluate their objections.

**Therefore, the Defendants are directed to respond to Request for Production 17 with all responsive documents dating to on or after June 7, 2012. Any discovery withheld for privilege must be described in a privilege log or similar document in accordance with Federal Rule of Civil Procedure 26(b)(5)(ii).**

*Requests for Production 18–19:*

These requests are for "all communications, documents, payments, compensation, or expenses between you and any funeral home" and "all contracts between you and any funeral home," respectively. (Doc. 124-3, p. 9). McCoy objects to the requests as unlimited in time, overbroad, unduly burdensome, and disproportional to the needs of the case. *Id.* McCoy notes that he has worked in the funeral industry for 35 years and currently sells preplanned funeral products. *Id.* Similarly, Ornelas objects to the requests as overly broad, unduly burdensome, and disproportional to the needs of the case, citing his ownership interest in funeral homes. *Id.* at 34. Hatfield has agreed to limit Request for Production 18 to an eight-year period and Request for Production 19 to a ten-year period. (Doc. 124-1, pp. 4–5).

As discussed under "Request for Production 7," *supra*, a long-but-not-unlimited time frame is appropriate here. The Court finds that Hatfield's new time limitations are of appropriate length.

Request for Production 18 does not appear to be overbroad. It does seek a wide range of documents related to an industry in which both Defendants claim to have participated extensively, but that is insufficient to make an interrogatory overbroad on its face. Discovery is proper as to "matters which are relevant and reasonably calculated to lead to the discovery of admissible evidence." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). Here, where the scheme alleged involves improper coordination between Defendants and funeral homes, and where the continuity of the scheme is at issue, Defendants' communications or financial histories with funeral homes are relevant and reasonably calculated to lead to the discovery of admissible evidence. The fact that a great deal of discovery might be responsive to a request does not make the request overbroad. Request for Production 19, which requests a far narrower category of documents, is likewise not overbroad.

As for undue burden, the Eighth Circuit has stated that the burden at issue must be "objectively quantified" by the party resisting discovery. *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 744 (8th Cir. 2018). While courts have the discretion to find overbreadth based on their common sense and representations made by counsel, *id.*, the representation here is insufficient to make up for the lack of an objective showing. *See id.* at 739, 744 (court properly found undue burden despite lack of objective showing of burden where counsel attempted to perform some of the requested searches in court, producing thousands of reports to the FDA after running only 10% of the requested searches and noting that the search did not cover reports to other entities or the research and follow-up documentation to each report, all of which had also been requested). Therefore, the Court cannot find undue burden on the information presented.

As for the objection to disproportionality, the Court addresses the issue under "Request for Production 7," *supra*. While Request for Production 7 dealt with contacts with lawyers, contacts with funeral homes are also relevant to the scheme at issue here as well as the facts of this particular case. Accordingly, the Court finds that the request is not disproportional.

**Therefore, Defendants are directed to respond to Requests for Production 18 and 19 as limited by Hatfield.**

*Requests for Production 20–21:*

These requests are for "all documents comprising or relating to communications between you and any survivors of accidents" or "between you and any surviving family members of catastrophic accidents." (Doc. 124-3, pp. 9–10). Defendants object to these requests as vague, ambiguous, overbroad, unlimited in time, and potentially violative of the attorney-client privilege. *Id.* at 9–10.

The Court agrees that the requests as written are vague and overbroad in that they sweep in communications with *any* survivors (or victims' survivors) of *any* accidents (or catastrophic accidents, whatever "catastrophic" means).   As written, the requests would cover all communications Defendants have ever had with anyone who has ever gotten in a fender bender, or whose family member has been in a particularly bad wreck, regardless of whether the communications related to the accident or even whether Defendants knew that the accident had happened.  Even without the omnibus term "related to," the requests are overbroad on their faces because car accidents of various kinds are a ubiquitous feature of modern life, meaning that a broad swath of the human population falls into the category of a victim or a victim's relative. Accordingly, Defendants will not be required to respond.

*Request for Production 23:*

This request seeks "all documents and communications with any person having a products liability claim."   (Doc. 124-3, p. 10).   Defendants object that the request is overbroad, disproportional to the needs of the case, and potentially violative of attorney-client privilege.  *Id.* at 10–11.  McCoy states that he does not believe he possesses documents responsive to the request. *Id.* at 11.

As discussed under "Requests for Production 20–21," *supra*, this request raises overbreadth concerns because it could theoretically apply even when Defendants did not know of the products liability claim.  However, the Court ultimately does not find it overbroad, especially given that products liability claims are a much less common feature of day-to-day life than car accidents. Further, the request is not disproportional to the needs of the case.  As detailed under "Request for Production 7," *supra*, this is an important matter with a high dollar amount in controversy and Defendants have access to the relevant materials, whereas Hatfield does not.  While contacts

relating to product liability are less relevant to this particular case than those relating to auto accidents, contacts relating to products liability could still establish Defendants' alleged *modus operandi* in dealing with those who may have legal claims, which is relevant both to determining what happened in this transaction and to determining the nature and continuity of Defendants' enterprise, a fact which Hatfield must prove at trial.

