UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JASON M. HATFIELD, P.A.                                          PLAINTIFF

v.                              No. 5:22-cv-05110

CESAR ORNELAS, ET AL.                                          DEFENDANTS

## OPINON AND ORDER

Before the Court is Plaintiff Jason M. Hatfield, P.A.'s ("Hatfield") motion to compel Tony

Pirani and Pirani Law, PA (collectively, "Pirani") and for a declaration of waiver of attorney-client

privilege.  (Doc. 114).  Hatfield filed a brief (Doc. 115) in support of his[1] motion, and Pirani

responded (Docs. 122, 138).  Hatfield replied (Doc. 140).  For the reasons set forth below,

Hatfield's motion will be GRANTED IN PART AND DENIED IN PART.

### I.   Background

This case (hereinafter "the RICO case") arises from a dispute between lawyers retained in

another case (hereinafter "the accident case").  The Court explains the allegations more fully in

previous docket entries, but will provide a quick summary of events for the reader's convenience.

On November 23, 2020, Flor Maribel Recinos Valle ("Flor Recinos") and Ana Delia Mejia

Flores ("Ana Mejia") were killed when a truck belonging to J.B. Hunt Transportation crossed into

their lane of traffic and rolled over onto their vehicle.  A contract (Doc. 18-3) dated two days later,

on November 25, purports to retain the law firms of Kherkher Garcia and Nunez & Associates to

represent the victims' family members in the accident case.  The plaintiff in this matter, Hatfield,

---

[1] Hatfield brings suit through his corporate entity and is suing Pirani both personally and
through Pirani's corporate entity.  Regardless, because the personal actions of Hatfield and Pirani
are at issue in this litigation, the Court refers to both Hatfield and Pirani as natural persons to
reduce confusion for the reader.

asserts that the families were induced to sign because representatives from the law firms offered to pay the funeral expenses and obtain citizenship for the surviving family members.[2]  Flor Recinos' two grown children, Ever and Laura,[3] were among those who signed the November 25 contract.

On November 30, 2020, Flor Recinos' brother Vidal met with Hatfield.  Vidal was accompanied by Ever, Laura, and Flor's two-year-old daughter.  At the conclusion of the meeting with Hatfield, Vidal, Ever, and Laura signed a contract (Doc. 18-2) for representation in the accident case.

On December 1, 2020, Hatfield received an e-mail from Steve Kherkher of Kherkher Garcia (Doc. 18-5).  The e-mail told Hatfield to "stand down" and included messages from Ever and Laura, purportedly sent at their request, asking to "cancel [Hatfield's] service."  *Id.*  On December 7, 2020, Hatfield asserted a lien of attorney (Doc. 18-7) in the accident case.

Pirani formally appeared in the accident case on May 17, 2021, as co-counsel for the surviving family member plaintiffs.  In April 2022, after learning that a settlement had been reached, Hatfield moved to intervene in the accident case and enforce his lien.  He also sought to depose the plaintiffs.  The plaintiffs, through Pirani and Kherkher, opposed the intervention.  They also sought to quash the depositions, arguing (among other things) that the plaintiffs' attorney-client privilege would likely be violated.

---

[2] In an amended complaint filed after the instant motion, Hatfield also alleges that Nunez & Associates is not a law firm and that the language purporting to retain Kherkher Garcia was added to the contract after it had been signed.  The effect of these allegations on the motion has not been briefed, and the Court declines to address them now.

[3] The Court refers to members of the Recinos family by their first names for clarity and means no disrespect by doing so.

2

While the intervention was being litigated, on June 7, 2022, Hatfield filed the RICO case in this court.  Hatfield alleged a scheme between the defendants to fraudulently obtain legal clients and to prevent Hatfield from enforcing his lien of attorney.

In early December 2022, Hatfield was allowed to depose the plaintiffs in the accident case. Due to some difficulties in coordinating the depositions, they were ultimately noticed by Pirani instead of Hatfield.  The content of the depositions centered on the formation of the two contracts, although other communications were also discussed.

After the depositions were taken, Hatfield moved in this Court to disqualify Pirani from representing Noe Mancia, Flor Recinos' ex-husband, in the RICO case.  (Doc. 87).  Attached to the motion were the transcripts of Laura's deposition and Vidal's first deposition.  (Docs. 87-2, 87-5).  Among other things, Hatfield claimed that Pirani had selectively waived his clients' attorney-client privilege for Pirani's own benefit during the accident-case depositions.  (Doc. 88, p 10).

Pirani's response (Doc. 92) to the motion included Ever's deposition and Vidal's second deposition as exhibits.  (Docs. 92-10, 92-11).  Per Pirani, Hatfield caused Vidal, Ever, and Laura, "all surviving victims of a horrific family tragedy, to have to endure Hatfield's counsel's irrelevant questions and ugly and harassing interrogations."  (Doc. 92, p. 4).  Later, Pirani "respectfully urge[d] this Court to instead review the transcripts in their entirety and form its own conclusions" as to Hatfield's characterization of the testimony.  *Id.* at 10–11.  Pirani also lamented that Hatfield had "prevented the family heirs, even still to this day, from receiving any of the benefit, not even one single cent, of . . . the settlement proceeds from their loved one's wrongful death."  *Id.* at 11. The Court ultimately denied Hatfield's motion without deciding whether the transcripts exonerated Mancia.  (Doc. 98).

On March 28, 2023, Hatfield moved to compel discovery from Pirani and his firm.  (Doc. 114).  The motion asserted that the parties had conferred in good faith and were unable to resolve their disagreement.  (Doc. 114, p. 1).  Accordingly, the motion requested an order directing "the Pirani Defendants to fully respond to all of Hatfield's Interrogatories and Requests for Production."  *Id.* at 2–3.  The motion also requested that the Court find that Pirani waived attorney-client and work-product privilege on a number of theories, including by his conduct during the accident-case depositions, pursuant to the crime-fraud exception, and for failure to timely assert the privileges.  Attached to the motion were the original discovery requests (Doc. 114-1), Pirani's responses (Doc. 114-2), and Hatfield's "good-faith" letter to Pirani claiming that the responses were insufficient (Doc. 114-3).

Pirani's initial response (Doc. 122) denied that Hatfield had made any good-faith effort to meet and confer over the discovery dispute before moving to compel, accusing Hatfield's counsel of "some sort of personal animus" against Pirani.  (Doc. 122, p. 4).  After being granted an extension of time, Pirani filed a full response in opposition (Doc. 138) on April 24.  Pirani stated that he believed that the discovery dispute could be resolved without court intervention, denied that he had waived the privilege, asserted that the waiver claims were unripe, and claimed that he had "reasonably calculated" the due date for his responses and produced them in accordance with that calculation.  (Doc. 138, pp. 1–4).  Attached to this response, and also dated April 24, was a revised set of answers to Hatfield's discovery requests ("the April 24 responses").  These are generally more fulsome and detailed than the original responses.  In at least one instance, an April 24 response included an objection not raised in Pirani's original response.  For each request, Pirani either stood on his prior objection, stated (without waiving prior objections) that he did not believe he had responsive documents, or suggested an action for Hatfield to take (i.e., narrowing a request

4

or convincing JB Hunt to unseal its settlement agreement with the estates).  The preface to the April 24 responses includes a request that Hatfield withdraw his motion and conference with Pirani.

## II.  General Concerns

### *Pre-Filing Procedure*

Pirani argues that Hatfield cannot bring the present motion to compel because Hatfield failed to confer in good faith regarding any alleged deficiencies.  The Court finds that no such conference took place, but that regardless, any attempt to meet and confer would have been futile.

