IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANAS

|  |  |  |
|---|---|---|
| Jason M. Hatfield, P.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 5:22-cv-05110-PKH |
| Michael McCoy, Cesar Ornelas, Nunez & | ) | |
| Associates, Kherkher Garcia, LLP, Steven Kherkher, | ) | |
| Jesus Garcia, Kevin Haynes, Tony Pirani, Pirani | ) | |
| Law PA, and Noe Jesus Mancia Polanco, | ) | |
| individually and as Personal Representative and | ) | |
| Special Administrator for the Estate of Flor Maribel | ) | |
| Recinos Valle, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## KHERKHER DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

Pursuant to Federal Rule of Civil Procedure 12(c), Defendants Kherkher Garcia, LLP ("Kherkher Garcia"), Steven Kherkher, Jesus Garcia, and Kevin Haynes (collectively the "Kherkher Defendants") file this Brief in Support of their Motion for Judgment on the Pleadings and would respectfully show the Court as follows:

## INTRODUCTION

In this lawsuit, Plaintiff Jason M. Hatfield, P.A. ("Hatfield") seeks to recover a contingent fee derived from a hypothetical jury verdict in two wrongful death cases that he indisputably never prosecuted. Hatfield claims he is entitled to recover this hypothetical contingent fee because he briefly had a contractual relationship with three heirs of one of the two decedents. It is undisputed, however, that Hatfield never performed any substantive legal work to prosecute the claims of the three heirs with whom he briefly had a contractual relationship. It is also undisputed that Hatfield never even met, much less had a contractual relationship with any heirs of the other decedent.

Nevertheless, Hatfield claims he is entitled to a share of what a hypothetical jury likely would have awarded the estates of the two decedents if they had actually retained Hatfield and Hatfield had actually prosecuted their cases.

More specifically, Hatfield's Second Amended Complaint alleges that, following a terrible accident that resulted in the tragic deaths of Ana Delia Mejia Flores ("Mejia") and Flor Maribel Recinos Valle ("Recinos"), Defendants and non-lawyers Michael McCoy and Cesar Ornelas fraudulently induced certain heirs of Recinos to enter into an "Attorney Employment Contract" with Defendant Nunez & Associates, which Messrs. McCoy and Ornelas falsely referred to as the "Nunez Law Firm." (ECF Doc. 151 ¶¶ 110-18). Hatfield further alleges that, after these heirs of Recinos entered into this Attorney Employment Contract, Mr. Ornelas made the unilateral decision to engage Kherkher Garcia to prosecute the Recinos wrongful death case. (ECF Doc. 151 ¶¶ 38, 125). According to Hatfield, Mr. Kherkher and Mr. Ornelas have a longstanding relationship during which Mr. Ornelas has referred multiple wrongful death or catastrophic injury cases to Mr. Kherkher in exchange for improper referral fees. (ECF Doc. 151 ¶¶ 76, 106).

Hatfield further alleges that, several days after the heirs of Recinos entered into the Attorney Employment Contract with Nunez & Associates, Recinos' brother, Vidal, and two other heirs of Recinos signed a one-page, fill-in-the-blank contingent fee agreement which granted Hatfield a lien on any recovery in the Recinos wrongful death case (the "Hatfield Contract"). (ECF Doc. 151 ¶¶ 147-51, 155-70; ECF Doc. 151-10). Hatfield claims that, immediately after the Hatfield Contract was signed, he prepared paperwork to have Vidal appointed as the executor of the Recinos estate and stood "ready to perform" various other legal work to prosecute the Recinos wrongful death case. (ECF Doc. 151 ¶¶ 171-176; 312-28). It is undisputed, however, that Hatfield never actually performed any services for the Recinos estate beyond preparing the paperwork to

have Vidal appointed as the executor. (ECF Doc. 151 ¶ 209, 238, 318; ECF Doc. 151-14).  It is also undisputed that Hatfield did not know the Mejia family, no member of the Mejia family ever contacted him seeking representation, no member of the Mejia family ever entered into a contract with him, and he never performed any legal services of any kind for the Mejia estate.

According to Hatfield, he never actually performed any legal work to prosecute the Recinos case because, the day after the Hatfield Contract was signed, Mr. Kherkher contacted him and told him that his firm represented the heirs of Recinos and they no longer wanted Hatfield to represent them.  (ECF Doc. 151 ¶¶ 182, 199-203; ECF Doc. 151-14).  Thereafter, Hatfield ceased communicating with the members of the Recinos family, but, despite performing no services to prosecute the Recinos wrongful death claim, he asserted an attorney lien in the Recinos wrongful death case based on the Hatfield Contract.  (ECF Doc. 151 ¶¶ 169-70, 205, 228, 236-38; ECF Doc. 151-14).

Ultimately, Kherkher Garcia and Defendant Tony Pirani, through his law firm, Pirani Law, PA, prosecuted both the Mejia and the Recinos wrongful death cases and obtained confidential settlements for both estates.  (ECF Doc. 151 ¶¶ 264, 322).  Although the underlying wrongful death cases have been resolved, the state court has not yet resolved Hatfield's attorney lien claim. (ECF Doc. 151 ¶ 239).

With Hatfield's attorney lien claim still pending in state court, Hatfield commenced this action, asserting a panoply of serious fraud-based claims against various parties, including multiple claims under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et seq.*  After the defendants moved to dismiss Hatfield's Original Complaint, Hatfield filed an Amended Complaint.  (ECF Doc. 18).  The various defendants again moved to dismiss the Amended Complaint, and, on November 9, 2022, the Court entered an Opinion and Order granting,

in part, and denying, in part, the defendants' motion to dismiss.  (ECF Doc. 63).  Among other things, the Court concluded Hatfield lacked standing to bring any RICO claims based on his purported loss of the Mejia case because Hatfield failed to allege that "the Mejias approached him seeking representation or had a steady business relationship with his firm . . .."  (ECF Doc. 63 p. 28).  Conversely, the Court concluded Hatfield's loss of his contract with certain heirs of the Recinos estate was a sufficiently concrete financial loss to confer RICO standing.  (ECF Doc. 63 pp. 26-28).

