IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**JASON M. HATFIELD, P.A.**     **PLAINTIFF**

**VS.**     **CASE NO. 5:22-CV-05110-PKH**

**MICHAEL MCCOY, ET AL.**     **DEFENDANTS**

**KHERKHER DEFENDANTS' BRIEF IN SUPPORT OF MOTION
TO EXCLUDE TESTIMONY OF JOHN EVERETT**

Defendants Kherkher Garcia, LLP ("Kherkher Garcia"), Steven Kherkher, Jesus Garcia, and Kevin Haynes (collectively the "Kherkher Defendants") file this Brief in Support of their Motion to Exclude Testimony of John Everett and would respectfully show the Court as follows:

## INTRODUCTION

Plaintiff Jason M. Hatfield, P.A. has designated John Everett as an expert witness he plans to call at trial to speculate about the results Hatfield would have obtained in a hypothetical settlement or jury trial if Hatfield had actually represented the Estate of Flor Maribel Recinos Valle in Ms. Recinos' wrongful death case. Specifically, Everett intends to opine that: (1) Hatfield has a "very good reputation," as well as the resources, expertise, and ability to handle a case like Ms. Recinos' wrongful death case; (2) the legal work the Kherkher Defendants performed in prosecuting Ms. Recinos' wrongful death case was deficient in several respects; and (3) Hatfield would have obtained better results in a hypothetical settlement or jury trial if Hatfield had actually prosecuted Ms. Recinos' wrongful death case. *See, generally,* Letter Report of John Everett, a true and correct copy of which is attached hereto as <u>Exhibit A</u>.

The Court should exclude all of Everett's opinions and testimony for multiple reasons. First, Everett's opinions regarding Hatfield's reputation, experience, and capabilities are unsupported by sufficient facts or analysis and constitute inadmissible character evidence. Second, Everett's opinions critiquing the legal work the Kherkher Defendants performed on behalf of the Recinos Estate are unsupported by sufficient facts or analysis. Third, Everett's opinions regarding the legal work Hatfield would have performed and the results Hatfield would have obtained in a hypothetical settlement or jury trial are inadmissible because they are excessively speculative and unsupported by sufficient facts or analysis.

## ARGUMENT AND AUTHORITIES

**A.      Applicable Legal Standard**

"Expert opinion testimony is admissible only if it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) (quoting Fed. R. Evid. 702). "Federal Rule of Evidence 702 governs the admissibility of expert testimony, and under this rule the district court is vested with a gatekeeping function," which ensures that any and all expert testimony is relevant and reliable. *In re Bair Hugger Forced Air Warming Devices Products Liability Lit.*, 9 F.4th 768, 776-77 (8th Cir. 2021). "Rule 702's 'screening requirement' has been boiled down to a three-part test." *Id.* at 777. "First, the testimony must be useful to the finder of fact in deciding the ultimate issue of fact, meaning it must be relevant." *Id.* "Second, the expert must be qualified to assist the finder of fact." *Id.* "Third, the testimony must be reliable or trustworthy in an evidentiary sense." *Id.*

Before permitting an expert to testify at trial, the Court must satisfy itself that the expert's opinions are "supported by appropriate validation—i.e., 'good grounds,' based on what is known." *Glastetter v. Novartis Pharm. Corp.*, 252 F.3d 986, 988 (8th Cir. 2001). In this way, the Court's

"gatekeeping role separates expert opinion evidence based on 'good grounds' from subjective speculation that masquerades as scientific knowledge." *Id.* at 989.  The Eighth Circuit has instructed that "district courts must make a 'preliminary assessment of whether the reasoning or methodology underlying an expert's testimony is scientifically valid and of whether that reasoning or methodology can be applied to the facts in issue.'" *Lancaster v. BNSF Railway Co.*, 75 F.4th 967, 969 (8th Cir. 2023) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)) (cleaned up).  "'Among the factors to consider is whether the expert testimony proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" *Id.* (quoting *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039 (8th Cir. 2000)).  "While the factual basis of an expert opinion generally goes to its credibility rather than its admissibility, expert testimony that is speculative, unsupported by sufficient facts, or contrary to the facts of the case is inadmissible." *Id.* at 970.  To be sure, expert testimony based on the expert's specialized knowledge requires "more than subjective belief or unsupported speculation." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993).  Ultimately, the proponent of expert testimony bears the burden of proving its admissibility by a preponderance of the evidence. *In re Bear Hugger Forced Air Warming Devices Products Liability Lit.*, 9 F.4th at 776.