Regarding attorney-client privilege, insofar as Defendants were acting as representatives of a law firm during the communication and the communications were for the purpose of facilitating the rendition of professional legal services to the client, the Court agrees that the communication would be privileged under Standard 503. See "Request for Production 15," supra. Otherwise, it is potentially discoverable.

**Therefore, Defendants are directed to respond to Request for Production 23 in full, except insofar as Defendants were acting as representatives of a law firm during the communication and the communication was for the purpose of facilitating the rendition of legal services to the client. All documents withheld for privilege must be described in a privilege log or similar document in accordance with Federal Rule of Civil Procedure 26(b)(5)(ii). McCoy is directed to produce all such responsive documents in his custody or control or to state that he has no such responsive documents in his possession, custody, or control.**

*Request for Production 24:*

This request seeks "all documents relating to communications with any person contacting you to assist in the resolution of any legal claims." (Doc. 124-3, p. 11). Defendants object on grounds of attorney-client privilege, ambiguity, vagueness, overbreadth, and lack of a time

limitation.  *Id.*  Subject to these objections, McCoy states that he does not believe that he possesses any responsive documents as he understands the request.  *Id.*

The communications themselves are likely to be privileged insofar as either defendant was acting as a representative of Nunez & Associates at the time.  *See* "Request for Production 9," *supra*.  Documents relating to the communications, however, would not necessarily be protected by the privilege.  *Id.*  As to ambiguity, vagueness, and overbreadth, the category of "communications with any person contacting you to assist in the resolution of any legal claims" is a sufficiently specific category of documents to satisfy *Brown Bear* even in the presence of the omnibus term "relating to."  Unlike "communications between you and any survivors of accidents," this category of documents is narrowed by the subject matter of the communications at issue.  Regarding the time limitation, the Court will again impose a 10-year limitation, but is open to reconsidering the limitation if Hatfield can show that earlier responsive documents are relevant.

**Therefore, Defendants are directed to respond to Request for Production 24 with all responsive documents dating to on or after June 7, 2012, except that they need not produce the communications themselves where those communications were made to them in their capacity as representatives of a lawyer or law firm.  Any discovery withheld for privilege must be described in a privilege log or similar document in accordance with Federal Rule of Civil Procedure 26(b)(5)(ii).  McCoy is directed to produce all such responsive documents in his custody or control or to state that he has no such responsive documents in his possession, custody, or control.**

*Request for Production 25:*

This request seeks "all contracts you have executed involving a legal claim." (Doc. 124-3, p. 11). Defendants object to the request as vague, ambiguous, unlimited in scope and time, and potentially violative of attorney-client privilege. *Id.*

The Court does not find this request to be vague or ambiguous. The category of contracts whose subject matter involves a legal claim and which were executed by Defendants is quite specific. As for the attorney-client privilege, the fact of a lawyer-client relationship and the arrangement for paying fees are generally not privileged. *See* "Request for Production 1," *supra*. To the extent that responsive documents contain other privileged information, Defendants are directed to redact that information and note the redacted matter in a privilege log.

Again, the Court will impose a 10-year limitation on the requested discovery, but is open to reconsidering the limitation on a showing that earlier relevant documents exist.

**Therefore, Defendants are directed to respond to Request for Production 25 as to all responsive contracts executed on or after June 7, 2012. Any discovery withheld for privilege must be described in a privilege log or similar document in accordance with Federal Rule of Civil Procedure 26(b)(5)(ii).**

*Request for Production 26:*

This request seeks "all communications with any law firm." (Doc. 124-3, p. 12). Defendants object on grounds of attorney-client and work-product privilege and state that they are withholding documents. *Id.*

The Court's views of attorney-client and work-product privilege in this case are set forth in greater detail under "Request for Production 9" and "Request for Production 15," *supra*. As relevant here, the Court does not believe that communications between Defendants and law firms by which they were not employed fall under the attorney-client privilege unless Defendants were

personally seeking legal assistance for themselves.  *See* "Request for Production 15," *supra*; *see also* Sup. Ct. Standard 503.  To the extent that such communications fall under the work-product privilege but not the attorney-client privilege, the crime-fraud exception may apply.  *See* "Request for Production 15," *supra*.  Further analysis will require the Defendants to produce a privilege log, which they have not yet done.