Hatfield first attempted to notify Pirani of a discovery dispute on March 7, when he e-mailed Pirani a letter outlining perceived deficiencies in Pirani's objections.  (Doc. 122, p. 35).  On March 17, when Pirani had not responded, Hatfield's attorney Mark Henry contacted Pirani to ask whether Pirani stood on his objections.  *Id.*  Late that day, which was a Friday, Pirani responded that he never received the discovery demand at issue.  *Id.* at 36.  Pirani also announced that he would be out of state for the next week and unable to review Hatfield's letter until at least the 27th.  *Id.* at 31, 36.  Between the 17th and the 20th, other parties copied on the March 7 e-mail stated that they had not received the e-mail, either.  *Id.* at 36–39.

On March 28, at 11:17 A.M., Hatfield filed the present motion to compel.  Roughly half an hour later, at 11:46 A.M., Pirani wrote to Henry that Pirani would be able to review the discovery letter "by the end of the week and can respond accordingly next week."  (Doc. 122, p. 40.)  A testy exchange of e-mails followed.  Pirani asserted that, by alleging in his motion that counsel had met and conferred over discovery, Hatfield and Henry were disobeying both "the Court's orders regarding discovery procedures in this matter [and] Rule 3.3 of the Arkansas Rules of Professional Conduct."  *Id.* at 21.  He further described the motion as "needlessly hasty and premature" as well

5

as "offensive and unnecessarily personally insulting." *Id.* at 22.  Henry, by contrast, claimed on March 29 that Pirani had "had opportunity to review all documents and pleadings and my extensive, itemized good faith letter.  We have had many email exchanges in which you declared you 'agree to disagree.'" *Id.* at 20.  Later in the exchange, Henry said that Pirani's "statements relating to me lying or making false statements to the Court are incorrect and unprofessional" and that he would "not be withdrawing the motion as you have not changed your position on any substantive matter." *Id.* at 19.

Even if the "many email exchanges" referenced by Henry dealt with this set of discovery requests, those exchanges would not constitute a "good faith effort to resolve the discovery dispute" under this Court's scheduling order, which requires, "at minimum, an in-person or telephone conversation with opposing counsel."  (Doc. 97, p. 1).  However, the Court will excuse the failure to conference in this instance because it finds that a conference would have been futile. *See Berg v. United States*, 2005 WL 8162842, at *1 (D. Minn. Dec. 23, 2005) (failure to meet and confer excused where parties had breakdown in communication such that conference would have been pointless).

The Court has previously described this matter as "a problem case."  (Doc. 113, p. 4:15). The instant lawsuit has been characterized by an unusually high degree of acrimony which occasionally borders on unprofessionalism.  This is reflected in the correspondence between Pirani and Henry attached to Pirani's initial response in opposition (*see* Doc. 122) and in these attorneys' contemporary filings in this case.  These communications, and the fact that prior discovery discussions had (per Henry) repeatedly failed to resolve disagreements, support the idea that a conference would have been futile.  The April 24 responses, which waived no objections, likewise

show that a conference would not have been productive.  Accordingly, the Court finds that an attempt to meet and confer would have been futile.

Additionally, the Court finds that it should reach the merits of this motion in the interest of justice.  *Berg* at *1 (court should waive the conference requirement where prejudice would result from strict compliance).  Discovery in this case involves novel issues of procedure and privilege, and a decision on these matters as to one party impacts all other parties as well as some individuals not before the Court.  Delaying this ruling to allow a long-shot conference would not be in any stakeholder's interest.

The Court will *not*, however, excuse failures to confer going forward.  The issuance of this order means that the Court has now issued over eighty pages' worth of orders *on discovery disputes alone* in this matter.  Although this is a significant case both legally and financially, it is not the only case on this Court's docket.  Out of respect for each other and the Court, all parties in this matter are expected to make earnest efforts to resolve (or at least narrow) discovery disputes among themselves before taxing the limited time and resources of the federal judiciary.

### *Tardy Objections*

Hatfield argues that Pirani has waived his objections by failing to timely submit them.  The Court will excuse the waiver.

A brief timeline of events is helpful here: Hatfield sent the discovery demand in question to Pirani on December 19, 2022.  The next day, December 20, the defendants jointly moved to stay Hatfield's discovery requests.  (Doc. 76).  The day after that, on December 21, the Court granted Defendants' motion and stayed discovery pending a case management hearing set for January 17, 2023.  (Doc. 77).  On January 17, following the case management hearing, the Court lifted the stay.  (Doc. 96).  Pirani responded to Hatfield on February 16, 2023.  (Doc. 114-2).

Federal Rules of Civil Procedure 33 and 34 govern responses to interrogatories and requests for production, respectively.  Each rule provides that responses and objections are due within 30 days of the interrogatories or requests being served.  Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A).  "Any ground [for objection] not stated in a timely objection is waived unless the court, for good cause, excuses the failure."  Fed. R. Civ. P. 33(b)(4), 34(b)(2)(C).  Pirani claims that the 30 days ran from the scheduling conference, when the stay was lifted, making discovery due on February 16.  Hatfield argues that the 30 days began to run after discovery was served, meaning that the time that elapsed before the stay was entered counts towards the 30-day total and the discovery was due on the 15th at the latest.

Although the Court believes Hatfield was correct to account for the previously elapsed time in calculating the due date, it declines to find that Pirani waived privilege by his slightly untimely filing.  Several district courts in this circuit use a six-factor test in determining whether to excuse what would otherwise be a waiver.  *Cargill, Inc. v. Ron Burge Trucking, Inc.*, 284 F.R.D. 421, 426 (D. Minn. 2012); *see also Givens v. St. Louis County*, 2021 WL 6072492, at *3 (E.D. Mo. 2021) (adopting *Cargill* test); *Sellars v. CRST Expedited, Inc.*, 2016 WL 4771087, at *2 (N.D. Iowa 2016) (same).  Those factors are "(1) the length of the delay; (2) the reason for the delay; (3) whether the responding party acted in bad faith or engaged in any dilatory action; (4) whether the requesting party has been prejudiced; (5) whether the request was overly burdensome; and (6) whether waiver would impose a harsh result on the defaulting party."  *Cargill*, 284 F.R.D. at 426.

Applying *Cargill* here, the Court will excuse Pirani's waiver.  First, the length of the delay was a day or two at most.  Second, the reason for the delay was an understandable mistake made in calculating the due date.  Third, because Pirani seems to have been genuinely mistaken, he did not act in bad faith or show dilatory behavior in being slightly late.  Fourth, it is hard to see how a

one- or two-day delay prejudiced Hatfield, given the fact that there were still seven months of discovery left at the time.  Fifth, while Hatfield's requests were not overly burdensome, they were fairly extensive.  Sixth, and perhaps most importantly, waiver of attorney-client privilege in a case about Pirani's conduct as an attorney based on a barely-late filing would be a very harsh result for Pirani.  Further, declaring a waiver would impact the rights of third parties (here, Pirani's clients) and have ramifications for other defendants who also represented those clients.

For these reasons, the Court will excuse Pirani's waiver of his objections.

### Privilege Logs

Hatfield argues that Pirani's privilege objections should be waived for failure to produce a privilege log.  For the reasons discussed in the Court's order on the motion to compel the Nunez Defendants (Doc. 141, p. 2), the Court declines to deem privilege waived based on this omission.  However, because Pirani has violated Federal Rule of Civil Procedure 26(b)(5)(A)(ii), the Court will consider appropriate sanctions at a later date.

### Ripeness of Waiver Claims

Pirani asserts that Hatfield's waiver claims are unripe.  He points to this Court's previous denial of Hatfield's motion to disqualify, which stated that the conflict-of-interest issues surrounding any waiver were best resolved by the court in the accident case.  (Doc. 98, pp. 2–3).  Accordingly, Pirani asks that this Court allow the state court to address the waiver issue first.