Approximately seven months after the Court's Opinion and Order, Hatfield sought leave to file a Second Amended Complaint.  (ECF Doc. 149).  Among other things, the Second Amended Complaint adds Messrs. Haynes and Garcia as defendants, and it contains new allegations regarding Hatfield's purported injury that were not set forth in the Amended Complaint.  Specifically, the Second Amended Complaint alleges: "Hatfield is entitled an award as calculated from what a jury would have likely decided had these Defendants not rushed to settle . . .."  (ECF Doc. 151 ¶ 325).  In addition, the Second Amended Complaint, again, asserts RICO claims based Hatfield's purported loss of the Mejia case, but it conspicuously fails to address the fundamental defects in those claims that the Court identified in its Opinion and Order.  (ECF Doc. 151 ¶¶ 219-20).  Thus, the injury Hatfield alleges in the Second Amended Complaint is not the loss of the Hatfield Contract, but the loss of an expected contingent fee derived from a hypothetical jury verdict in two cases Hatfield never prosecuted.

As discussed herein, for multiple reasons, all of Hatfield's purported RICO claims should be dismissed for lack of RICO standing.  In addition, even if the Court does not dismiss Hatfield's purported § 1962(c) claim for lack of RICO standing, it should dismiss that claim for failure to allege a pattern of racketeering activity with a sufficient nexus to the alleged RICO enterprise.

Finally, the Court should dismiss all of Hatfield's purported claims against Messrs. Haynes and Garcia because Hatfield's scant, vague, and conclusory allegations against them fail to state any claim upon which relief could be granted.

## APPLICABLE LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) authorizes parties to move for judgment on the pleadings after the pleadings are closed, but early enough not to delay trial.  Fed. R. Civ. P. 12(c). Moreover, Federal Rule of Civil Procedure 12(h)(2)(B) authorizes defendants to raise the plaintiff's failure to state a claim upon which relief can be granted in a Rule 12(c) motion for judgment on the pleadings.  Fed. R. Civ. P. 12(h)(2)(B).  A Rule 12(c) motion for judgment on the pleadings based on the plaintiff's failure to state a claim is evaluated under the same standard as a motion to dismiss under Rule 12(b)(6).  *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  In considering a motion to dismiss for failure to state a claim, the Court must accept the plaintiff's well-pleaded allegations as true.  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).  "This tenet does not apply, however, to legal conclusions or formulaic recitation of the elements of a cause of action; such allegations may be properly set aside."  *Id.* (internal quotations omitted).  "In addition, some factual allegations may be so indeterminate that they require further factual enhancement in order to state a claim."  *Id.* (internal quotations omitted).  Ultimately, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief as a matter of law, the complaint should be dismissed.  *Twombly*, 550 U.S. at 558.

## ARGUMENT AND AUTHORITIES

I.   **ALL OF HATFIELD'S PURPORTED RICO CLAIMS SHOULD BE DISMISSED FOR LACK OF RICO STANDING.**

    A.   **To Establish RICO Standing, a Plaintiff Must Allege a Concrete Financial Loss that was Proximately Caused by a RICO Violation.**

The RICO statute creates a private right of action only for persons who are "injured in [their] business or property by reason of" a substantive RICO violation. 18 U.S.C. § 1964(c); *see also Regions Bank v. J.R. Oil Co.*, 387 F.3d 721, 728 (8th Cir. 2004) ("To have standing to bring a civil RICO claim, a plaintiff must have suffered injury 'by reason of' a RICO violation."). To establish injury to business or property, a plaintiff must present "proof of concrete financial loss, and not mere injury to a valuable intangible property interest." *Id.* at 728 (internal quotations omitted). Likewise, injury to a mere expectancy interest is insufficient to confer RICO standing. *Id.* at 728-29; *see also Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998) ("Injury to mere expectancy interests or to an 'intangible property interest' is not sufficient to confer RICO standing"); *Strates Shows, Inc. v. Amusements of Am., Inc.*, 379 F. Supp.2d 817, 826-27 (E.D.N.C. 2005) (collecting cases in which courts "denied RICO standing where plaintiff only alleged injury in terms of an expected award of a contract or lease"). To be sure, the RICO statute "requires the identification of actual, not hypothetical harm . . ." *Regions Bank*, 387 F.3d at 730.

In addition, "[t]he phrase 'by reason of' as used in § 1964(c) means causation under the traditional tort 'requirements of proximate or legal causation, as opposed to mere factual or 'but for' causation.'" *Id.* at 728 (quoting *Bieter Co. v. Blomquist*, 987 F.2d 1319 (8th Cir. 1993)). The Supreme Court has repeatedly held that proximate cause for purposes of RICO standing "requires 'some direct relation between the injury asserted and the injurious conduct alleged.'" *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992)). "A link that is 'too remote,' 'purely contingent,' or 'indirect' is

insufficient." *Id.* (internal quotations omitted). Consequently, RICO standing is lacking when there is a "discontinuity between the RICO violation and the asserted injury," such that the plaintiff's alleged injuries could have resulted from factors other than the defendants' alleged RICO violation. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 459 (2006). As the Supreme Court has explained, "[t]he direct-relation requirement avoids the difficulties associated with attempting to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent factors . . .." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654 (2008). In this way, the proximate-cause requirement of RICO standing prevents RICO cases from devolving into "speculative" proceedings laden with "intricate, uncertain inquiries" regarding the plaintiff's alleged injury. *Anza*, 547 U.S. at 459-60.