**B.** **The Court Should Exclude Everett's Opinions Regarding Hatfield's Reputation, Experience, and Capabilities Because they are Unsupported by Sufficient Facts and Analysis, and Constitute Inadmissible Character Evidence.**

In paragraphs 1, 2, 6, 7, 19, and 20 of Everett's report, he offers various opinions regarding Hatfield's reputation, experience, and capabilities.  The Court should exclude all of these opinions because they are unsupported by sufficient facts and analysis, and constitute inadmissible character evidence.

First, Everett opines that Hatfield "has a very good reputation in the local legal industry," and that he "is known to be a lawyer of impeccable ethics, one who is committed to the legal profession's future, one who has a strong sense of doing right by his clients in personal injury cases, and is known for success in the area of plaintiff's personal injury cases." *See* Exhibit A ¶ 1.  In his deposition, however, Everett conceded that he did not review any jury verdicts or settlements Hatfield has obtained in his career, that he is not aware of any jury verdicts or settlements Hatfield has ever obtained in wrongful death cases, and that his only personal knowledge regarding Hatfield's capabilities is derived from a single case in which he was briefly adverse to Hatfield approximately ten years ago, which Everett conceded he's "not real sure about."  *See* Deposition of John Everett, a true and correct copy of which is attached hereto as Exhibit B at 31:8-18; 34:3-38:20; 41:13-20; 97:23-98:1.  In other words, Everett's opinions regarding Hatfield's reputation and capabilities are not based on any verifiable facts or data, but merely reflect Everett's subjective belief based on his generally knowing Hatfield and being a lawyer in the same community.  Such unsupported and subjective opinions are not the proper subject of expert testimony and should be excluded.

Second, Everett opines that Hatfield "has adequate resources to take a case of the importance of the referenced case to a jury trial and to conduct proper discovery in the course of litigating the case against J.B. Hunt." *See* Exhibit A ¶ 2.  Again, however, Everett conceded that this opinion is simply based on his being a lawyer in the same community as Hatfield and his general understanding of what it would take to try a wrongful death case.  *See* Exhibit B at 40:4-15. Everett did not do any investigation into the resources Hatfield actually has at his disposal, and he testified that he simply "would suspect that, given his reputation, that he's probably getting—been able to gather up a few hundred dollars to depose a truck driver and to look at—and

do—and do paper discovery." *Id.* at 39:10-19. Accordingly, Everett's opinion regarding Hatfield's resources and ability to litigate a wrongful death case against J.B. Hunt is wholly unsupported by any verifiable facts or data, and merely reflects Everett's subjective speculation. As such, the Court should also exclude this opinion.

Third, Everett opines that Hatfield was "ready, willing, and able to open the estate of Flor Maribel Recinos Valle." See Exhibit A ¶¶ 6-7. Again, however, Everett conceded that he reviewed no evidence, and that he has no personal knowledge, regarding Hatfield's legal experience or ability other than his experience litigating a single case against Hatfield approximately a decade ago that he's "not real sure about." See Exhibit B at 31:8-18; 34:3-38:20; 41:13-20; 97:23-98:1. What's more, Everett admitted he did not even know whether Hatfield actually had an attorney-client relationship with any of Ms. Recinos' family members. *Id.* at 50:23-24. Accordingly, Everett's opinion that Hatfield was "ready, willing, and able" to open the Recinos Estate is unsupported by any facts or data, and simply reflects Everett's subjective opinion. Accordingly, the Court should also exclude this opinion.[1]

Fourth, Everett opines that Hatfield "is very competent to handle highly complex litigation matters and appeals adverse decisions with some success." See Exhibit A ¶ 19. Everett conceded, however, that he offers this opinion without actually knowing what results Hatfield has obtained in his career or even knowing the types of appeals Hatfield has ever handled. See Exhibit B at