**Therefore, Defendants are directed to respond to Request for Production 26 in full, except that they are not required to produce communications in which they personally sought legal assistance for themselves.  Any discovery withheld for privilege must be described in a privilege log or similar document in accordance with Federal Rule of Civil Procedure 26(b)(5)(ii).**

*Request for Production 27:*

This request seeks "all communications with any attorney."  (Doc. 124-3, p. 12). Defendants object on grounds of attorney-client and work-product privilege, overbreadth, relevance, and lack of time limitations.  *Id.*  They state that they withhold documents.  *Id.*

As with Request for Production 26, the Court finds that the requested communications are not necessarily privileged unless they involved Defendants personally seeking legal assistance for themselves.  The Court does not believe the request is facially overbroad or irrelevant due to the nature of the alleged conspiracy here, which involved illicit agreements with members of the legal profession.  Again, the Court imposes a 10-year time limitation, subject to change upon a showing that earlier relevant documents exist.

**Therefore, Defendants are directed to respond to Request for Production 27 as to all communications taking place on or after June 7, 2012, except that they are not required to produce communications in which they personally sought legal assistance for themselves.**

**Any discovery withheld for privilege must be described in a privilege log or similar document in accordance with Federal Rule of Civil Procedure 26(b)(5)(ii).**

*Request for Production 28:*

This request is for "all communications with any funeral home." (Doc. 124-3, p. 12). Defendants object on grounds of overbreadth, with McCoy noting his longtime involvement with the funeral home industry and the possibility of attorney-client communications being swept in. *Id.* at 12–13. Similarly, Ornelas cites his ownership of funeral homes and involvement with related trade associations as well as the possibility of attorney-client communications being swept in. *Id.* at 37.

For the reasons stated under "Requests for Production 18–19," *supra*, the Court does not find Request for Production 28 to be overbroad. To the extent that the request for production sweeps in attorney-client communications, the proper course of action is to withhold those communications and note them in a privilege log or similar document.

**Therefore, Defendants are directed to respond to Request for Production 28 in full. Any discovery withheld for privilege must be described in a privilege log or similar document in accordance with Federal Rule of Civil Procedure 26(b)(5)(ii).**

*Request for Production 29:*

This request is for "all communications with any survivors of accidents." (Doc. 124-3, p. 13). Defendants object to the request as unlimited in time, ambiguous, vague, potentially violative of the attorney-client privilege, overly broad, and disproportionate to the needs of the case. *Id.* Subject to these objections, Ornelas represents that he does not believe he possesses responsive documents. *Id.* at 38.

For the reasons discussed under "Requests for Production 20–21," *supra*, this request is overbroad as worded.  Accordingly, Defendants will not be required to respond.

*Request for Production 30:*

This request is for "all communications with anyone having a product liability claim." (Doc. 124-3, p. 13).  Defendants object to the request as vague, ambiguous, overbroad, potentially violative of the attorney-client privilege, unlimited in time and scope, disproportional to the needs of the case, and duplicative of Request for Production 23.  *Id.*  Subject to these objections, Ornelas states that he does not believe he possesses responsive documents.  *Id.* at 38.

Because Request for Production 30 falls within the scope of Request for Production 23, for which production has been ordered, the Court will not require a separate response to Request for Production 30.

*Request for Production 31:*

This request seeks "all communications with anyone having a wrongful death claim." (Doc. 124-3, p. 14).  Defendants object to the request as unlimited in time, vague, ambiguous, overbroad, disproportionate to the needs of the case, unlimited in scope, and potentially violative of the attorney-client privilege.  *Id.*  Subject to the objection, Ornelas states that he does not believe he possesses responsive documents.  *Id.* at 39.

If Defendants were acting as representatives of a law firm during the communication *and* the communications were for the purpose of facilitating the rendition of professional legal services to the client, the Court agrees that the communication would be privileged under Standard 503. See "Request for Production 15," supra.  Otherwise, it is potentially discoverable.  Again, the Court will impose a 10-year time limitation in the absence of a showing that earlier communications are relevant.

**Therefore, Defendants are directed to respond to Request for Production 31 as to all responsive communications taking place on or after June 7, 2012, except insofar as Defendants were acting as representatives of a law firm during the communication and the communication was for the purpose of facilitating the rendition of legal services to the client. All documents withheld for privilege must be described in a privilege log or similar document in accordance with Federal Rule of Civil Procedure 26(b)(5)(ii). Ornelas is directed to produce all such responsive documents in his custody or control or to state that he has no such responsive documents in his possession, custody, or control.**

*Requests for Production 32-33:*

These requests seek "all communications with any surviving family member of Ana Delia Mejia Flores or Flor Maribel Recinos Valle" and "all documents and communications with any surviving family member of Ana Delia Mejia Flores or Flor Maribel Recinos Valle," respectively. (Doc. 124-3, p. 14). Defendants object to the requests as violative of attorney-client privilege and duplicative of each other. *Id.* Subject to those objections, Defendants represent that they do not possess responsive documents. *Id.*

As stated above, insofar as Defendants were acting as representatives of a law firm during the communication *and* the communications were for the purpose of facilitating the rendition of professional legal services to the client, the Court agrees that the communication would be privileged under Standard 503. Otherwise, it is potentially discoverable.