The Court does not believe that ripeness is a concern here.  The order denying Hatfield's motion to disqualify was not concerned with whether the privilege had been waived.  Rather, it focused on whether the alleged waiver necessitated Pirani's disqualification from representing Mancia in the RICO case.  (Doc. 98, pp. 2–3).  And the order said that the state court was "in the

best position to determine whether a *conflict* exists" due to the waiver, not whether privilege was waived. *Id.* (emphasis added). Accordingly, the Court will proceed to consider the issue of waiver.

### III. Specific Requests

*Interrogatories 5 and 6*

Interrogatory 5 asks Pirani to "[i]dentify all persons by name, address, and phone number you believe work with or for Nunez Law Firm." (Doc. 114-1, p. 2).[4] Interrogatory 6 asks for the "name and phone number [of] all surviving family members of Ana Delia Mejia Flores." *Id.* Pirani initially provided a mailing address for Arturo Nunez and said that Mejia's survivors could be contacted through counsel. Hatfield then reiterated his request for phone numbers, noting that he would not contact the survivors and needed the numbers to analyze phone records. In the April 24 Responses, Pirani stated that he did not have a telephone number for any employee of Nunez Law Firm or for three of the Mejia survivors who live in El Salvador, but provided telephone numbers for three other Mejia survivors. Pirani also noted that he had only ever represented Mejia's "statutory heirs" and was not providing contact information for Mejia's non-beneficiary family members. (Doc. 138, pp. 37–38).

As to Interrogatory 5, the Court finds that Pirani has responded adequately. Pirani stated that he was only aware of Arturo Nunez and provided the contact information for Nunez given to him by Kherkher Garcia. (Doc. 114-2, p. 5). While the better practice would have been for Pirani to clarify that he did not have Nunez's phone number, Pirani's not having the phone number was a fair implication of his response.

---

[4] For consistency, all page numbers in this opinion refer to the page numbers created by the filing system, not the native pagination of the document.

As to Interrogatory 6, however, the Court finds that Pirani's response was deficient. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Here, Hatfield's claim alleges a scheme to improperly solicit legal clients. It stands to reason that not all persons solicited would become clients, and contacts which did not result in a legal engagement are still relevant to show the scheme. Therefore, Pirani has improperly limited the scope of his response to those individuals who ultimately became clients. **Pirani is therefore directed to respond to the interrogatory as to all surviving family members of Ms. Mejia Flores for whom he has names or contact information or to state that he has no such information.**

*Interrogatory 10*

Interrogatory 10 asks Pirani to name "all banking institutions with which you have personal or business accounts." (Doc. 114-1, p. 3). Pirani objected to the interrogatory as "harassing, argumentative, overly broad, unduly burdensome, [an] invasion of privacy of Pirani and other third parties," irrelevant, and "not proportional to the needs of the case." (Doc. 114-2, pp. 6–7). Hatfield's stated reason for requesting the bank names is to obtain bank records.

Pirani's privacy argument is foreclosed by circuit caselaw. In *United States v. Wilson*, 806 F.2d 171, 175 (8th Cir. 1986), a criminal case, the Eighth Circuit stated that bank records were not "private papers" and that only the bank has standing to object to a subpoena of bank records. *Id.* The Eighth Circuit also noted that there was "no 'legitimate expectation of privacy' in negotiable instruments." *Id.* (quoting *United States v. Miller*, 425 U.S. 435, 442 (1976)). Per *Miller*, "negotiable instruments" include "checks and deposit slips" as well as "financial statements." *Miller*, 425 U.S. at 442. *Miller* also indicates that the lack of privacy protection for bank records is not limited to criminal cases, pointing to legislative history which requires bank records to be

maintained due in part to their "high degree of usefulness in . . . regulatory investigations and proceedings." *Id.* at 442–43.  For these reasons, the Court declines to find that producing the names of his banks will violate Pirani's privacy.

Pirani's other objections similarly lack merit.  The interrogatory is not harassing, argumentative, or unduly burdensome, as it does nothing more than request a handful of readily-available names.  Nor is it overly broad or out of proportion to the needs of the case, which is a high-dollar civil RICO claim in which Pirani's personal and professional conduct have been put in issue.  Finally, Pirani's financial history is relevant to Hatfield's claims under 18 U.S.C. § 1962(a), which forbids income derived from racketeering activity from being used or invested in the operation of an enterprise in interstate commerce, and 18 U.S.C. § 1962(c), which forbids employees or associates of enterprises engaged in or affecting interstate commerce from participating in the activities of that enterprise through a pattern of racketeering.  **Pirani is therefore directed to respond to this interrogatory.**

*Request for Production 1*

Request for Production 1 requests "all contracts or agreements with any surviving family member of Ana Delia Mejia Flores or Flor Maribel Recinos Valle."  (Doc. 114-1, p. 6).  Pirani provided several contracts, designating them as "confidential."  (Doc. 114-2, p. 12).  Hatfield is challenging the "confidential" designation on the grounds that the documents were already provided "in a public proceeding."  (Doc. 114-3, p. 2).  In the April 24 Responses, Pirani asserts that these documents "were provided to the [state court] in camera and were never intended for public disclosure."  (Doc. 138, p. 13).  Pirani claims that Hatfield "seek[s] copies of the contracts for an ulterior purpose unrelated directly to the subject matter of the pending litigation in either state or federal court."  *Id.*

Under the protective order (Doc. 36) issued in this case, a party whose designation of "confidential" is challenged "shall bear the burden of proof on the issue that such information was deserving of the "confidential" designation consistent with the standards of Rule 26, as though the designating party sought a protective order."  (Doc. 137, p. 5).  Under Federal Rule of Civil Procedure 26(c), a protective order may issue "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Pirani, as the party with the burden of proof, has not established that any of these things will befall any party or person as a result of the un-designation of these contracts.  However, as the protective order was entered on the day Pirani submitted his response to Hatfield's Motion to Compel, Pirani may not have been on notice that he needed to bear this burden.[5]  **Accordingly, within 14 days of the entry of this Order, Pirani is directed to show the Court why this production should be designated "Confidential."  In the meantime, the "Confidential" designation will remain.**

*Request for Production 2:*

Request for Production 2 requests "all documents and communications with any surviving family member of Ana Delia Mejia Flores or Flor Maribel Recinos Valle."  (Doc. 114-1, p. 6).  Pirani objected to the request as "overly broad, unduly burdensome, seek[ing] information not relevant to the claims and defenses at issue in this case, seek[ing] documents protected by the attorney client privilege, and . . . not proportional to the needs of the case."  (Doc. 114-2, p. 13).  Hatfield claims that any such privilege was waived because Pirani questioned some of the Recinos heirs about the terms of his engagement during a deposition of those heirs in the state-court case.  Hatfield has agreed to narrow the request to communications relating to Hatfield's engagement,

---

[5] The Court does note, however, that the protective order was entered before Pirani's response was filed.

Hatfield or his law firm, or the existence or fact of Hatfield's lien.  In the April 24 Responses, Pirani argues that the depositions do not waive the privilege because they were court-ordered. However, subject to the narrowed inquiry, Pirani states that he does not believe he is "in possession" of any responsive documents.  (Doc. 138, p. 14).

Pirani's response is technically insufficient.  "Even if there are no such documents, [a] plaintiff is entitled to a response as required by Fed.R.Civ.P. 34(b)."  *Fishel v. BASF Group*, 175 F.R.D. 525, 531 (S.D. Iowa 1997).  And Rule 34 refers to documents in a party's "possession, custody, or control," not just its possession.  Fed. R. Civ. P. 34(a)(1).  To the extent that Pirani has responsive documents in his custody or control, he is obligated to produce them.  If he does not, he needs to tell Hatfield as much.  In case Pirani does have responsive documents in his custody or control, the Court will proceed to resolve his objections.