      **B.**      **Hatfield Lacks RICO Standing Because His Alleged Injury—the Loss of an Expected Contingent Fee Derived from a Hypothetical Jury Verdict—is not a Concrete Financial Loss that is Directly Traceable to Defendants' Alleged RICO Violations.**

This Court previously held that Hatfield's alleged loss of a contract with three heirs of the Recinos estate constituted a concrete financial loss sufficient to confer RICO standing. (ECF Doc. 63 p. 27-28).[1] In the Second Amended Complaint, Hatfield clarifies that his alleged injury is not simply the loss of his contract with certain members of the Recinos family, but the loss of an expected contingent fee derived from a hypothetical jury verdict. Specifically, Hatfield alleges he "is entitled an award as calculated from what a jury would have likely decided had these Defendants not rushed to settle . . ." (ECF Doc. 151 ¶ 325). This alleged injury, which was not

---

[1] The Court also held that Hatfield lacked standing to bring a RICO claim based on his alleged loss of the Mejia case. (ECF Doc. 63 at p. 28-29). In complete disregard of the Court's prior decision, Hatfield's Second Amended Complaint again purports to assert RICO claims based on his alleged loss of the Mejia case without even attempting to remedy the fundamental deficiencies the Court identified regarding those purported claims. *See infra* pp. 11-13.

asserted in Hatfield's First Amended Complaint, is insufficient to confer RICO standing for two independently compelling reasons.

First, Hatfield's alleged loss of an expected contingent fee derived from a hypothetical jury verdict is not a concrete financial loss. Rather, Hatfield's counterfactual assertion that he would have recovered a contingent fee from a jury verdict in a trial that never happened is precisely the type of inherently hypothetical and speculative injury to a mere expectancy interest that Courts have repeatedly held is insufficient to confer RICO standing. *See, e.g.*, *Regions Bank*, 387 F.3d at 730 (explaining that RICO "requires identification of actual, not hypothetical harm"); *In re Taxable Mun. Bond Sec. Lit.*, 51 F.3d 518, 522 (5th Cir. 1995) ("Anderson's contention that he sustained a lost 'opportunity' to obtain a NIFA loan by itself is too speculative to constitute an injury"); *Circiello v. Alfano*, 612 F. Supp.2d 111, 114 (D. Mass. 2009) (holding the lost opportunity to have realized a $10 million wrongful death award was not a cognizable RICO injury); *Bowen v. Adidas Am., Inc.*, 541 F. Supp.3d 670, 679-80 (D.S.C. 2021) ("Bowen Jr. had a mere expectation of (and not entitlement to) a lucrative professional career, and that expectation— no matter its likelihood—is not a cognizable business or property interest under RICO").

In *Circiello*, for instance, the plaintiff's father died shortly after gall bladder surgery, and the plaintiff alleged her father's surgeon and the hospital system at which the surgery was performed fraudulently dissuaded her family from bringing a wrongful death action. 612 F. Supp.3d at 112-13. After the statute of limitations on the wrongful death claim passed, the plaintiff brought a RICO claim based on "the lost opportunity to have realized a $10 million award . . . for the wrongful death of her father." *Id.* at 114. Specifically, the plaintiff alleged that, absent the defendants' fraud, her mother would have brought a wrongful death action, recovered a $10 million award at trial, and the plaintiff would have ultimately inherited a substantial remnant of

the wrongful death damages award her mother would have received had she timely filed suit. *Id.* The *Circiello* court held that such an alleged injury was far too speculative to confer RICO standing, explaining that the plaintiff's theory was "based on a series of 'what ifs' . . .." *Id.*

The same is true of Hatfield's purported injury. Indeed, Hatfield's theory of injury depends on an endless series of hypothetical "what if" questions that cannot be answered with anything other than speculation. Such questions include: (a) What if Hatfield had ever actually met the Mejia family? (b) What if members of the Mejia family had ever actually retained Hatfield? (c) What if Hatfield's hypothetical clients were appointed as executors of the Recinos and Mejia estates in favor of any other potential executors? (d) What if Hatfield had actually performed the legal work for any heirs of the Recinos or Mejia estates that he alleges he was "ready to perform," but which he indisputably never performed? (e) What if Hatfield's hypothetical clients insisted on settling before trial? (f) What if there was a mistrial? (g) What if a jury found in favor of Hatfield's hypothetical clients? (h) What if a jury found against Hatfield's hypothetical clients? (i) What if a jury found Hatfield's clients were contributorily negligent? (j) What if a jury verdict in favor of Hatfield's hypothetical clients was reversed on appeal? At most, Hatfield has alleged that he had an expectation of recovering a contingent fee if all of these, and endless other, hypothetical questions ultimately resolved in his favor. Such speculative and hypothetical injury simply cannot confer RICO standing. For this reason alone, the Court should dismiss all of Hatfield's purported RICO claims.

Second, even if Hatfield's loss of an expected contingent fee derived from a hypothetical jury verdict could rise to the level of a concrete financial loss, Hatfield has not alleged, and could never prove, a direct causal link between his alleged injury and the defendants' purported RICO violations. As noted above, the Supreme Court has repeatedly held that the proximate-cause

element of RICO standing imposes a substantial "directness" burden on the plaintiff's pleading and proof obligations.  *See Anza*, 547 U.S. at 457-58; *Hemi Group, LLC*, 559 U.S. at 9-10. Underlying this burden is the commonsense recognition that "[b]usinesses lose and gain customers for many reasons . . .." *Anza*, 547 U.S. at 459.  So in *Anza*, so here:  Hatfield could have lost his expected contingent fee for any number of reasons.  To make this problem more concrete, consider "the speculative nature of the proceedings that would follow if [Hatfield] were permitted to maintain [his] claim." *Id.*  To establish that he lost an expected contingent fee derived from a hypothetical jury verdict, Hatfield would have to prove, among other things, that: (a) he would have secured the Mejia case despite having never even met anyone in the Mejia family; (b) the heirs of the Mejia estate and the three heirs of the Recinos estate with whom Hatfield briefly had a contract would not have terminated Hatfield's engagement for a reason other than defendants' alleged RICO violations; (c) Hatfield's hypothetical clients would have been appointed executors of the Mejia and Recinos estates in favor of any other potential executors; (d) Hatfield would have competently performed the legal work for his hypothetical clients that he alleges he was "ready to perform;" (e) Hatfield's hypothetical clients would not have settled before trial; (f) a hypothetical jury would have rendered a verdict in favor of Hatfield's hypothetical clients; and (g) the hypothetical jury verdict would have been affirmed on appeal.  As the Supreme Court explained in *Anza*, "[t]he element of proximate causation . . . is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation." *Anza*, 547 U.S. at 460.