---

[1] Relatedly, Everett also opines that Hatfield was "lawfully engaged by Laura, Ever Noe, or Vidal Recinos" and that "the paperwork drafted by Jason Hatfield's law firm was sufficient to open an estate from which wrongful death claims on behalf of the deceased could have been brought against J.B. Hunt." See Exhibit A ¶ 6. Both of these opinions are patently inadmissible legal conclusions. *See Southern Pine Helicopters, Inc. v. Phoenix Aviation Mgrs., Inc.*, 320 F.3d 838, 841 (8th Cir. 2003) ("expert testimony on legal matters is not admissible"). In fact, Everett even testified that he wished he "had not used the term lawfully" because he did not intend to offer any opinions on the law and, again, he does not know whether Hatfield had an attorney-client relationship with any of Ms. Recinos' family members. See Exhibit B at 47:19-21; 50:22-24. For this additional reason, the Court should exclude the opinions expressed in paragraphs 6 and 7 of Everett's report.

96:5-97:17. Accordingly, this opinion is also based on nothing more than Everett's subjective belief regarding Hatfield's capabilities and should therefore be excluded.

Fifth, Everett opines that Hatfield "has previously represented drivers against J.B. Hunt and has special knowledge of the trucking industry." *See* Exhibit A ¶ 20. Everett testified that the basis for this opinion is that either Hatfield or his counsel told Everett that Hatfield has represented drivers against J.B. Hunt and that Everett had "a faint recollection" that he saw a list of workers' compensation cases Hatfield had handled against J.B. Hunt. *See* Exhibit B at 98:7-22. Further, Everett testified that his opinion that Hatfield has "special knowledge of the trucking industry" is based on either something he heard "at the coffee shop or reputation or Mark Henry told me or I just kind of know that." *Id.* at 99:13-21. Because this opinion is not based on sufficient verifiable facts or data, it should be excluded.

Finally, even if Everett's opinions regarding Hatfield's experience, reputation, and capabilities were based on something more than Everett's subjective belief, they should still be excluded because they constitute improper character evidence. As a general matter, character evidence is inadmissible in civil cases. *Jackson v. Allstate Ins. Co.*, 785 F.3d 1193, 1203 (8th Cir. 2015). Indeed, Federal Rule of Evidence 404 expressly prohibits evidence of a person's character or character trait to prove that on a particular occasion the person acted in accordance with the character trait. *See* Fed. R. Evid. 404. Here, Everett's subjective opinions regarding Hatfield's experience, reputation, and capabilities constitute inadmissible character evidence that is plainly being offered for impermissible purposes—namely, to bolster Hatfield and support Everett's speculative opinions regarding the results Hatfield would have obtained in a hypothetical jury trial or settlement if he had ever actually represented the Recinos Estate. For this additional reason, the

Court should exclude all of Everett's opinions regarding Hatfield's supposed experience, reputation, and capabilities.

**C.      The Court Should Exclude Everett's Opinions Critiquing the Legal Work Performed by the Kherkher Defendants because they are Unsupported by Sufficient Facts and Analysis.**

In paragraphs 8, 9, 16, and 17 of Everett's report, he expresses opinions critiquing various aspects of the legal work the Kherkher Defendants performed for the Recinos Estate.  *See* Exhibit A ¶¶ 8, 9, 16, and 17.  The Court should exclude all of these opinions because they are unsupported by sufficient facts and analysis.