**Therefore, Defendants are directed to respond to Request for Production 31 in full, except insofar as Defendants were acting as representatives of a law firm during the communication and the communication was for the purpose of facilitating the rendition of legal services to the client. All documents withheld for privilege must be described in a**

**privilege log or similar document in accordance with Federal Rule of Civil Procedure 26(b)(5)(ii).  Defendants are directed to produce all responsive documents in their custody or control or to state that they have no such responsive documents in their possession, custody, or control.**

*Requests for Production 34–37:*

This request seeks "all documents and correspondence with Steven Kherkher," "with Kherkher Garcia, LLP," "with Tony Pirani," and "with Pirani Law PA," respectively. (Doc. 124-3, pp. 15–16).  Defendants object to the requests as unlimited in time and seeking documents protected by the work-product doctrine and the attorney-client privilege.  *Id.*  Subject to those objections, Defendants state that they do not believe they possess responsive documents.  *Id.*

As previously discussed, the Court believes that an extended time period is appropriate to show the continuity of the alleged enterprise, and will therefore impose a 10-year time period, subject to extension on a showing that earlier responsive documents exist and are relevant.

As detailed under "Request for Production 15," *supra*, the Court does not believe that communications with law firms for which Defendants were not acting as representatives is protected by the attorney-client privilege under Standard 503.  The applicability of work-product privilege in light of the crime-fraud exception will need to be determined once a privilege log is produced.

**Therefore, Defendants are directed to respond to Requests for Production 34–37 with all responsive documents dating to on or after July 7, 2012.  Any discovery withheld for privilege must be described in a privilege log or similar document in accordance with Federal Rule of Civil Procedure 26(b)(5)(ii).  Defendants are directed to produce all such responsive**

**documents in their custody or control or to state that they have no such responsive documents in their possession, custody, or control.**

*Request for Production 38:*

This request seeks "all documents and correspondence with Cesar Ornelas" from McCoy and "all documents and correspondence with Mike McCoy" from Ornelas. (Doc. 124-3, pp. 16, 41.) Defendants object that the request is overbroad and unduly burdensome given the unlimited time and scope, especially since they have a longstanding personal relationship outside of business matters. *Id.*

For the reasons described under "Requests for Production 18–19," *supra*, the Court finds the overbreadth and undue burden objections insufficient. Defendants have failed to objectively quantify their burden or to show why communications between alleged coconspirators are not broadly relevant. However, in the interest of economy, the Court will limit discovery to a 10-year period unless and until Hatfield can show that earlier responsive documents are relevant.

**Therefore, Defendants are directed to respond to Request for Production 38 with all responsive material dating to on or after July 7, 2012.**

*Requests for Production 42–47:*

These requests seek "all documents and correspondence with Arturo Nunez," "with Kevin Haynes of Kherkher Garcia, LLP," "with Jesus Garcia of Kherkher Garcia, LLP," "with Alfredo Nunez," "with Nunez & Associates," and "with any person of Nunez Law Firm," respectively. (Doc. 124-3, pp. 17–19). Defendants object to all of the requests on grounds of attorney-client and work-product privilege. *Id.* They object to Requests 43 and 44 (concerning Kevin Haynes and Jesus Garcia, respectively) as unlimited in time and overly broad, but represent that they do not believe they possess responsive documents to either request. *Id.* at 18. They object to Request

45 (concerning Alfredo Nunez) as unlimited in scope and time, overly broad, disproportional, and unduly burdensome and state that they are withholding documents. *Id.* They object to Request 46 (concerning Nunez & Associates) as unlimited in time and scope, overbroad, disproportional, and vague as to "associated with," and McCoy states that he is withholding documents. *Id.* at 19. They object to Request 47 (concerning "any person of Nunez Law Firm") as unlimited in time, vague as to "associated with" (although the request for production does not contain the phrase "associated with"), seeking documents not related to the complaint, unduly burdensome, and disproportionate to the needs of the case. *Id.* They state that they are withholding documents. *Id.*

As to the claims of privilege, attorney-client privilege may apply to some responsive documents under Requests for Production 42, 45, 46, and 47, and work-product privilege may apply to all six of these requests. *See* "Request for Production 9" and "Request for Production 15," *supra*. However, the Court cannot evaluate these objections in the absence of a privilege log or similar document, and Defendants have produced no such document. *See id.* The Court therefore lacks sufficient information to sustain a privilege objection at this juncture.

Requests 43 and 44 are not facially overbroad, and Defendants have not made a factual showing of overbreadth. The Court will, again, impose a 10-year time limitation, which may be extended on a showing that earlier responsive material is relevant.