The privilege objections and Hatfield's waiver arguments pose the most substantial issue here.  The weight of the authority supports Pirani's position that court-ordered disclosure of privileged information does not waive the privilege.  *Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264, 275 (E.D. Va. 2004); *Gov't Guar. Fund of Republic of Finland v. Hyatt Corp.*, 182 F.R.D. 182, 187 (D.V.I. 1998); *Laxalt v. McClatchy*, 116 F.R.D. 438, 455 (D. Nev. 1987); *Chubb Integrated Sys. Ltd. v. Nat'l Bank of Wash.*, 103 F.R.D. 52, 63 n. 2 (D.D.C. 1984)*; but see SEC v. Teo*, 2009 WL 1684467, at *24–25 (D.N.J. June 12, 2009).  Accordingly, the Court does not find that the privilege was waived by the depositions of Laura, Ever, and Vidal.

The Court also does not find that privilege was waived by Pirani's failure to object to Hatfield filing two of the depositions as exhibits in support of his motion to disqualify, or even by Pirani's filing of the other two depositions as exhibits in support of his response.  The attorney-client privilege "belongs to the client, who alone may waive it."  *In re United States*, 590 F.3d

1305, 1310 (Fed. Cir. 2009), *rev'd on other grounds sub nom United States v. Jicarilla Apache Nation*, 564 U.S. 162 (2011).  Here, there is no indication that Laura, Ever, and Vidal, the holders of the privilege, have consented to waiver.  And because Pirani does not represent these clients in the RICO case, his filings in the RICO case cannot be attributed to them such as would constitute waiver.  *See, e.g., Schnell v. Schnall*, 550 F. Supp. 650, 653 (S.D.N.Y. 1982) (attorney's disclosure of privileged material in unrelated proceeding did not waive client's privilege where client was not present at the proceeding and was not shown to have authorized the disclosure).  Accordingly, the Court does not find that either the depositions or their filing in this RICO case waived the privilege.

With that being said, because there is no indication that Pirani's clients consented to the disclosure in the RICO matter, it was inappropriate for Pirani to file the two depositions on the public docket and to acquiesce in Hatfield's filing of the other two.  Filing privileged information unsealed on a public docket "places it in the public domain and is inconsistent with a claim of privilege," even where the filing party subjectively intended that the document's privilege be preserved.  *McGreevy v. CSS Industries, Inc.*, 1996 WL 412813, at *3 (E.D. Penn. July 17, 1996) (citing *Cochran v. St. Paul Fire & Marine Ins. Co.*, 909 F. Supp. 641, 643 n.1 (W.D. Ark. 1995)).  In other words, if Pirani had had the authority to waive the privilege here, the Court would have deemed the filing a waiver.

The Court will separately order that the depositions in question be stricken from the record and excluded as evidence in this matter unless and until Vidal, Ever, and Laura consent to waiver.  Pirani is admonished to take greater care in protecting his clients' confidentiality.

Hatfield makes several other arguments for waiver, but these are unavailing.  One is the crime-fraud exception.  As this Court has explained in the past, only the *client's* crime or fraud

15

can defeat attorney-client privilege.  (Doc. 98, p. 5; Doc. 141, p. 11).  As the clients here have not been accused of wrongdoing, the Court stands by its previous rulings.  Other arguments touch on Pirani's voluntary disclosure and selective waiver.  However, as explained above, Pirani could not unilaterally waive anything, and the disclosures in the accident case were made under court order and do not effect a waiver.  In any event, striking the depositions will help to cure any prejudice Hatfield would have suffered from the disclosure of the confidential matter.

With that being said, the Court cannot determine whether any responsive documents are privileged without knowing anything about the contents.  If Pirani has documents responsive to the narrowed inquiry in his custody or control, he will need to produce a privilege log or similar document pursuant to Federal Rule of Civil Procedure 26(b)(5)(A)(ii).

Pirani's non-privilege objections are meritless.  While the requests are broad in scope, they go to the origin, nature, and quality of Pirani's representation, which are central issues in this matter.  Accordingly, the requests are not irrelevant, overbroad, or disproportional to the needs of the case.  Likewise, there is no indication that these requests pose an undue burden.  The Eighth Circuit has stated that the burden at issue must be "objectively quantified" by the party resisting discovery.  *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 744 (8th Cir. 2018).  Pirani has not quantified the alleged burden.  Accordingly, the Court cannot find undue burden.

**Pirani is therefore directed to produce all documents responsive to Hatfield's narrowed Request for Production 2 which are in his custody or control or to respond that no responsive documents are in his possession, custody, *or* control.  Any documents withheld for privilege must be described in a privilege log or similar document in accordance with Federal Rule of Civil Procedure 26(b)(5)(A)(ii).**

*Requests for Production 5–7:*

16

Requests for Production 5, 6, and 7 request "all documents and correspondence with" Laura, Vidal, and Ever, respectively. (Doc. 114-1, p. 6). Pirani objected to all of these requests as overbroad, unduly burdensome, seeking documents protected by attorney-client privilege, and disproportional to the needs of the case. Pirani also objected to Requests 5 and 7 on relevance grounds. The parties raise the same privilege and waiver arguments as they did with regard to Request 2. Pirani further states that he should not be expected to have "documents and correspondence" with Laura and Ever, who are not fluent in English. He says that he has one responsive communication "with Vidal Recinos relating to his state court deposition" in his possession, but declines to produce it due to privilege concerns. (Doc. 138, p. 16).

As detailed under "Request for Production 2," *supra*, the Court does not find that Pirani has waived attorney-client privilege. With that being said, the Court cannot finally determine whether any responsive documents are privileged without knowing anything about the contents, and the Court knows very little about the contents. The April 24 responses indicate that one piece of correspondence with Vidal was "relating to his state court deposition," but provides no further information from which the Court can conclude that the communication was "made for the purpose of facilitating the rendition of professional legal services to" Vidal. *See* Doc. 141, p. 10 (discussing appropriate standard). Pirani indicates that this is the only responsive document in Pirani's possession but does not address the possibility of responsive documents in Pirani's custody or control. Accordingly, production will still be ordered, even if the lone item which can be "produced" is a privilege log.

Pirani's non-privilege objections are meritless. While the requests are broad in scope, they go to the origin and quality of Pirani's representation, which are both central issues in this matter. Accordingly, the requests are not irrelevant, overbroad, or disproportional to the needs of the case.

17

As for undue burden, not only has Pirani failed to quantify the burden at issue as required by *Vallejo* (discussed above), but he has stated that he possesses very few, if any, responsive documents.  The Court cannot find undue burden on these facts.

**Accordingly, Pirani is directed to respond to Requests for Production 5, 6, and 7 with all responsive documents in his possession, custody, or control, or to inform Hatfield that he has no such responsive documents in his possession, custody, or control.  Any discovery withheld for privilege must be described in a privilege log or similar document in accordance with Federal Rule of Civil Procedure 26(b)(5)(A)(ii).**

*Requests for Production 8, 9, 11, and 12:*

These requests for production are for "all documents and correspondence" with Steve Kherkher (RfP 8); Kherkher Garcia, LLP (RfP 9); Kevin Haynes of Kherkher Garcia, LLP (RfP 11), and Jesus Garcia of Kherkher Garcia, LLP (RfP 12).  (Doc. 114-1, pp. 6–7).  Pirani objected to all four requests as "overly broad, unduly burdensome, seek[ing] information not relevant to the claims and defense at issue in this case, seek[ing] documents protected by the attorney work product privilege, and . . . not proportional to the needs of this case."  (Doc. 114-2, pp. 16–18).  Hatfield has agreed to narrow this request to communications relating to (1) Pirani's engagement, (2) Nunez Law Firm, (3) Nunez & Associates, (4) Mr. Hatfield or his law firm, (5) the existence or fact of Hatfield's lien, and (6) payment of funeral expenses.  In the April 24 Responses, Pirani stood on his privilege objections.  However, he represented that he did not possess any documents relating to his engagement, Nunez Law Firm, or Nunez & Associates besides those which had already been provided.