This Court previously held that, under the Supreme Court's decision in *Bridge*, Hatfield pleaded actual injury—namely, the loss of his contract with three heirs of the Recinos estate.  (ECF Doc. 63 pp. 27-28).  Although *Bridge* discussed the proximate causation requirement for RICO standing, it bears mentioning that the question presented was: "whether a plaintiff asserting a RICO

claim predicated on mail fraud must plead and prove that it relied on the defendant's alleged misrepresentations." *Bridge*, 553 U.S. at 641-42. In other words, *Bridge* does not address whether a specific type of injury rises to the level of a concrete financial loss, nor does it alter the proximate-cause requirement for RICO standing, other than to confirm that first-party reliance is not required to show proximate causation. *Id.* at 657-58. Moreover, as already noted, Hatfield changed his allegation of injury following the Court's prior decision, clarifying that he is seeking to recover an expected contingent fee derived from a hypothetical jury verdict. This new injury allegation creates a material distinction between the injury alleged here and the injury alleged in *Bridge*. In *Bridge*, the plaintiffs clearly alleged proximate causation because the defendants' alleged fraud was the sole reason the plaintiffs "lost valuable liens they otherwise would have been awarded." *Id.* at 649. Indeed, the *Bridge* court expressly noted that there were "no independent factors that account for respondents' injury . . .." *Id.* at 658. By contrast, Hatfield's alleged loss of an expected contingent fee derived from a hypothetical jury verdict could have been caused by any of the myriad factors discussed above, which are wholly independent of defendants' alleged RICO violations. Accordingly, under Hatfield's new theory of injury, *Bridge* is inapposite.

In short, Hatfield's alleged injury—the loss of an expected contingent fee derived from a hypothetical jury verdict—is not a concrete financial loss that is directly traceable to defendants' alleged RICO violations. Accordingly, the Court should dismiss all of Hatfield's purported RICO claims for lack of RICO standing.

C.    **Hatfield Lacks Standing to Bring any RICO Claim Based on his Purported Loss of the Mejia Case Because the Mejia Family Never Approached Hatfield Seeking Representation and Hatfield had no Prior Relationship with Any Member of the Mejia Family.**

Even if the Court holds that Hatfield has standing to bring RICO claims based on his purported loss of an expected contingent fee derived from a hypothetical jury verdict in the Recinos

case, it should still dismiss Hatfield's RICO claims to the extent they are based on his purported loss of the Mejia case.  This Court previously held that, "[w]ith respect to the Mejia estate, . . . Hatfield's claimed injury is too attenuated to confer RICO standing."  (ECF Doc. 63, p. 28).  As the Court explained: "Absent an allegation that the Mejias approached him seeking representation or had a steady business relationship with his firm, the fact that Hatfield was the most likely choice does not mean that he would have been the ultimate choice in the absence of Defendants' scheme." (ECF Doc. 63, pp. 28-29).  Accordingly, the Court dismissed all of Hatfield's purported RICO claims to the extent they are predicated on his purported loss of the Mejia case.  (ECF Doc. 63, p. 29).

Hatfield's Second Amended Complaint completely disregards the Court's previous decision with respect to the Mejia case.  To be sure, the Second Amended Complaint does not contain any allegations that the Court unambiguously held are necessary to establish standing to bring a RICO claim based on Hatfield's purported loss of the Mejia case—*i.e.*, that the Mejias approached Hatfield seeking representation or had a steady business relationship with his firm. Instead, Hatfield simply regurgitates the same vague and speculative allegations the Court has already held are insufficient to confer RICO standing.

First, Hatfield vaguely alleges "[i]t is more likely than not Hatfield would have secured both estates because the deceased families knew Hatfield, they purposely sought out Hatfield for legal representation, and they signed a contract with Hatfield."  (ECF Doc. 151 ¶ 219).  Notably, while Hatfield makes detailed and repetitive allegations regarding his brief interactions with certain members of the ***Recinos*** family and the one-page, fill-in-the-blank contract he convinced them to sign, he provides no detail whatsoever as to how the ***Mejia*** family allegedly knew him (they didn't), when the ***Mejia*** family allegedly sought him out for legal representation (they

12

didn't), or when the *Mejia* family allegedly signed a contract with him (they didn't).  As the Court previously held, when read in context, Hatfield's vague allegations that "the deceased families" knew and sought out Hatfield, without any specific allegations regarding his purported interactions with the Mejia family, fall well short of what is required to establish cognizable RICO injury by reason of his purported loss of the Mejia case.  (ECF Doc. 63, pp. 28-29, n. 10).

Second, Hatfield speculates he likely would have secured the Mejia case because "the Hispanic community in Northwest Arkansas knows and trusts Hatfield's substantial representation of injured workers in their community in both workers' compensation and personal injury matters."  (ECF Doc. 151 ¶ 220).  Once again, however, Hatfield made this identical speculative allegation in the First Amended Complaint (ECF Doc. 18 ¶ 194), and the Court held that it was insufficient to confer RICO standing.

Ultimately, Hatfield seeks to recover an untold amount of "damages" for legal work he never came close to performing based on nothing more than his own speculation that clients he never even met would have retained him because he supposedly has a good reputation.  This Court has already held these allegations of hypothetical injury are insufficient to establish RICO standing.  Accordingly, the Court should dismiss with prejudice all of Hatfield's purported RICO claims to the extent they are predicated on his purported loss of the Mejia case.