First, Everett opines that two settlement demands purportedly made by the Kherkher Defendants to J.B. Hunt were not based on any serious analysis of material facts.  *Id.* ¶¶ 8 and 9. In his deposition, however, Everett admitted that he did not know what analysis the Kherkher Defendants had done prior to issuing the initial settlement demand to J.B. Hunt, but that he didn't "suspect they'd done very much analysis." *See* Exhibit B at 57:21-25.  When asked for any specific information or data on which his opinion was based, Mr. Everett testified: "Well, I've practiced law for 50 years, and I just don't think within eight days of a tragic, horrific wrongful death, you can get your brain around all the various factors that contribute to a—an evaluation of that case within eight days." *Id.* at 58:23-59:6. Further, Everett testified that he did not know what discovery had been produced by J.B. Hunt at the time of the second settlement demand, and that he did not review any of the documents that were produced by J.B. Hunt in Ms. Recinos' wrongful death case. *Id.* at 61:4-12.  Because Everett failed to conduct even the most basic investigation regarding the material facts of Ms. Recinos' wrongful death case or the analysis performed by the Kherkher Defendants prior to making settlement demands to J.B. Hunt, his opinions critiquing those settlement demands are unsupported by any verifiable facts or data and merely reflect his uninformed subjective opinion.  As such, the Court should exclude these opinions.

Second, Everett opines that the Kherkher Defendants "did not conduct a reasonable investigation into the material facts of the motor vehicle accident and specifically did not depose the truck driver . . ." *See* Exhibit A ¶ 16. When asked about this opinion, Everett readily admitted that he does not actually know what investigation the Kherkher Defendants performed other than that they did not depose the J.B. Hunt truck driver. *See* Exhibit B at 91:5-24. Because Everett failed to review any evidence or perform any analysis regarding the investigation the Kherkher Defendants conducted in prosecuting Ms. Recinos' wrongful death case, his opinion that the Kherkher Defendants' investigation was inadequate is nothing more than his uninformed subjective belief. Accordingly, the Court should exclude this opinion.

Third, Everett opines that the Kherkher Defendants did not adequately represent the Recinos Estate because they settled Ms. Recinos' wrongful death case simultaneously with Ms. Mejia's wrongful death despite the two cases having, in Everett's opinion, "markedly different values." *See* Exhibit A ¶ 17. Everett conceded, however, that clients, not lawyers, determine the amount for which a case settles, and that he had not seen any evidence that either the Recinos or Mejia families were dissatisfied with the settlement they received from J.B. Hunt. *See* Exhibit B at 41:21-42:5; 44:1-4. Further, Everett testified that the only basis for his opinion that the two cases had different values was: "One lady's got two little ole bitty kids, some other people that depend on her, exclusively, for bread and beans. And the other client is differently situated." *See* Exhibit B at 43:18-25. Once again, Everett's testimony confirms that his opinion regarding the relative settlement values of Ms. Recinos' and Ms. Mejia's wrongful death cases, and his critique of the settlement the Kherkher Defendants obtained for the Recinos Estate, is not based on any meaningful investigation of the facts and simply reflects his uninformed subjective belief. Accordingly, the Court should also exclude this opinion.

**D.     The Court Should Exclude Everett's Opinions Regarding the Legal Work Hatfield Would Have Performed and the Results Hatfield Would Have Obtained in a Hypothetical Settlement or Jury Trial because they are Excessively Speculative and Unsupported by Sufficient Facts or Analysis.**

In the remaining paragraphs of Everett's report, he offers various opinions regarding the legal work Hatfield would have performed if he had actually ever represented the Recinos Estate, as well as the results Hatfield would have obtained for the Recinos Estate in a hypothetical settlement or jury trial. *See* Exhibit A ¶¶ 3-5, 10-16, 18, and 21. The Court should exclude all of these opinions because they are excessively speculative and unsupported by sufficient facts or analysis.

**1.     Everett's Opinions Regarding the Legal Work Hatfield Would Have Performed if he had Actually Represented the Recinos Estate are Excessively Speculative and Unsupported by Sufficient Facts or Analysis.**

Everett offers various opinions regarding how a "reasonable attorney licensed in Arkansas having expertise similar to that of Jason Hatfield" would have prosecuted Ms. Recinos' wrongful death case. Specifically, Everett opines that such an attorney: (1) would have deposed the J.B. Hunt truck driver and conducted other "adequate discovery" before settling Ms. Recinos' wrongful death case, *see* Exhibit A ¶¶ 3, 16; (2) would have "demanded and required a settlement amount in excess of that ultimately agreed to by agents of Kherkher Garcia, LLP" and would not have settled Ms. Recinos' and Ms. Mejia's wrongful death cases for the same amount, *id.* ¶¶ 4, 5, 10, 21; and (3) would have reviewed a handful of jury verdicts rendered in Arkansas and a single trucking industry publication discussing a sample of approximately 600 trucking verdicts in the United States from 2006 to 2018. *Id.* ¶¶ 12-14. All of these opinions should be excluded because they are excessively speculative and unsupported by sufficient facts or analysis.