Requests 45 and 46 are also not facially overbroad, and Defendants have made no factual showing of overbreadth or undue burden as to either request. *See* "Requests for Production 18–19," *supra*. As for disproportionality, Defendants have not shown that communications with an alleged coconspirator and its principal are not broadly relevant. Again, however, the Court will impose the 10-year limitation subject to a showing that earlier material is relevant.

Request 47 is not a model of clarity by any stretch of the imagination.  The Court takes Hatfield to mean, and will narrow the request to, "any employee or agent of Nunez Law Firm in their capacity as such."  This clarification adequately addresses any vagueness concerns.  The Court does not find the clarified request to be facially overbroad, and Defendants have made no factual showing of overbreadth or disproportionality. *See* "Requests for Production 18–19," *supra.* Finally, as clarified, the Court does not believe that Request 47 seeks documents not related to the complaint.  Again, Defendants have not shown that communications with the agents and employees of an alleged coconspirator are not broadly relevant.  The Court will impose a 10-year time limit and may lengthen the limit on a showing that earlier material is relevant.

**Therefore, Defendants are directed to respond to Request for Production 42 in full; to respond to Requests for Production 43–46 with all responsive documents dating to on or after June 7, 2012; and to respond to Request for Production 47 as to "any employee or agent of Nunez Law Firm in their capacity as such" with all responsive documents dating to on or after June 7, 2012.  Any discovery withheld for privilege must be described in a privilege log or similar document in accordance with Federal Rule of Civil Procedure 26(b)(5)(ii).   As to Requests for Production 43 and 44 and subject to the time limit, Defendants are directed to produce all responsive documents in their custody or control or to state that they have no responsive documents in their possession, custody, or control.**

*Requests for Production 50:*

This request seeks "your tax returns for the past ten years."  (Doc. 124-3, p. 20).  McCoy objects to the request as disproportional and seeking confidential information to which Hatfield has not shown prima facie entitlement. *Id.*  McCoy states that he is withholding documents. *Id.*

As discussed under "Request for Production 12," *supra*, the discovery of tax returns requires a dual showing of relevance and compelling need, which Hatfield has not made here. Accordingly, Defendants are not required to respond to this request for production.

*Request for Production 51:*

This request seeks "all W-9 tax forms address [sic] to you, Nunez & Associates, or Group of Legal Specialties in the past ten years." (Doc. 124-3, p. 20). Defendants object to the request as overbroad, not seeking relevant evidence, disproportional, and seeking confidential tax information to which Hatfield has not demonstrated prima facie entitlement. *Id.*

Per the IRS, Form W-9 is used "to provide your correct Taxpayer Identification Number (TIN) to the person who is required to file an information request with the IRS to report" certain events, including income paid and real estate transactions. *About Form W-9, Request for Taxpayer Identification Number and Certification*, IRS (March 27, 2023), https://www.irs.gov/forms-pubs/about-form-W-9. While Hatfield argues that the information is relevant as that of RICO co-conspirators, the Court does not believe that the taxpayer identification numbers of Defendants or their associates are relevant to the present case. Accordingly, Defendants are not required to respond to this request for production.

*Request for Production 52:*

This request seeks "all credit card statements for the past ten years." (Doc. 124-3, p. 20). Defendants object to the request as unlimited in scope, disproportionate to the needs of the case, overly broad, unduly burdensome, failing to identify whose credit card statements are sought, and seeking private information with no relevance to the case without Hatfield having shown prima facie entitlement. *Id.* at 20–21. McCoy states that he is withholding documents. *Id.* at 21.

Hatfield's response appears to state that he contemplates "payments . . . made by personal or company credit cards" "by McCoy or Ornelas." (Doc. 124-1, p. 6).

The Court shares Defendants' concerns about proportionality. As previously stated, this action raises important issues and has a high dollar amount in controversy. However, it is unclear that providing ten years of credit card records will give Hatfield access to significantly more relevant information about Defendants' financial dealings than he would glean from his other Requests for Production. It is also unclear what contribution this information would make towards resolving the issues at stake, again considering the extent of discovery already allowed. As it is unclear how much, if any, benefit would inure from allowing this discovery, the burden of producing ten years of information about the minutiae of Defendants' day-to-day financial dealings outweighs any benefit which the Court can see. The objection is sustained.

*Request for Production 58:*

This request seeks "all documents evidencing sums advanced by any attorney or non-attorney to the surviving family members of Ana Delia Mejia Flores or Flor Maribel Recinos Valle." (Doc. 124-3, p. 23). Defendants object to the request as vague, ambiguous, and not limited to the facts of this case, but represent that they do not believe they possess responsive documents. *Id.*

The Court agrees that the statement is somewhat vague as worded, potentially sweeping in payday loans received by the survivors. However, as narrowed by those documents which would likely be in Defendants' possession, custody, or control, the Court finds that the theoretical vagueness or ambiguity of the request does not create an actual obstacle to Defendants' production of any responsive documents. The Court is also unclear as to how this discovery is unrelated to

36

the facts of this case, whose central allegations involve the offering of illicit incentives to the very family members named.