The request as narrowed is not overbroad.  It is true that "a document request may be overly broad on its face if it uses an omnibus term such as 'relating to,' 'pertaining to,' or 'concerning'"

18

and does not "modif[y] a sufficiently specific type of information, document, or event, rather than large or general categories of information or documents." *Brown Bear v. Cuna Mut. Grp.*, 266 F.R.D. 310, 320 (D.S.D. 2009); *see also* Doc. 141, p. 5 (finding *Brown Bear* persuasive). While the narrowed requests here use "relating to," the categories to which the information relates are sufficiently specific with regard to Pirani; these are not the kind of requests that would be expected to sweep in irrelevant material from the requestee. *Cf.* Doc. 141, p. 8 ("relating to Nunez & Associates" overbroad as to Ornelas and McCoy because they were employed by that entity). Further, the requests are cabined to correspondence with specific individuals. Accordingly, the Court does not find that these requests are overbroad. For the same reasons, the Court also finds that they are relevant.

Likewise, there is no indication that these requests pose an undue burden. The Eighth Circuit has stated that the burden at issue must be "objectively quantified" by the party resisting discovery. *Vallejo*, 903 F.3d at 744. Pirani has not quantified the alleged burden. Accordingly, the Court cannot find undue burden.

The Court finds these requests as narrowed to be proportionate to the case. Proportionality is determined based on "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the information in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). As explained in its previous Order on Motion to Compel, the issues at stake in this action are of utmost importance to the legal profession. (Doc. 141, p. 6). The Court's preliminary research indicated that a lowball estimate for Hatfield's damages would be in the neighborhood of $1 million before treble damages and attorney's fees, and Hatfield's Second Amended complaint indicates pre-trebling, pre-fee

damages in the neighborhood of $9 million.  *See id.*; *see also* Doc. 151, p. 54.  Pirani will naturally

have an easier time than Hatfield in accessing Pirani's own communications.  The communications

requested will help to illuminate the involvement, if any, of the alleged conspirators in the

conspiracy, going to the heart of the case against the defendants.  Taken together, the burden of

this discovery is outweighed by its likely benefit.  Therefore, the Court does not find these requests

to be disproportional.

The Court's view of the work-product privilege is set out more fully in its previous order.

(Doc. 141, pp. 11–12).[6]  The Court cannot yet rule on Pirani's work-product privilege objection

because Pirani has failed to produce a privilege log or similar document as required by Federal

Rule of Civil Procedure 26(b)(5)(A)(ii).

**Therefore, Pirani is directed to respond to Requests for Production 8, 9, 11, and 12 as**

**narrowed by Hatfield with all documents in his possession, custody, or control.  (Doc. 114-3,**

**p. 3).  Any discovery withheld for privilege must be described in a privilege log or similar**

**document in accordance with Federal Rule of Civil Procedure 26(b)(5)(A)(ii).**

*Request for Production 29:*

Request for Production 29 requests "all documents filed in the probate for or on behalf of

the Estate of Ana Delia Mejia Flores."  (Doc. 114-1, p. 8).  Pirani objected to the request on the

grounds that "producing the requested information would violate the Washington County Probate

Court's Order requiring that the filings in that probate case be filed under seal, as the settlement

agreement [with J.B. Hunt] contained a confidentiality provision at the request of J.B. Hunt."

---

[6] The Court would note that, in addition to the authorities listed in its previous order, the
Eighth Circuit has indicated that "a court may conclude that . . . work product is not immune if it
contains inculpatory evidence of the attorney's own illegal or fraudulent activities."  *In re Murphy*,
560 F.2d 326, 336 n.19 (8th Cir. 1977).

(Doc. 114-2, p. 24).  Hatfield argues that only the dollar amount of the settlement is confidential and that the dollar amount is not reflected in all filings in the proceedings.  In the April 24 Responses, Pirani states that he is unwilling to produce this information unless the probate matter is unsealed.

After the parties presented briefing on this issue, Hatfield amended his complaint.  (Doc. 151).  Hatfield now represents that he "subpoenaed the entire case file as between JB Hunt and the Kherkher Defendants and the Pirani Defendants" and has reviewed it in its entirety.  *Id.* at 54–55. Based on his review, he claims to be "prepared to present evidence . . . substantiating an award much larger than the comparatively low amount for which the Kherkher Defendants and Pirani Defendants settled," claiming that the "Kherkher and Pirani Defendants did not perform adequate work to maximize recovery for both estates" but instead "rushed to settle, never taking any depositions of any person."  *Id.* at 55.  Hatfield does not specify from whom he received the case file, what documents it contained, or whether it dealt with the probate case at all.

The Eighth Circuit has indicated that discovery concerning confidential settlement agreements is a matter of the trial court's discretion.  *Malone v. Ameren UE*, 646 F.3d 512, 516 (8th Cir. 2011).  Factors which the trial court may consider include "the remoteness in time of the prior events, the . . . probative value of the proposed discovery, and the potential that discovery could have compromised the confidentiality of the settlement."  *Id.*  Some courts require a heightened showing of relevance before allowing discovery of confidential agreements, while others allow such discovery under the general provisions of Federal Rule of Civil Procedure 26. *Close v. Account Resolution Servs.*, 557 F. Supp. 3d 247, 250 (D. Mass. 2021) (collecting cases).

The Court agrees that "confidentiality agreements regarding such settlements [should] not be lightly abrogated."  *Thomasian v. Wells Fargo Bank, N.A.*, 2013 WL 4498667, at *2 (D. Or.

Aug. 22, 2013) (citation omitted).  In this instance, however, the Court finds that the requested discovery is appropriate despite the confidentiality agreement.  Here, the events at issue are fairly near in time and, more importantly, are directly connected to the case at bar.  The probative value of the proposed discovery would be quite high, as Hatfield's theory of damages rests on the value of the claim in the accident case and the work performed (or not performed) by Pirani and his co-counsel.  Finally, Hatfield represents that he already has the "entire" case file, indicating that the requested discovery will not "compromise" the settlement much more than it has already been compromised.[7]  Accordingly, the Court finds the confidential information to be highly relevant and its discovery to be minimally prejudicial to the parties and non-party stakeholders.

Of course, the probate case itself is sealed, purportedly in its entirety.  Even if, as Hatfield says, not all of the filings contained confidential information, they remain under seal and it is not the place of this Court to second-guess the propriety of the probate court's sealing decisions.  The Arkansas Supreme Court provides an administrative mechanism for obtaining material to which public access is prohibited.  Ark. R. S. Ct. Admin. Order 19, § VIII.  "Any requestor may make a verified written request" for restricted material on one or more of three grounds, including that "reasonable circumstances exist that require deviation from the general provisions" governing sealing.  *Id.* at § VIII(A)(1).  The Court therefore suggests that Hatfield avail himself of this procedure before the probate court.  If the probate court so desires, this Court is willing to file any sealed documents under seal in this RICO matter as well.

---

[7] The fact that a case file has already been produced could potentially make this request for production cumulative or duplicative.  However, as the nature and contents of that case file are unknown, there is currently no basis on which to deem the discovery duplicative.