**D.    Hatfield Lacks Standing to Bring a RICO Claim Under § 1962(a) Because he Fails to Allege Injury from the Use or Investment of Racketeering Funds that is Separate and Distinct from the Injury Allegedly Caused by the Defendants' Purported Racketeering Activity.**

Section 1962(a) makes it unlawful for:

> any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through the collection of an unlawful debt in which such person has participated as a principal . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in the acquisition of

> any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a).  Consistent with the majority of other circuit courts that have addressed the issue, the Eighth Circuit has instructed that "RICO gives only individuals who have suffered injury from the use or investment of racketeering income standing to bring a civil suit under §§ 1962(a) and 1964(c)."  *Fogie v. THORN Americas, Inc.*, 190 F.3d 889, 895 (8th Cir. 1999).  That is, "to bring a claim under § 1962(a), a plaintiff must allege an injury from the use or investment of racketeering income that is separate and distinct from injuries allegedly caused by the defendant's engaging in the predicate acts."  *Id.* at 896; *see also Compagnie De Reassurance D'Ille de France v. New England Reinsurance Corp.*, 57 F.3d 56, 91 (1st Cir. 1995) ("Even assuming that they had been defrauded through the use of the mails or international wires . . . that alone is not enough to show that they were harmed additionally by NERCO's use or investment of the proceeds of that fraud . . ."); *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1188 (3d Cir. 1993) ("the plaintiff must allege an injury resulting from the investment of racketeering income distinct from an injury caused by the predicate acts themselves"); *Davis-Lynch, Inc. v. Moreno*, 67 F.3d 539, 550 (5th Cir. 2012) ("injuries resulting from predicate acts of 'racketeering activity' themselves cannot form the basis of an investment injury for purposes of § 1962(a)"); *Vemco Inc. v. Camardella*, 23 F.3d 129, 133 (6th Cir. 1994) ("in order to state a claim under § 1962(a), a plaintiff must plead a specific injury to the plaintiff caused by the investment of income into the racketeering enterprise, *distinct from* any injuries caused by the predicate acts of racketeering").

Here, Hatfield alleges in conclusory fashion that the defendants' use or investment of income in the purported enterprise "injured Hatfield's business" and "played a substantial part in bringing about or actually causing Hatfield to lose profits or money."  (ECF Doc. 151 ¶¶ 359-60).

Hatfield, however, does not identify what supposed injury he suffered from the defendants' purported use or investment of income in the purported enterprise, much less allege injury from the use or investment of income that is distinct from the injury allegedly caused by defendants' supposed racketeering activity.  Quite the contrary, just after Hatfield's conclusory allegations of injury from the use or investment of racketeering income, Hatfield alleges the defendants' commission "of the acts of racketeering, or the pattern of racketeering activity, or conduct of the affairs of the enterprise through the pattern of racketeering activity directly resulted in Hatfield's damages or played a substantial role in producing Hatfield's damages."  (ECF Doc. 151 ¶ 362). In other words, Hatfield fails to distinguish between injury he claims to have suffered from the use or investment of racketeering income and the injury he claims to have suffered from the defendants' alleged racketeering activity.  Under well-established Eighth Circuit precedent, this is fatal to Hatfield's purported claims under § 1962(a).  Accordingly, the Court should dismiss Hatfield's purported RICO claims under § 1962(a) for this additional reason.

      **E.**      **Hatfield Lacks Standing to Bring a RICO Claim Under § 1962(b) Because he Fails to Allege Injury from the Acquisition or Maintenance of an Interest in or Control of a RICO Enterprise that is Separate and Distinct from the Injury Allegedly Caused by the Defendants' Purported Racketeering Activity.**

Section 1962(b) makes it unlawful "for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b).  As with § 1962(a), to establish standing to bring a claim under § 1962(b), plaintiffs must allege injury from the defendants' acquisition or maintenance of an interest in or control of a RICO enterprise that is separate and distinct from the injury allegedly caused by the defendants' racketeering activity.  *See, e.g., New England Reinsurance Corp.*, 57 F.3d at 92; *D'Addario v. D'Addario*, 901 F.3d 80, 98 (2d Cir. 2018) ("To

successfully plead a RICO claim under § 1962(b), a plaintiff must indeed allege distinct damages arising from the acquisition or maintenance of control of the enterprise . . . those damages must be different from the damages that flow from the predicate acts themselves"); *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1190 (3d Cir. 1993); *Abraham v. Singh*, 480 F.3d 351, 357 (5th Cir. 2007) ("Plaintiffs must show that their injuries were proximately caused by a RICO person gaining an interest in, or control of, the enterprise through a pattern of racketeering activity"); *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 329 (6th Cir. 1999) ("a complaint for violation of § 1962(b) must allege an 'acquisition or maintenance' injury separate and apart from the injury suffered as a result of the predicate acts of racketeering activity"); *Danielsen v. Burnside-Ott Aviation Training Cntr., Inc.*, 941 F.2d 1220, 1231 (D.C. Cir. 1991). "Such an injury may be shown, for example, where the owner of an enterprise infiltrated by the defendant as a result of racketeering activities is injured by the defendant's acquisition or control of his enterprise." *Lightning Lube*, 4 F.3d at 1190.

Although the Eighth Circuit has not squarely addressed the standing requirements under § 1962(b), its analysis of § 1962(a)'s standing requirements applies with equal force to claims under § 1962(b). Indeed, the Eighth Circuit has explained that "§ 1964(c) allows only persons injured 'by reason of' a § 1962 violation to bring a civil suit under RICO." *Fogie*, 190 F.3d at 895. Just as "a person injured by predicate racketeering acts . . . is not injured by reason of a violation of § 1962(a)," a person injured by predicate racketeering acts is not injured by reason of a violation of § 1962(b), which prohibits the acquisition or maintenance of an interest in or control of a RICO enterprise, not the commission of racketeering acts themselves. *See id.*; *see also New England Reinsurance Corp.*, 57 F.3d at 92 (requiring independent injury under §§ 1962(a) and (b));

*Danielsen*, 941 F.2d at 1231 ("plaintiffs must allege an 'acquisition' injury, analogous to the 'use or investment injury' required under § 1962(a) to show injury by reason of a § 1962(b) violation").