As an initial matter, Everett purports to opine about the work a reasonable attorney "having expertise similar to that of Jason Hatfield" would have performed for the Recinos Estate without

actually investigating or knowing anything about Hatfield's purported "expertise." As discussed above, Everett did not interview Hatfield in the course of forming his opinions, nor did he review the settlements or jury verdicts Hatfield has obtained in his career in personal injury, wrongful death, or any other types of cases. *See* Exhibit B at 31:8-18; 41:13-20; 97:12-17; 98:12-14. Instead, Everett's opinions regarding Hatfield's purported "expertise" are based on his uninformed subjective beliefs and a single case he worked on with Hatfield approximately a decade ago, the details of which Everett concedes he's "not real sure about." *Id.* at 41:13-20. Because Everett did no meaningful investigation, and has no personal knowledge, regarding Hatfield's purported "expertise," his opinions about the work a reasonable attorney "having expertise similar to that of Jason Hatfield" would have performed are excessively speculative and unsupported by sufficient facts or analysis. For this reason alone, the Court should exclude every one of Everett's opinions that concerns the work a reasonable attorney "having expertise similar to that of Jason Hatfield" would have performed for the Recinos Estate.

Moreover, Everett's opinion that a reasonable attorney would have deposed the J.B. Hunt truck driver and conducted additional "adequate discovery" lack any factual support and are patently speculative. Indeed, Everett readily admitted that he did not review any of the documents that were produced by J.B. Hunt in Ms. Recinos' and Ms. Mejia's wrongful death cases, he does not know what evidence might have come out in discovery in those cases, and he has no idea what the J.B. Hunt truck driver's testimony would have been. *Id.* at 31:25-32:10; 61:4-12; 66:15-67:17; 67:23-68:5; 90:4-91:24. Accordingly, Everett's opinions regarding the discovery a reasonable attorney would have conducted in Ms. Recinos' wrongful death case are inherently speculative, unsupported by sufficient facts and analysis, and should be excluded.[2]

---

[2] Significantly, Hatfield never deposed the J.B. Hunt truck driver in this case and thus can only speculate as to what the driver's testimony might have been. Nevertheless, Hatfield offers Everett's testimony to suggest that the

The same is true of Everett's opinions regarding the settlement a reasonable attorney would have demanded on behalf of the Recinos' Estate. Everett conceded he did not review any evidence regarding J.B. Hunt's settlement position, he did not know whether the settlement the Kherkher Defendants obtained for the Recinos Estate was the maximum amount J.B. Hunt would have been willing to pay, and the only evidence he had seen regarding the value J.B. Hunt placed on Ms. Recinos' and Ms. Mejia's wrongful death cases was the amount J.B. Hunt actually paid to settle those cases. *Id.* at 32:11-22; 64:18-65:13; 95:16-96:4. Further, Everett conceded that the client, not the lawyer, determines whether to settle, when to settle, and for how much to settle, and that he did not know what Ms. Recinos' and Ms. Mejia's heirs believed was a reasonable amount of settlement, but that he had seen no evidence that either family was dissatisfied with the settlement they received. *Id.* at 41:21-42:5; 44:1-4; 151:8-152:6. Accordingly, Everett's opinions regarding the settlement a reasonable attorney would have demanded and his opinions that a reasonable attorney would not have settled Ms. Recinos' and Ms. Mejia's wrongful death cases for the same amount are not based on any actual facts or evidence, but simply reflect Everett's uninformed speculative belief. For this additional reason, these opinions should be excluded.