**Therefore, Defendants are directed to respond to Request for Production 58 in full. Defendants are directed to produce all responsive documents in their custody or control or to state that they have no responsive documents in their possession, custody, or control.**

*Request for Production 61:*

This request seeks "all documents itemizing all sums paid by you or which documents are in your possession relating to payments made to Westfield Chapel funeral home." (Doc. 124-3, p. 23). Both Defendants object that the request is unclear and unlimited in time and scope, but McCoy states that he does not believe he possesses responsive documents. *Id.* at 24. In later correspondence, counsel for Defendants represented that neither man believes that he possesses responsive documents. (Doc. 124-1, p. 19).

The Court agrees that the request could have been worded more clearly, but understands it to have two parts: (1) documents itemizing sums paid by Defendants to Westfield Chapel funeral home, and (2) documents in Defendants' possession relating to payments made (not necessarily by Defendants) to Westfield Chapel funeral home. Given the nature of the alleged conspiracy, the lack of scope is not facially problematic. Therefore, the request is proper as clarified, but the Court will again impose a 10-year time limit in the absence of evidence that earlier responsive documents are relevant.

**Therefore, Defendants are directed to respond to Request for Production 61 as to documents in the two identified above by the Court which date to on or after June 7, 2012. As to the first category, Defendants are directed to produce all such responsive documents**

**in their custody or control or to state that they have no such responsive documents in their possession, custody, or control.**

*Request for Production 62:*

This request seeks "all documents itemizing all incentive payments paid by you or which documents are in your possession relating to additional payments to Westfield Chapel funeral home representatives." (Doc. 124-3, p. 24). Defendants object to the request as unlimited in time and scope; undefined, vague, and ambiguous as to "incentive payments;" and unclear. *Id.* Subject to the objections, McCoy represents that he does not believe he possesses responsive documents. *Id.* In later correspondence, counsel for Defendants represented that neither man believes he possesses responsive documents. (Doc. 124-1, p. 19).

Again, the Court takes it to be seeking two related categories of documents: (1) documents itemizing incentive payments made by Defendants to representatives of Westfield Chapel, and (2) documents in Defendants' possession relating to additional payments (not necessarily by Defendants) to representatives of Westfield Chapel. The Court shares Defendants' confusion as to the definition of "incentive payments" and will not attempt to guess at it for purposes of clarifying the request. The second category of documents, which lacks this confusing language, represents a proper request. Accordingly, the Court will allow the request only as to this second category. The Court will also impose a 10-year time limit in the absence of evidence that earlier responsive documents are relevant.

**Therefore, Defendants are directed to respond to Request for Production 62 as to documents in Defendants' possession relating to payments to representatives of Westfield Chapel which date to on or after June 7, 2012. Defendants are directed to produce all**

**responsive documents in their custody or control or to state that they have no responsive documents in their possession, custody, or control.**

*Request for Production 63:*

This request seeks "all documents itemizing all incentive payments paid by you or which documents are in your possession relating to non-funeral expense payments to Westfield Chapel funeral home representatives, including but not limited to payment to use the facilities of Westfield Chapel funeral home on November 25, 2020." (Doc. 124-3, p. 24). Both defendants object that the request is vague and ambiguous as to "incentive payments" and unclear as to "relating to non-funeral expense payments," but McCoy represents that he does not believe he possesses responsive documents. *Id.* In later correspondence, counsel for Defendants represented that neither man believes he possesses responsive documents. (Doc. 124-1, p. 19).

This is yet another inartfully-worded request, and the Court's confusion as to the definition of "incentive payments" remains. The portion of the request dealing with "documents . . . in your possession relating to non-funeral expense payments to Westfield Chapel funeral home representatives, including but not limited to payment to use the facilities of Westfield Chapel funeral home on November 25, 2020," however, is clear. "Relating to non-funeral expense payments" means relating to payments which are not funeral expenses. With this understanding, the latter half of the original request is not objectionable.

**Therefore, Defendants are directed to produce for inspection and copying all documents in their possession relating to non-funeral expense payments to Westfield Chapel funeral home representatives, including but not limited to payment to use the facilities of Westfield Chapel funeral home on November 25, 2020. Defendants are directed to produce**

**all responsive documents in their custody or control or to state that they have no responsive documents in their possession, custody, or control.**

*Request for Production 64:*

As to McCoy, this request seeks "all documents and correspondence relating to or referencing Hatfield's attorney lien." (Doc. 124-3, p. 24). McCoy objects on grounds of attorney-client privilege and work-product doctrine as to materials possessed by counsel of record, but McCoy states that he does not believe he possesses any responsive non-privileged documents. *Id.* at 25.