On the assumption that all responsive documents are under seal, the Court will excuse Pirani's failure to respond to this request.  If Hatfield's inquiries to the probate court reveal that any responsive filings were not under seal, however, he may petition this Court for sanctions.

*Request for Production 30:*

Request for Production 30 requests "all documents to or from representatives of JB Hunt for or on behalf of the Estates of Ana Delia Mejia Flores or Flor Maribel Recinos Valle."  (Doc. 114-1, p. 8).  Pirani objected to the request as "vague, overly broad, unduly burdensome, seek[ing] information not relevant to the claims and defenses at issue in this case, . . . not proportional to the needs of the case," and "requir[ing] production of confidential settlement information."  (Doc. 114-2, pp. 24–25).  In the April 24 Responses, Pirani states that "the request as worded would require production of every single document in a fairly large case file, most of which have no bearing on or relation to any of Plaintiff's claims herein."  (Doc. 138, p. 26).

The Court does not find this request to be vague or overbroad.  It asks for documents sent between JB Hunt and the two Estates, a fairly specific class of documents.  Nor does the Court find it irrelevant or disproportionate, as the conduct of the accident case undergirds Hatfield's theory of damages.  And as discussed under "Request for Production 29," *supra*, <u>the Court finds that the production of confidential settlement information is appropriate here, although the Court will require that any such information be filed under seal.</u>

The question of undue burden is the closest one presented here.  While Pirani has attempted to quantify his undue burden ("production of every single document in a fairly large case file"), Pirani also needs to demonstrate that this burden outweighs the information's beneficial value. *Liguria Foods, Inc. v. Griffith Lab'ys, Inc.*, 309 F.R.D. 476, 479 (N.D. Iowa 2015).  After this motion was briefed, Hatfield obtained "the entire case file as between JB Hunt and the Kherkher

Defendants and the Pirani Defendants," the Estates' attorneys of record.  As such, much of the production could conceivably be duplicative.  However, as the Court is not aware of the contents of the file already in Hatfield's possession, it could be that certain responsive documents (*i.e.*, communications between the attorneys) are not in the file in Hatfield's possession.  Pirani has not shown that the burden of producing one file, even a "fairly large" one, outweighs the benefit to Hatfield of obtaining additional responsive documents.

**Accordingly, Pirani is directed to respond to Request for Production 30 in full.**

*Request for Production 31:*

Request for Production 31 requests "all documents relating to distribution of funds on behalf of the Estate of Ana Delia Mejia Flores, including all communications with surviving family members." (Doc. 114-1, p. 8).  Pirani objected to the request as "unduly burdensome, seek[ing] information not relevant to the claims and defenses at issue in this case, seek[ing] documents protected by the attorney work product privilege, and . . . not proportional to the needs of the case." (Doc. 114-2, p. 25).  Hatfield claims that Pirani waived any privilege by asking about the distribution of funds at the depositions of Ever, Laura, and Vidal, and that a document detailing the distribution was attached to a file in the probate case.  In the April 24 Responses, without waiving any objections, Pirani stated that he did not believe he possessed any responsive documents and was not involved in any family settlement negotiations regarding distribution of the funds.

Pirani's undue burden claim fails due to his failure to quantify the alleged burden. *Vallejo*, 903 F.3d at 744.  As for the relevance claim, Hatfield asserts that the distribution of legal fees implicates the use of the U.S. mails, wire, and radio; that the judge in the accident case was fraudulently induced to allow the distribution of payment to Kherkher Garcia; and that Kherkher

Garcia withheld a distribution of fees to the Nunez Defendants to avoid liability.  (Doc. 151, pp. 19, 24, 50).  Information about the Mejia estate's distribution of funds among the heirs could also provide a comparator to the Recinos estate's distribution, which could indicate whether the Recinos arrangement unduly favored Mancia.  Accordingly, the Court finds that the requested information is relevant.  As to privilege, Pirani has once again failed to provide a privilege log, so the Court is unequipped to make a ruling.  Finally, the Court does not find the discovery request disproportionate to the needs of the case given the high stakes previously detailed, Pirani's relative ease of access, and the fact that the somewhat reduced relevance and benefit still appear to outweigh any burden.

**Therefore, Pirani is directed to respond to Request for Production 31 with all documents in his possession, custody, or control or to state that he has no such documents in his possession, custody, or control.  Any discovery withheld for privilege must be described in a privilege log or similar document in accordance with Federal Rule of Civil Procedure 26(b)(5)(A)(ii).**

*Request for Production 32:*

Request for Production 32 requests "all documents relating to your share of the distribution of funds on behalf of the Estate of Ana Delia Mejia Flores."  (Doc. 114-1, p. 8).  Pirani objected to the request as "vague, overbroad, unduly burdensome, seek[ing] information not relevant to the claims and defenses at issue in this case, seek[ing] documents protected by the attorney work product privilege, and . . . not proportional to the needs of the case" as well as contrary to the probate court's sealing order.  (Doc. 114-2, pp. 26–27).  Hatfield claims that this information will establish the amount Pirani earned for his involvement in the case after Pirani learned of Hatfield's

lien.  In the April 24 Responses, Pirani expressed his willingness to disclose the amount he earned in attorney's fees, but only if the probate case was unsealed.

The Court does not find this request for production overly broad.  The omnibus term "relating to" creates overbreadth if it does not "modif[y] a sufficiently specific type of information, document, or event, rather than large or general categories of information or documents." *Brown Bear*, 266 F.R.D. at 320.  Pirani's share of the distribution of funds, however, is a "sufficiently specific" topic to avoid overbreadth concerns.  Similarly, the specificity of the topic militates against a finding of vagueness.  Pirani's undue burden objection fails because he has again neglected to specify the burden in question.  The information requested is relevant because the source and use of income define the parameters of RICO as a statute.  *See* 18 U.S.C. § 1962.  Accordingly, being a core component of a lawsuit whose monetary and legal significance has already been established, and furthermore presumably being accessible to Pirani and not to Hatfield, the information requested is proportional to the needs of the case.  As for privilege, the Court is unable to make a determination because no log or equivalent document was produced.

Finally, regarding the sealing order in the probate case, the Arkansas Supreme Court has said that "'Sealed' means that the contents of a court record may not be disclosed."  Ark. R. S. Ct. Admin. Order 19, §III(A)(12).  It follows that documents which are not part of a court record are accordingly not part of its contents and may thus be disclosed without offending the sealing order.  If "contents" was read to refer to all of the facts and events referenced in a court record, it would effectively turn every Arkansas sealing order into a gag order, and a gag order carries "a heavy presumption against its constitutional validity."  *N.Y. Times Co. v. United States*, 403 U.S. 713, 714 (1971).  Accordingly, the Court will allow discovery of responsive documents which were not filed in the probate court.

Therefore, Pirani is directed to respond to Request for Production 32 with all responsive documents not filed in the probate court. To the extent that responsive documents were filed in the probate court, Pirani is directed to inform Hatfield of this so that Hatfield can seek their unsealing in the probate court. Any documents withheld for privilege must be described in a privilege log or similar document in accordance with Federal Rule of Civil Procedure 26(b)(5)(A)(ii).

*Requests for Production 33–35 (Pirani), 33–36 (Pirani Law):*

As directed to Pirani personally, Requests for Production 33–35 request "all documents relating to the distribution of funds on behalf of the Estate of Ana Delia Mejia Flores to" Kherkher Garcia, LLP; Nunez and Associates; and Nunez Law Firm; respectively. (Doc. 114-1, pp. 8–9). As directed to Pirani Law PA, Request for Production 33 requests "all documents relating to the distribution of funds on behalf of the Estate of Ana Delia Mejia Flores for Pirani Law PA." (Doc. 114-1, p. 16). Requests for Production 34–36 are identical to Requests for Production 33–35 as directed to Pirani personally. *Id.* at 17.