Much like his § 1962(a) allegations, Hatfield alleges in conclusory fashion that the defendants' interest or control of the purported enterprise "injured Hatfield's business" and "played a substantial part in bringing about or actually causing Hatfield to lose profits or money." (ECF Doc. 151 ¶¶ 392-93). Once again, however, Hatfield does not identify what supposed injury he suffered from the defendants' alleged acquisition or maintenance of an interest in or control of the purported enterprise, nor does he allege injury from such acquisition or maintenance that is separate and distinct from the injury allegedly caused by the defendants' supposed racketeering activity. Indeed, just after Hatfield's conclusory allegations of injury from the acquisition or maintenance of an interest in or control of a RICO enterprise, Hatfield alleges the defendants' "conduct of the affairs of the enterprise. . . through the pattern of racketeering activity directly resulted in Hatfield's damages or played a substantial role in producing Hatfield's damages." (ECF Doc. 151 ¶ 395). Because Hatfield fails to allege any injury from the defendants' alleged acquisition or maintenance of an interest in or control of a RICO enterprise that is separate and distinct from the injury allegedly caused by the defendants' supposed "racketeering activity," he lacks standing to bring a RICO claim under § 1962(b). Accordingly, the Court should dismiss Hatfield's purported § 1962(b) claim for this additional reason.

**F.    Because Hatfield Lacks Standing to Bring Any Substantive RICO Claims Under §§ 1962(a)-(c), he Also Lacks Standing to Bring Any RICO Conspiracy Claims Under § 1962(d).**

Section 1962(d) makes it unlawful "for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). The Eighth Circuit has long held that standing to bring a RICO conspiracy claim under § 1962(d) "is limited to those

individuals who have been harmed by a § 1961(1) RICO predicate act committed in furtherance of a conspiracy to violate RICO." *Bowman v. Western Auto Supply Co.*, 985 F.2d 383, 388 (8th Cir. 1993). Accordingly, a plaintiff who lacks standing to bring a substantive RICO claim also lacks standing to bring a RICO conspiracy claim. *Id.*; *see also Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 954 (8th Cir. 1999); *Grubbs v. Sheakley Group, Inc.*, 807 F.3d 785, 805-06 (6th Cir. 2015) ("To state a claim for RICO conspiracy, one must successfully allege all the elements of a RICO violation, as well as the existence of an illicit agreement to violate the substantive RICO provision") (internal quotations omitted); *Tal v. Hogan*, 453 F.3d 1244, 1270 (10th Cir. 2006) ("If a plaintiff has no viable claim under § 1962(a), (b), or (c), then its subsection (d) conspiracy claim fails as a matter of law."). As discussed above, Hatfield lacks standing to bring any substantive RICO claims under §§ 1962(a)-(c). Consequently, Hatfield also lacks standing to bring any RICO conspiracy claims under § 1962(d), and all of his purported RICO conspiracy claims (Counts Four, Five, and Six in the Second Amended Complaint) should be dismissed.

## II. HATFIELD FAILS TO STATE A CLAIM UNDER § 1962(C) BECAUSE HE FAILS TO ALLEGE A PATTERN OF RACKETEERING ACTIVITY WITH A SUFFICIENT NEXUS TO THE ALLEGED RICO ENTERPRISE.

Section 1962(c) makes it unlawful for any person employed by or associated with a RICO enterprise "to conduct or participate, directly or indirectly, in the conduct of *such* enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c) (emphasis added). To state a claim under § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011). To prove a pattern of racketeering activity a plaintiff "must show that the racketeering predicates are related, *and* that they amount to or pose a threat of

continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).  Moreover, "The acts must have both 'horizontal relatedness,' meaning that the acts are related to one another, and 'vertical relatedness,' meaning that the predicate acts have a nexus to the enterprise." *United States v. Henley*, 766 F.3d 893, 907 (8th Cir. 2014).  As such, "all predicate acts in a pattern must somehow be related to the enterprise," and any alleged predicate acts that do not have a nexus with the alleged RICO enterprise cannot be considered in determining whether a pattern of racketeering activity exists. *Banks v. Wolk*, 918 F.2d 418, 424 (3d Cir. 1990); *see also Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (explaining that liability under § 1962(c) "depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs").

Here, Hatfield alleges an association-in-fact enterprise comprised of all defendants.  (ECF Doc. 151 ¶ 406).  Specifically, Hatfield alleges: "All Defendants are associated in fact with each other through their contracts and their collaborative and coordinated efforts to advance their purpose and enterprise." (*Id.*).  Most of the predicate acts that Hatfield alleges constitute a pattern, however, do not relate to this alleged RICO enterprise.  Although Hatfield alleges the Nunez Defendants have fraudulently procured an estimated 200 wrongful death or catastrophic cases over the course of approximately 15 years, and that the Nunez Defendants have had a longstanding agreement with Mr. Kherkher and his law firms, including Kherkher Garcia, to refer some of those cases, none of these allegations are related to the specific RICO enterprise alleged here, which purportedly includes "All Defendants."  Indeed, aside from the Recinos and Mejia cases, Hatfield does not allege that the Pirani Defendants or Mancia had anything to do with any of the 200 cases the Nunez Defendants allegedly procured through fraud over the past 15 years.  Because the Recinos and Mejia cases are the only cases with a connection to the alleged enterprise comprised

of "All Defendants," the only predicate acts that can be considered in determining whether a pattern of racketeering exists in this case are the predicate acts related to the Recinos and Mejia cases.