Finally, there is no factual support for Everett's opinions that a reasonable attorney representing the Recinos Estate would have reviewed a select number of Arkansas jury verdicts and a single trucking industry publication regarding a small sample of trucking verdicts from 2006 to 2018. With respect to the few Arkansas jury verdicts referenced in Everett's report, Everett could not explain how he even selected the verdicts he claims a reasonable attorney would have

---

driver's deposition would have led to a better result for the Recinos Estate, and Hatfield seeks damages in this case based on the results he claims he would have obtained in a hypothetical settlement or jury verdict if he had ever actually represented the Recinos Estate. This exemplifies the inherently flawed and speculative nature of Hatfield's purported claims in this case.

reviewed. *Id.* at 142:19-144:4. Moreover, Everett conceded that each of these verdicts was rendered well before Ms. Recinos' tragic accident in different venues than where Ms. Recinos' wrongful death case was filed. *Id.* at 71:25-77:12. In addition, Everett conceded that each of the verdicts he referenced involved different facts than Ms. Recinos' case and that the underlying facts of a case are the most important factor in trying to predict how a jury might view a particular case. *Id.* at 77:17-78:2. Thus, Everett's opinion that a reasonable attorney representing the Recinos Estate would have reviewed a handful of arbitrarily selected Arkansas jury verdicts in cases that are not remotely the same as Ms. Recinos' wrongful death case simply reflects Everett's subjective belief, not an opinion based on relevant evidence or meaningful analysis.

With respect to the trucking industry publication, Everett conceded that he did not conduct any independent analysis regarding the publication, nor did he know whether the publication is even accurate. *Id.* at 79:2-81:14. Further, Everett testified that he did not believe any of the verdicts in the report were from Washington County, Arkansas (where Ms. Recinos' wrongful death case was filed), but that he "didn't really look at it that thoroughly." *Id.* 82:22-25. In other words, Everett seeks to offer an opinion that a reasonable attorney representing the Recinos Estate should have reviewed a single trucking industry publication that Everett himself did not thoroughly review and which may or may not be accurate. Such an opinion is wholly untethered to any relevant facts or meaningful analysis, and should therefore be excluded.

    **2.    Everett's Opinions Regarding the Results Hatfield Would Have Obtained in a Hypothetical Settlement or Jury Trial are Excessively Speculative and Unsupported by Sufficient Facts or Analysis.**

Everett's remaining opinions concern the results he believes Hatfield would have obtained in a hypothetical settlement or jury trial if he had actually represented the Recinos Estate. *See*

Exhibit A ¶¶ 11, 15, 18.  The Court should exclude each of these opinions because they are excessively speculative and unsupported by sufficient facts or analysis.

Everett opines that a Washington County, Arkansas jury likely would have awarded more than the amount for which the case settled to the Recinos Estate if Ms. Recinos' wrongful death case had been "properly presented to the jury by a lawyer of similar experience of Jason Hatfield," and the jury had "been aware of facts known only to J.B. Hunt at the time including specifically the testimony of the driver of the J.B. Hunt vehicle . . ." *Id.* ¶¶ 11, 15.  These opinions are excessively speculative and should be excluded for several reasons.

First, as discussed above, Everett did no investigation, and has no personal knowledge, regarding Hatfield's "experience."  Everett did not interview Hatfield, he did not review any specific settlements or jury verdicts Hatfield has obtained in his career, and his only personal knowledge regarding Hatfield's experience is a single case from approximately a decade ago that he's "not real sure about."  *See* Exhibit B at 31:8-18; 41:13-20; 97:12-17; 98:12-14.  Accordingly, Everett's opinion regarding the jury verdict that would have been obtained "by a lawyer of similar experience of Jason Hatfield" is pure speculation untethered to any facts or data.

Second, Everett readily admits that he has no idea what facts were known only to J.B. Hunt or what the J.B. Hunt driver's testimony would have been.  *Id.* at 90:4-23.  Again, Everett never reviewed the documents produced by J.B. Hunt in Ms. Recinos' wrongful death case, and, because Hatfield never deposed the J.B. Hunt truck driver in this case, Everett does not, and could not, know what the driver's testimony would have been.  *Id.* at 31:25-32:10; 61:4-12; 66:15-67:17; 67:23-68:5; 90:4-91:24. Consequently, Everett can only speculate as to how "facts known only to J.B. Hunt" or the testimony of the J.B. Hunt driver might have impacted a hypothetical jury's verdict in Ms. Recinos' wrongful death case.