As to Ornelas, this appears to be a compound request: "Produce for inspection and copying all documents or correspondence relating to or referencing Hatfield's attorney lien. Produce for inspection and copying all business registration documents for any entity for which you have done business in the past ten years." (Doc. 124-3, p. 49). Ornelas objected to the request as compound, confusing, potentially violative of the attorney-client privilege, and overbroad. *Id.*

The Court has addressed the issues of attorney-client and work-product privilege in this matter under "Request for Production 9" and "Request for Production 15," *supra*. Pursuant to Supreme Court Standard 503, the Court will not require Defendants to produce communications with their personally-retained attorneys. Other documents and correspondence, however, must either be produced or noted in a privilege log.

As to the second portion of the request to Ornelas, the "compound" objection is not cognizable as there is no limit on the number of requests for production that the parties may file in this matter. *See* Doc. 96, p. 2 ("The Court will not limit the number of requests for production of documents under Rule 34 of the Federal Rules of Civil Procedure.") The Court also does not find this portion of the request to be confusing on its own.

40

**Therefore, Defendants are directed to respond to Request for Production 64 in full.**

IV.     **Specific Interrogatories – Nunez & Associates**

*Interrogatory 1: "Identify all persons employed by Nunez & Associates."*

Nunez objects to this interrogatory as unlimited in scope and time, but states that current employees include Cesar Ornelas and Cesar Gamboa.  (Doc. 124-3, p. 51).  Hatfield's response to the objection indicates that the relevant time is "for the existence of Nunez & Associates, which, on information and belief, has not been a long time."  (Doc. 124-1, p. 8).  Counsel for Defendant characterizes this as Hatfield attempting to change the interrogatory.  (Doc. 124-1, p. 20).

The Court notes the tension between Defendant's objection that the request is "unlimited in time" and its later objection to Hatfield's proposed lack of a time limit as attempting to change the interrogatory.  While "employed" can be read to refer to either all employees historically or only present employees, it appears that the parties both initially took the interrogatory to refer to all employees historically, so the Court will follow their lead and assume that this reading is the correct one.  As discussed in Section III, *supra*, a long time period is appropriate, but the Court will cap the time period at 10 years unless Hatfield can show that the names of earlier employees are relevant.

**Therefore, Defendant is directed to respond to Interrogatory 1 with the names of all persons employed by Nunez & Associates on or after June 7, 2012.**

*Interrogatory 2: "Identify all persons affiliated with Nunez & Associates."*

Nunez objects that this interrogatory is vague, ambiguous, unclear as to meaning or scope, unlimited as to time, and overbroad.  (Doc. 124-3, pp. 51–52).  Subject to this objection, Nunez states that Alfredo Nunez is a principal and that McCoy and Ornelas have "performed work."  *Id.* at 52.  As with Interrogatory 1, Hatfield's response indicates that the relevant time is "for the

41

existence of Nunez & Associates."  (Doc. 124-1, p. 8).  Hatfield also appears to clarify that "persons affiliated with" means "independent contractors of."  *Id.*

As written, the Court agrees that the interrogatory is objectionable, but the Court believes that Hatfield's characterization of "all independent contractors of Nunez & Associates" represents a proper narrowing. This resolves the Court's concerns about vagueness, ambiguity, and clarity. The Court does not find the request to be overbroad, as Nunez & Associates is a named defendant and two of its apparent contractors are also named defendants, indicating that Nunez & Associates may have carried out its actions in the conspiracy through other contractors as well.  Finally, the Court will again impose a 10-year time limit pending a showing that the names of earlier independent contractors are relevant.

**Therefore, Defendant is directed to respond to Interrogatory 2 with the names of all independent contractors employed by Nunez & Associates on or after June 7, 2012.**

> *Interrogatory 3: "Identify all persons or entities receiving any payment from Nunez & Associates."*

Nunez objects for vagueness, ambiguity, lack of time or scope limitations, and disproportional to the needs of the case. (Doc. 124-3, p. 52).  Subject to the objection, Nunez says that Alfredo Nunez, McCoy, Cesar Gamboa, and Ornelas have received payment.  *Id.*  As with the previous two interrogatories, Hatfield's response to the objections states a time period "for the existence of Nunez & Associates."  (Doc. 124-1, p. 8).

The Court does not find this request to be vague or ambiguous, as its terms are clear.  The Court will again impose a 10-year time limitation, but is open to extending it if Hatfield can show that earlier information is relevant to his claims.