Pirani objected to all of these requests as "unduly burdensome, seek[ing] information not relevant to the claims and defenses at issue in this case, seek[ing] documents protected by the attorney-client privilege, . . . not proportional to the needs of this case," and "violat[ing] the Washington County Probate Court's Order requiring that the filings in that probate case be filed under seal." (Doc. 114-2, pp. 28–31, 60–65). Subject to those objections, Pirani referred Hatfield to his response to Request for Production 1 and the Initial Disclosures. As with Request 32, Hatfield claims that this information will establish the amounts earned by Defendants from the litigation after they learned of Hatfield's lien. Also as with Request 32, in the April 24 Responses,

Pirani indicates that he would be willing to produce responsive documents if the probate proceedings were unsealed.

As the Court addressed the issues of undue burden, relevance, privilege, proportionality, and sealing under "Request for Production 32," *supra*, and as these requests are substantially similar to that one, the Court reaches the same conclusion.

**Therefore, Pirani is directed to respond to Requests for Production 33–35 (personally) and 33–36 (as Pirani Law) with all responsive documents not filed in the probate court. To the extent that responsive documents were filed in the probate court, Pirani is directed to inform Hatfield of this so that Hatfield can seek their unsealing in the probate court. Any documents withheld for privilege must be described in a privilege log or similar document in accordance with Federal Rule of Civil Procedure 26(b)(5)(A)(ii).**

*Requests for Production 38–42 (Pirani), 39–43 (Pirani Law PA):*

These Requests for Production are for documents relating to expenses charged and costs advanced in the underlying wrongful death case. (Doc. 114-1, pp. 9, 17–18). Specifically:

- Request 38/39 (that is, Request 38 to Pirani personally and Request 39 to Pirani Law, PA) is for "all documents relating to costs advanced associated with the civil case against JB Hunt and related to or on behalf of Estate of Ana Delia Mejia Flores." Pirani objected that it was "vague, seeks information not relevant to the claims and defenses at issue in this case, and is not proportional to the needs of the case." (Doc. 114-2, p. 32).

- Request 39/40 is for "all documents relating to expenses charged for or on behalf of the Estate of Ana Delia Mejia Flores." (Doc. 114-2, p. 32). Pirani objected on grounds of relevance, disproportionality, and the Washington County Probate Court's sealing order.

- Request 40/41 is for "all documents relating to all costs advanced associated with the civil case against JB Hunt and for or on behalf [sic] Estate of Ana Delia Mejia Flores or Flor Maribel Recinos Valle." (Doc. 114-2, p. 33).  Pirani objects on grounds of vagueness, irrelevance, disproportionality, and this request being duplicative of Request 38/39.

- Request 41/42 is for "all documents evidencing sums advanced by your firm or any attorney or non-attorney to the surviving family members of Ana Delia Mejia Flores or Flor Maribel Recinos Valle."  (Doc. 114-2, p. 34).  Pirani objects on grounds of vagueness, irrelevance, and disproportionality.

- Request 42/43 is for "all calculations of money you advanced to survivors of the [sic] Ana Delia Mejia Flores or Flor Maribel Recinos Valle."  (Doc. 114-2, p. 34).  Pirani objected, incorporating by reference his grounds for objection to the previous four requests.  Pirani also represented that insofar as Hatfield was seeking documents to prove a violation of Rule 1.8(e) of the Arkansas Rules of Professional Conduct, Pirani did not possess any such documents.

Hatfield's stated goal is to determine whether funeral or other costs were passed on to the family contrary to Steve Kherkher's representations.

In his April 24 Responses, Pirani stands on his objections, but represents that no funeral expenses were charged to the clients and that Pirani advanced no sums to the clients.  (Doc. 138, p. 29).  Pirani states that he incurred "printing/postage costs and other fees and expenses" which were "properly submitted" to the probate court but indicates that he is unwilling to produce any probate filings unless the seal is lifted.  *Id.*

As a group, the requests are not vague.  Cost advancement is a legal concept with which Pirani, a lawyer, should be familiar.  *See, e.g.*, *Erhart v. U.S.*, 2001 WL 586720, at *3 (D. Minn.

May 29, 2001) (discussing lawyer "recouping his advanced costs from a client's recovery"); *Federal Ins. Co. v. Sammons Fin. Grp., Inc.*, 595 F. Supp. 2d 962, 972 (S.D. Iowa 2009) (discussing insurer's obligation to "advance defense costs"); Ark. R. Prof. Conduct 1.8(e) ("[A] lawyer may advance court costs and expenses of litigation."). Nor are they irrelevant, as Hatfield argues advancing money to clients for non-cost purposes is against the Arkansas Rules of Professional Conduct and Texas criminal law. (Doc. 151, pp. 16–17). Therefore, this discovery could demonstrate a fraudulent purpose on the part of some or all Defendants. Finally, in light of the legal importance and financial impact of this litigation, the relevance of the evidence, and the fact that the relevant documents are easily accessible to Pirani, the Court does not find that the requests are disproportional.

As to request 39/40, Pirani will not be required to produce documents which have been filed in the probate case. The Court will direct him to inform Hatfield whether any responsive documents are filed in the probate case and withheld on that basis.

In the April 24 Responses, Pirani raised attorney-client and work product privilege objections to these requests for the first time. The Court would have greatly preferred for Pirani to raise this objection in the first instance. However, because Pirani's clients, who are not before this Court, hold the attorney-client privilege and jointly hold the work-product privilege, the Court is again constrained from finding waiver based on Pirani's unilateral omission.

**Therefore, Pirani is directed to respond to requests 38–42 (personally) and 39–43 (as Pirani Law) in full, except that Pirani need not produce documents responsive to request 39 (personally) or request 40 (as Pirani Law) that have been filed in the probate court. Any documents withheld for privilege must be described in a privilege log or similar document in accordance with Federal Rule of Civil Procedure 26(b)(5)(A)(ii).**

*Requests for Production 44–46 (Pirani), 45–47 (Pirani Law PA):*

The first of these Requests for Production requests "all documents itemizing all sums paid by you or which documents are in your possession relating to payments made to the Westfield Chapel funeral home." (Doc. 114-1, pp. 10, 18). The second requests "all documents itemizing all incentive payments paid by you or which documents are in your possession relating to additional payments to Westfield Chapel funeral home representatives." *Id.* The third requests "all documents itemizing all incentive payments paid by you or which documents are in your possession relating to non-funeral expense payments to Westfield Chapel funeral home representatives, including but not limited to payments to use the Westfield Chapel funeral home on November 25, 2020." *Id.* Pirani objected to all three as vague and overbroad and to the last two as argumentative, but represented that he possessed no responsive documents to any of these requests. Hatfield asserts[8] that Pirani "surely" has records in his possession relating to payments made to the funeral home. (Doc. 114-3, p. 4). He requests "confirmation that [Pirani] charged back one or more families for the funeral home expenses as part of calculating costs." *Id.* at 4–5. In his April 24 Responses, Pirani objects to Request 44/45 as "improperly duplicative" of Requests 38/39–42/43. (Doc. 138, p. 32). He also reiterates his denial of having ever "made any payments of any nature to Westfield Chapel funeral home." *Id.* at 33.

The Court does not find these requests to be duplicative. For example, payment could have been made directly to the funeral home but not reflected in the clients' bill. **Therefore, Pirani is directed to respond to requests 44–46 (personally) and 45–47 (as Pirani Law) in full.**

*Request for Production 47 (Pirani), 48 (Pirani Law PA):*

---

[8] Hatfield's discussion of these requests for production is labeled "Requests 44–45," but as Pirani objects to all three and Hatfield's rationale applies to all three, the Court will treat this as a typographical error and analyze all three.