When Hatfield's allegations of racketeering activity are properly limited to the predicate acts that are actually related to the enterprise alleged in this case, it is clear that Hatfield has not, and cannot, establish a pattern of racketeering activity. The Eighth Circuit has explained that "a single transaction which involves only one victim and takes place over a short period of time does not constitute the pattern of racketeering required for long-term criminal activity under a RICO claim." *Terry A. Lambert Plumbing, Inc. v. Western Sec. Bank*, 934 F.2d 976, 981 (8th Cir. 1991). This is because "[v]irtually every garden-variety fraud is accomplished through a series of wire or mail fraud acts that are 'related' in purpose and are spread over a period of at least several months." *Id.* (quoting *Marshall-Silver Constr. Co. v. Mendel*, 894 F.2d 593 (3d Cir. 1990)). If a single fraudulent scheme involving a limited number of victims could satisfy RICO's pattern requirement, then nearly every common law fraud claim could potentially fall within RICO's ambit. *Id.* Various courts, including the Eighth Circuit, have refused to interpret the RICO statute so broadly. *Id.*; *see also Gross v. Waywell*, 628 F. Supp.2d 475, 494 (S.D.N.Y. 2009) ("allegations of RICO violations involving solely mail and wire fraud or little other variety in the predicate acts, a limited number of participants or victims, a discrete scheme with a narrow purpose or a single property—as opposed to complex, multi-faceted schemes—are generally insufficient to demonstrate closed-ended continuity, and thus to satisfy the 'pattern' element of a plausible RICO claim").

Here, the only alleged predicate acts with a sufficient nexus to the alleged enterprise involve a purported scheme to secure two wrongful death cases arising out of a single tragic

accident at the expense of a single purported victim, *i.e.*, Hatfield.  Although this purported scheme allegedly endured for multiple months during the pendency of the state-court litigation, its limited scope and limited number of victims preclude a finding that it involved the pattern of racketeering activity necessary to elevate the purported fraudulent scheme to a cognizable RICO claim.[2]  For this additional reason, the Court should dismiss Hatfield's purported claim under § 1962(c).

## III.   HATFIELD'S VAGUE AND CONCLUSORY ALLEGATIONS FAIL TO STATE ANY COGNIZABLE CLAIMS AGAINST MR. HAYNES OR MR. GARCIA.

Although Hatfield's Second Amended Complaint is deficient in various respects, it is particularly deficient in its allegations against Messrs. Haynes and Garcia.  In requesting leave to file the Second Amended Complaint, Hatfield stated that he intended to add claims against Messrs. Haynes and Garcia "consistent with the factual basis set forth at pages 6-8 of the [proposed] Second Amended Complaint."  (ECF Doc. 149 ¶ 1).  As discussed below, however, neither the "factual basis" set forth at pages 6-8, nor any other allegations in the Second Amended Complaint, state a plausible claim for relief against Mr. Haynes or Mr. Garcia.  Accordingly, Hatfield's purported claims against Messrs. Haynes and Garcia should be dismissed.

Hatfield purports to assert the following claims against Mr. Haynes: (1) RICO, § 1962(a) (Count One); (2) RICO, § 1962(b) (Count Two); (3) RICO, § 1962(c) (Count Three); (4) RICO, § 1962(d) (conspiracy to violate § 1962(a)) (Count Four); (5) RICO, § 1962(d) (conspiracy to violate

---

[2] In addition, Hatfield's purported RICO claims are based, at least in part, on defendants' alleged violations of the Arkansas Rules of Professional Conduct.  (ECF Doc. 151 ¶ 59).  Significantly, however, violations of attorney ethics rules cannot constitute RICO predicate acts of mail and wire fraud.  *See St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009) (holding alleged violations of attorney ethics rules could not support purported RICO claims based on predicate acts of mail and wire fraud); *United States v. Rabbitt*, 583 F.2d 1014, 1025 (8th Cir. 1978) (explaining that violations of attorney ethics rules may bear on intent to defraud, but "do not in and of themselves establish the substantive crime of mail fraud"), *abrogation on other grounds acknowledged in United States v. Foster*, 443 F.3d 978, 984 (8th Cir. 2006); *Bigsby v. Barclays Cap. Real Estate, Inc.*, 170 F.Supp.3d 568, 577 (S.D.N.Y. 2016) ("State ethics rules do not create the basis for a separate claim").  Accordingly, Hatfield's purported RICO claims also fail as a matter of law to the extent they are based on defendants' alleged violations of the Arkansas Rules of Professional Conduct.

§ 1962(c)) (Count Six); (6) Fraud (Count Ten); and (7) Punitive Damages (Count Twelve).  (ECF Doc. 151 pp. 56-76, 78-79, 83-85, 86).

In addition, Hatfield purports to assert the following claims against Mr. Garcia: 1) RICO, § 1962(a) (Count One); (2) RICO, § 1962(b) (Count Two); (3) RICO, § 1962(c) (Count Three); (4) RICO, § 1962(d) (conspiracy to violate § 1962(a)) (Count Four); (5) RICO, § 1962(d) (conspiracy to violate § 1962(b)) (Count Five); (6) RICO, § 1962(d) (conspiracy to violate § 1962(c)) (Count Six); (7) Intentional Interference with Contract (Count Seven); (8) Fraud (Count Ten); (9) Civil Conspiracy (Count Eleven); and (10) Punitive Damages (Count Twelve).  (ECF Doc. 151 pp. 55-81, 83-86).