Finally, Everett readily admits that "[t]he outcome of jury trials is unpredictable," that "it is impossible to predict with certainty what result a jury would reach in a given case," that it is not possible for him to predict "to a reasonable degree of certainty the amount of damages that a jury might award in a given case," and that attempting to predict what verdict a jury would reach requires "a degree of speculation." *Id.* at 11:14-18; 12:18-20; 89:18-24. Everett also conceded that numerous factors impact the verdict a jury might reach in a given case, including the facts of the case, the law as explained by the judge, the credibility of the attorneys and witnesses, the venue, and the makeup of the jury. *Id.* at 14:5-18:7. However, Everett does not, and could not, know how any of these factors would have impacted a jury verdict in Ms. Recinos' wrongful death case because that case was never tried to a jury. What's more, Everett was adamant that the most important factor in trying to predict the verdict a jury might reach in a given case is "a thorough and comprehensive understanding of what the facts of the occurrence are." *Id.* at 19:25-20:23. However, as discussed above, Everett admittedly did not do any investigation regarding the facts of Ms. Recinos' wrongful death case and thus has not come to the thorough and comprehensive understanding of the underlying facts that he admits is necessary to even attempt to predict the verdict the jury might have reached.

Everett's opinion that J.B. Hunt more than likely would have settled Ms. Recinos' wrongful death case for more than it actually did "had the attorneys for the claimants formed a diligent investigation" is also excessively speculative. Again, Everett never reviewed the underlying facts of Ms. Recinos' wrongful death case and admittedly has no idea what a more "diligent investigation" would have revealed. Further, Everett did not review any evidence regarding J.B. Hunt's settlement position, and he does not know whether the settlement the Kherkher Defendants obtained for the Recinos Estate was the maximum amount J.B. Hunt would have been willing to

pay. *Id.* at 32:11-22; 64:18-65:13; 95:16-96:4.  As such, Everett can only speculate as to whether J.B. Hunt would have settled Ms. Recinos' wrongful death case for more than it actually did, and the Court should not permit Everett to offer such purely speculative opinions at trial.

For all these reasons, Everett's opinions that a hypothetical jury likely would have awarded more than the settlement amount to the Recinos Estate and that J.B. Hunt likely would have settled Ms. Recinos' wrongful death case for more than it actually did are not based on "good grounds." Rather, these opinions are pure speculation based on nothing more than Everett's subjective belief. Accordingly, the Court should preclude Everett from offering these opinions at trial.

## CONCLUSION

For the foregoing reasons, the Kherkher Defendants respectfully request that the Court exclude the testimony and opinions of John Everett in their entirety.

Respectfully submitted,

By:    */s/ G. Spence Fricke*
G. Spence Fricke, Ark. Bar No. 79068
gsfricke@barberlawfirm.com
Jerry D. Garner, Ark. Bar No. 2014134
jgarner@barberlawfirm.com
BARBER LAW FIRM PLLC
3400 Simmons Tower
425 West Capitol Avenue
Little Rock, Arkansas 72201
Telephone: (501) 372-6175

-And-

Dale Jefferson, Texas Bar No. 10607900
jefferson@mdjwlaw.com
*Admitted Pro Hac Vice*
MARTIN, DISIERE, JEFFERSON & WISDOM LLP
Niels Esperson Building
808 Travis Street, Suite 1100
Houston, Texas 77002
Telephone: (713) 632-1700

-And-

Randy Gordon, Texas Bar No. 00797838
rdgordon@duanemorris.com
Lucas Wohlford, Texas Bar No. 24070871
lwohlford@duanemorris.com
*Admitted Pro Hac Vice*
DUANE MORRIS LLP
100 Crescent Court, Suite 1200
Dallas, Texas 75201
Telephone: (214) 257-7200

***Attorneys for Defendants Kherkher Garcia, LLP, Steven Kherkher, Jesus Garcia, and Kevin Haynes***