The Court also does not find that the interrogatory is disproportionate to the needs of the case.  As stated above, this is an action which addresses important issues and has a high dollar amount in controversy.  While Hatfield may be able to obtain some of this information requested in this interrogatory through bank records, any payments made by credit card or in cash would not show up in these records.  The movement of money between members of a criminal enterprise is relevant to show the composition and activity of the enterprise.  Finally, because the interrogatory requests only names of entities receiving payment and not documentary corroboration or other details, the benefit of the discovery in determining potential targets of or participants in the conspiracy outweighs the burden of naming those entities which received payment from Nunez & Associates.  Accordingly, the proportionality objection fails.  For similar reasons, the lack of scope limitations is not objectionable because the naming of all relevant entities does not appear to pose a significant burden, and Defendant has not objectively quantified any such burden.

**Therefore, Defendant is directed to respond to Interrogatory 3 as to all persons or entities receiving any payment from Nunez & Associates on or after June 7, 2012.**

*Interrogatory 4: "Identify all authorized persons of Nunez & Associates."*

Nunez objects for vagueness, ambiguity, unclear meaning or scope, lack of time limitations, overbreadth, and disproportionality.  (Doc. 124-3, p. 52).  Subject to the objection, Nunez answered: "Alfredo Nunez.  Depending on the issue, Mike McCoy and Cesar Ornelas may also be authorized to act."  *Id.*  Hatfield's response to the objection indicates that "authorized person" means "agent."  (Doc. 124-1, p. 9).  Again, Hatfield sets the time period as "for the existence of Nunez & Associates."  *Id.*  Defendants maintain that their original response is sufficient.  (Doc. 124-1, p. 20).

The Court agrees with Defendant's apparent reading of "authorized person of" as "person authorized to act on behalf of."  The Court shares Defendant's concerns about overbreadth and will instead narrow it in accordance with Hatfield's apparent definition of "authorized person" as "agent."  As clarified, this interrogatory is not overbroad or disproportional because Nunez & Associates, as a corporation, can only act through individuals.  Therefore, it is important to know whose actions are legally cognizable as Nunez and Associates' actions.  The Court will once again impose a 10-year time limitation unless Hatfield can prove that the identities of earlier agents are relevant.

**Therefore, Defendant is directed to respond to Interrogatory 4 with the identities of all persons or entities who were agents of Nunez & Associates on or after June 7, 2012.**

> *Interrogatory 6: "Identify all law firms with which you have a fee or compensation agreement."*

Nunez objects to this interrogatory as unlimited in time and scope and disproportional to the needs of the case.  (Doc. 124-3, p. 53).  Subject to the objection and "as applicable to the needs of the case," Nunez names "Kherkher Garcia, LLP and Pirani Law."  *Id.*

This interrogatory is not disproportional or overly broad in scope: the allegations here involve fee and compensation agreements between Nunez & Associates and other law firms as a central part of the alleged conspiracy, and Hatfield is entitled to determine the scope of that conspiracy.  However, the Court will again limit the time period to 10 years unless Hatfield can prove the relevance of the identities of firms with earlier agreements.

**Therefore, Defendant is directed to respond to Interrogatory 6 with the names of all law firms with which it entered into a fee or compensation agreement on or after June 7, 2012.**

>*Interrogatory 7: "Identify all states in which Nunez & Associates conducts business."*

Nunez objects to this interrogatory as lacking time restrictions and unclear as to "conducts business." (Doc. 124-3, p. 53). The Court does not find that "conducts business" is unclear, especially as the interrogatory will be answered by a business which presumably knows what its business is. The Court will, however, impose a 10-year time limit unless Hatfield can show that earlier activities are relevant.

**Therefore, Defendant is directed to respond to Interrogatory 7 with all states in which Nunez & Associates conducted business on or after June 7, 2012.**

>*Interrogatory 9: "Identify all banking account institutions in the past 10 years with which you have conducted banking operations."*

Nunez objects to this interrogatory as disproportional to the needs of the case, vague and ambiguous as to "banking operations," unlimited in geographic scope, and seeking information beyond the needs of the case and the scope of Rule 26. (Doc. 124-3, p. 53). Nunez also states that Hatfield has not shown prima facie entitlement to such financial data. *Id.*

As detailed under "Request for Production 12," *supra*, there is no expectation of privacy in bank records, which appear to be Hatfield's ultimate target. *See* Doc. 124-1, p. 10. Nor does there appear to be a proportionality problem, as this interrogatory asks only for the names of banking institutions, which in turn are likely to yield relevant information once the ultimate records are produced. *See* "Request for Production 12," *supra*. Accordingly, the benefit of this discovery outweighs the burden on Defendant of producing the names of its banking institutions. Finally, the Court does not find that "conducts banking operations" is vague or ambiguous.

**Therefore, Defendant is directed to respond to Interrogatory 9 in full.**

45

IT IS THEREFORE ORDERED that Hatfield's Motion to Compel (Doc. 124) is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED this 11th day of May, 2023.

/s/ P. K. Holmes, III

P.K. HOLMES, III
U.S. DISTRICT JUDGE