This request is for "all documents and correspondence relating to or referencing Hatfield's attorney lien." (Doc. 114-1, pp. 10, 18). Pirani objected on grounds of vagueness, overbreadth, undue burden, lack of particularity, attorney-client privilege, attorney work product privilege, irrelevance, and disproportionality, stating that it would require production of virtually every document filed in this case. (Doc. 114-2, pp. 37–38). Hatfield persists in his request. (Doc. 114-3, p. 5).

As an initial matter, the Court will not require Pirani to produce documents already filed in this RICO case. Pirani may also direct Hatfield to documents filed in the accident case by specifically identifying them (by date, name, and docket number, if possible) instead of producing them in their entirety. And again, the Court will excuse Pirani from producing documents filed in the probate court as long as he lets Hatfield know that some responsive documents were filed in that matter.

While the Court agrees with Pirani that many responsive documents will likely be privileged, Pirani's answer is insufficient. "When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party . . . shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed. R. Civ. P. 26(b)(5). This showing must be made for each "specific document[]." *Lamar Advert. of S.D., Inc. v. Kay*, 267 F.R.D. 568, 575 (D.S.D. 2010). In other words, the lack of a privilege log has again stymied the Court's analysis.

To save time going forward, however, the Court will address Pirani's remaining objections. First, the Court finds that Hatfield's lien of attorney is a sufficiently specific document to avoid

overbreadth despite being modified by the omnibus term "relating to." *Brown Bear*, 266 F.R.D. at 320. This specificity also avoids vagueness and a lack of particularity. Second, the material sought is highly relevant. Hatfield alleges that the defendants conspired to prevent him from enforcing his lien, and the responsive documents could either make or break the conspiracy allegations against certain defendants in this regard. Due to the relevance of the discovery, the high stakes of this action, and Pirani's access to the requested documents, the request is not disproportional, either. Finally, Pirani has failed to quantify the burden as required for a showing of undue burden.

The Court would note that, while Pirani has not shown sufficient cause to sustain a disproportionality or undue burden objection, the Court suspects that many of the responsive documents will be protected by either attorney-client or work-product privilege, and that winnowing out the discoverable documents will likely be a time-consuming process on the part of both parties and the Court. <u>If Hatfield wishes to withdraw this request for production in light of intervening discovery, he should notify Pirani and the Court as soon as possible.</u>

**Therefore, Pirani is directed to respond to Requests for Production 47 (personally) and 48 (as Pirani Law) in full. Any documents withheld for privilege must be described in a privilege log or similar document in accordance with Federal Rule of Civil Procedure 26(b)(5)(A)(ii).**

*Request for Production 48 (Pirani), 49 (Pirani Law PA):*

This request is for "all documents relating to expert witnesses used in the civil case against JB Hunt concerning or on behalf of the Estates of Ana Delia Mejia Flores or Flor Maribel Recinos Valle." (Doc. 114-1, pp. 10, 18). Pirani objected that the request "seeks expert witness related documents that exceed the scope of expert witness discovery provided by Fed. R. Civ. P. 26(a)(2)

and Ark. R. Civ. P. 26(b)(4)," as well as for vagueness, lack of particularity, irrelevance, attorney work product privilege, and disproportionality.

The Court finds that this request is sufficiently particular, as the category of information is very specific and thus can be permissibly modified with the omnibus term "relating to." *Brown Bear*, 266 F.R.D. at 320.  This specificity also precludes a finding of vagueness. *See Clark v. Unum Grp.*, 2021 WL 4134520, at *6 (D.S.D. September 10, 2021) (use of omnibus terms did not create vagueness where inquiry passed *Brown Bear* test).  Further, this material is relevant to Hatfield's theory of damages. *See* "Request for Production 29," *supra*.  Given this relevance and the other factors of disproportionality discussed previously in this order, the Court does not find the request to be disproportional to the needs of this case.

Pirani's reliance on Federal Rule of Civil Procedure 26(a)(2) is misplaced.  Rule 26(a)(2) governs mandatory disclosure of expert witnesses who are retained *for the case at bar*.  Rule 26(a)(2) is inapposite where, as here, the expert whose information is sought has been retained only in a related case. *Cf. In re: First Am. Home Buyers Prot. Corp. Class Action Litig.*, 313 F.R.D. 578, 614 (S.D. Cal. 2016) (expert retained in an action which was later consolidated was not automatically rendered an expert in the consolidated action for purposes of Rule 26).

Finally, the Court cannot rule on Pirani's privilege objection in the absence of a privilege log or similar document.

**Therefore, Pirani is directed to respond to Requests for Production 48 (personally) and 49 (as Pirani Law) in full.  Any documents withheld for privilege must be described in a privilege log or similar document in accordance with Federal Rule of Civil Procedure 26(b)(5)(A)(ii).**

*Requests for Production 50 and 51 (Pirani), 51 (Pirani Law PA):*

As directed to Pirani personally, Request for Production 50 is for "all personal bank statements the [sic] past two years." (Doc. 114-1, p. 11). On both sets of requests, Request for Production 51 is for "all business bank statements the [sic] past two years." *Id.* at 11, 19. Pirani objected that the requests were "harassing, argumentative, overly broad, unduly burdensome, [an] invasion of privacy of Pirani and other third parties, seek[ing] documents subject to the attorney client privilege," irrelevant, and disproportionate. (Doc. 114-2, p. 40). Hatfield argues that payments received and sums advanced in furtherance of the RICO enterprise are relevant to Hatfield's claims. (Doc. 114-3, p. 5). Hatfield does agree to treat the information as confidential. *Id.* In his April 24 Responses, Pirani affirmatively denies participating in a RICO enterprise or making any direct payments to survivors, but states his willingness to reveal the fees he earned if the probate case is unsealed. (Doc. 138, pp. 34–35).

For the reasons discussed in Doc. 154, pp. 15–16, the Court finds that the request for bank account information is neither irrelevant (as it may demonstrate the flow of money among the alleged conspirators) nor an invasion of privacy (as there is no legally cognizable privacy interest in bank statements). Due to its clear relevance and nonprivate nature, the Court does not find the request to be harassing, either. The Court cannot fathom how a plainly worded request for "all bank statements" is argumentative, as it does not assume facts, contain legal conclusions, or otherwise indicate an attempt to pick a fight. The request is not overbroad, as it seeks information only for the time frame of Pirani's involvement in this matter. Pirani has made no quantification of his burden to support an undue burden objection. In light of the relevance and relative ease of obtaining the documents, as well as the other proportionality factors discussed previously, the Court finds the request proportionate to the needs of the case.

As for Pirani's contention that the documents sought are subject to attorney-client privilege, this privilege "ordinarily does not apply to client identity and fee information." *United States v. Sindel*, 53 F.3d 874, 876 (8th Cir. 1995).  As Pirani has made no showing that the indicated information falls into one of the rare exceptions to this proposition, his privilege objection fails.

**Therefore, Pirani is directed to respond to Requests for Production 50 and 51 (personally) and 51 (as Pirani Law) in full, with the understanding that the produced documents will be treated as confidential.**

IT IS THEREFORE ORDERED that Hatfield's motion (Doc. 114) to compel is GRANTED IN PART AND DENIED IN PART.  A separate order will issue striking the depositions of Laura, Ever, and Vidal from the record.  Sanctions will be determined at a later date.

IT IS SO ORDERED this 12th day of July, 2023.

/s/ P. K. Holmes, III

P.K. HOLMES, III
U.S. DISTRICT JUDGE