Because Hatfield's purported RICO claims are based on alleged predicate acts of mail and wire fraud, his allegations supporting these claims must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *Murr Plumbing, Inc. v. Scherer Bros. Financial Svcs. Co.*, 48 F.3d 1066, 1069 (8th Cir. 1995).  Likewise, Hatfield's allegations supporting his claim of common law fraud must meet Rule 9(b)'s heightened pleading requirements.  *Id.*  Conclusory allegations of fraud are not sufficient to satisfy Rule 9(b)'s requirements.  *Ambassador Press, Inc. v. Durst Image Tech. U.S., LLC*, 949 F.3d 417, 421 (8th Cir. 2020).  And, of course, the Court "need not accept as true a plaintiff's conclusory allegations or legal conclusions drawn from the facts," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Glick v. Western Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

Although Hatfield's allegations against Mr. Haynes are sparse, the few references to Mr. Haynes in the Second Amended Complaint are conclusory, vague, and woefully insufficient to support any of the serious claims Hatfield levels against him.  For instance, Hatfield alleges in

vague and conclusory fashion that Mr. Haynes "actively participated in this case and has firsthand knowledge of, and participated in, the fraudulent scheme stated herein," (ECF Doc. 151 ¶ 12), but Hatfield fails to allege any details regarding Mr. Haynes' supposed knowledge of and participation in the purported fraudulent scheme.  Instead, Hatfield simply alleges that Mr. Haynes worked on the Recinos and Mejia wrongful death cases, and that, "on information and belief," the source of which Hatfield fails to disclose, Mr. Haynes drafted pleadings in those cases that contained misrepresentations of fact.  (ECF Doc. 151 ¶ 12).  In addition, Hatfield alleges that Mr. Haynes was copied on a communication informing Nunez & Associates that it would not be paid any fees from the Recinos and Mejia cases until Hatfield's claim to those fees was resolved, but he fails to explain how being copied on this communication could possibly support the serious claims of racketeering, conspiracy, and fraud he asserts against Mr. Haynes.  (ECF Doc. 151 ¶¶ 294, 299). Finally, the remaining allegations against Mr. Haynes are inherently conclusory, such that they can neither be accepted as true nor support any of the purported claims against Mr. Haynes.  (ECF Doc. 151 ¶¶ 12, 265, 296-97, 306, 330, 349-50, 353-60, 362-67, 369, 371, 379-80, 387-88, 391, 393-400, 402, 445-46, 448, 455).

Hatfield's allegations against Mr. Garcia fair no better.  As with the allegations against Mr. Haynes, Hatfield alleges that Mr. Garcia "actively participated in many fee-splitting arrangements with Nunez & Associates or its predecessor in interest," and that Mr. Garcia "was personally aware of the case-running aspect of the Nunez & Associates illegal and unethical business model," but Hatfield fails to allege any facts, other than that Mr. Garcia has communicated by email with Alfredo Nunez, detailing Mr. Garcia's supposed knowledge of or participation in any alleged fraudulent scheme.  (ECF Doc. 151 ¶ 11).  In addition, Hatfield alleges that "either Raciel Gonzalez or Jesus Garcia" improperly contacted one of Hatfield's purported clients and provided him with

a contract for legal representation, but an equivocal allegation that Mr. Garcia might have been the person who contacted one of Hatfield's purported clients cannot support any claim against Mr. Garcia.  (ECF Doc. 151 ¶ 224).  Likewise, Hatfield alleges that Mr. Garcia sent an email informing Nunez & Associates that it would not be paid any fees from the Recinos and Mejia cases until Hatfield's claim to those fees was resolved, but he fails to explain how sending this email or participating in a decision not to disperse disputed fees could possibly support the serious charges of racketeering, conspiracy, and fraud asserted against Mr. Garcia.  (ECF Doc. 151 ¶¶ 293-94, 299).  Finally, the remaining allegations against Mr. Garcia are inherently conclusory, such that they can neither be accepted as true nor support any of the purported claims against Mr. Garcia. (ECF Doc. 151 ¶¶ 296-97, 330, 349-50, 353-60, 362-67, 369, 371, 379-80, 387-88, 391, 393- 400, 402, 445-46, 448, 455).

In short, Hatfield's vague and conclusory allegations against Messrs. Haynes and Garcia fall well short of what is required to state a plausible claim for relief, particularly when the claims asserted are almost entirely based in fraud.  Accordingly, the Court should dismiss all of Hatfield's purported claims against Messrs. Haynes and Garcia.

## CONCLUSION

For the foregoing reasons, the Kherkher Defendants respectfully request that the Court grant their Motion for Judgment on the Pleadings and enter judgment in their favor on all of Hatfield's purported RICO claims as well as all claims asserted against Messrs. Haynes and Garcia in this action.

Respectfully submitted,

By:     */s/ G. Spence Fricke*
        G. Spence Fricke, Ark. Bar No. 79068
        gsfricke@barberlawfirm.com
        Jerry D. Garner, Ark. Bar No. 2014134
        jgarner@barberlawfirm.com

        BARBER LAW FIRM PLLC
        3400 Simmons Tower
        425 West Capitol Avenue
        Little Rock, Arkansas 72201
        Telephone: (501) 372-6175

        -And-

        Dale Jefferson, Texas Bar No. 10607900
        jefferson@mdjwlaw.com
        *Admitted Pro Hac Vice*

        MARTIN, DISIERE, JEFFERSON & WISDOM LLP
        Niels Esperson Building
        808 Travis Street, Suite 1100
        Houston, Texas 77002
        Telephone: (713) 632-1700

        -And-

        Randy Gordon, Texas Bar No. 00797838
        rdgordon@duanemorris.com
        Lucas Wohlford, Texas Bar No. 24070871
        lwohlford@duanemorris.com
        *Admitted Pro Hac Vice*

        DUANE MORRIS LLP
        100 Crescent Court, Suite 1200
        Dallas, Texas 75201
        Telephone: (214) 257-7200

        ***Attorneys for Defendants Kherkher Garcia, LLP,***
        ***Steven Kherkher, Jesus Garcia, and Kevin Haynes***

25

## <u>CERTIFICATE OF SERVICE</u>

     This is to certify that on the 2nd day of August 2023, a true and correct copy of the foregoing has been forwarded to all counsel of record, via the Court's CM/ECF System in accordance with the Federal Rules of Civil Procedure.

*/s/ G. Spence Fricke*
G. Spence Fricke
