IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JASON M. HATFIELD, P.A.                                                              PLAINTIFF

V.                               CASE NO. 5:22-CV-5110

TONY PIRANI and PIRANI LAW PA                                                   DEFENDANTS

## OPINION AND ORDER

Before the Court are:

- Defendants Tony Pirani's and Pirani Law PA's (collectively, "Pirani" or "the Pirani Defendants") Motion for Extension of Time to File Post-Trial Damages Brief (Doc. 433), and Plaintiff Jason M. Hatfield, P.A.'s ("Hatfield") Response in Opposition (Doc. 437);

- Pirani's Motion for Leave to File Unredacted Version of Plaintiff's Settlement Agreement with Other Defendants (Doc. 434) and Hatfield's Response in Opposition (Doc. 436);

- Pirani's Motion for Leave to File Attached Proffer (Doc. 435) and Hatfield's Response in Opposition (Doc. 437); and

- Hatfield's post-trial Damages Brief (Doc. 433) and Pirani's post-trial Damages Brief (Ex. B to this Opinion and Order).

For the reasons given below, all three of Pirani's Motions will be **DENIED**, and judgment will be entered for Hatfield against the Pirani Defendants in the amount of $11,473,000.00.

1

## I. BACKGROUND

On July 21, 2025, the jury trial of this matter began, and on July 28 the jury returned a verdict for Plaintiff Jason M. Hatfield, P.A., against Defendants Tony Pirani and Pirani Law PA. *See* Doc. 429. On Count Six of Hatfield's Third Amended Complaint—conspiracy to violate 18 U.S.C. § 1962(c) of the Racketeer Influenced and Corrupt Organization Act ("RICO"), in violation of 18 U.S.C. § 1962(d), *see* Doc. 253, ¶¶ 488–504—the jury found the Pirani Defendants liable to Hatfield in the amount of $3,945,000.00. *See* Doc. 429, p. 3. On Count Ten of Hatfield's Third Amended Complaint—civil conspiracy in violation of Arkansas common law—the jury found the Pirani Defendants liable to Hatfield for $638,000.00 in actual damages and $2,000,000.00 in punitive damages, totaling $2,638,000.00 on that Count. *See* Doc. 429, pp. 5–6.

Immediately after discharging the jury, the Court instructed the parties to file post-trial damages briefs regarding credits and double recovery no later than August 8, 2025. Hatfield's brief was timely filed on July 29, 2025. *See* Doc. 431. On August 8, Pirani filed a Motion for Extension of Time, requesting that his deadline to file the damages brief be extended to August 11, 2025 at noon, because he would be unable to finish his brief before close of business on August 8, but could not file it electronically later that evening as "due to a cyber security issue, it is not currently possible to file documents under seal via the e-file system." *See* Doc. 433, ¶ 5. The only other basis cited for his requested extension was the general complexity of the issues involved and the burdens that researching these matters imposed on a solo practitioner like himself. *See id.* at ¶¶ 2–3. Pirani contemporaneously emailed the Court regarding this request at 2:26 p.m. *See* Ex. A to this Opinion and Order. The Court responded to the email, informing Pirani that no

extension would be granted, but that his materials would be deemed timely "filed" so long as they were emailed to chambers before midnight that night. *See id.* Pirani ultimately missed the midnight deadline by one minute and requested that his brief still be considered despite its tardiness. *See id.* Then, the following Monday, Pirani filed a Motion for Leave to File Attached Proffer (Doc. 435), to which he attached a materially different (and much more voluminous) version of his Damages Brief than what he had emailed to the Court on Friday night.

## II. DISCUSSION

Pirani's Motions for Extension (Doc. 433) and for Leave (Doc. 435) will both be **DENIED**. Pirani has not stated even remotely good cause for the requested extension. Regarding technical difficulties around electronic filing, the Court provided Pirani with a perfectly workable solution: simply email the documents to chambers before the original deadline.

Regarding the complexity of the issues—the Court disagrees that this imposed any burden that Pirani could not have easily managed had he made responsible use of the time available to him. The deadline the Court imposed for damages briefing was August 8—eleven calendar days after the conclusion of trial. When Pirani asked the Court whether this deadline also applied to any renewed motions for judgment as a matter of law or for a new trial, the Court responded from the bench that it did not. The Court made clear that it was simply seeking briefing on the limited issues of credit and double recovery. Indeed, these issues were so narrow and straightforward that Hatfield managed to file his Damages Brief the very next day after the jury's verdict was received, using less than one of the eleven calendar days available to him for this task. And yet, when Pirani

(untimely) emailed his Damages Brief to the Court, the vast majority of that Brief was focused on the sufficiency of the evidence, see Ex. B to this Opinion and Order (hereinafter, "Pirani Damages Brief"), ¶ 1, arguments regarding immunity, see id. at ¶¶ 3–7, and whether Hatfield's civil conspiracy claim fails as a matter of law, see id. at ¶¶ 8–9. These are not relevant to the issues of credit and double recovery on which the Court requested briefing. Rather, they are more properly the subject of a renewed motion for judgment as a matter of law or for a new trial under Rule 50(b) of the Federal Rules of Civil Procedure—which, again, the Court had already expressly explained to Pirani was *not* subject to the August 8 deadline for damages briefing. Pirani had more than adequate time to meet the deadline for damages briefing; he simply misused it.

Although the Court is denying Pirani's Motions for Extension and for Leave, and notwithstanding the Court's frustration with Pirani's chronic inability to meet deadlines and comply with scheduling orders throughout this case, the Court will nevertheless consider the Damages Brief that he untimely emailed to the Court at midnight on August 9, because its tardiness by only one minute is minimal and imposes no prejudice on Hatfield. However, the Court will not consider the arguments raised therein regarding the sufficiency of the evidence, immunity, and whether Hatfield's civil conspiracy claim fails as a matter of law, because, again, those arguments are not relevant to the issues regarding damages calculation on which the Court requested post-trial briefing. If Pirani wishes to preserve these issues for appeal, then he will need to do so in a ***timely*** filed motion under Rule 50(b) of the Federal Rules of Civil Procedure.

Pirani's Damages Brief does, however, raise three arguments which are relevant to damages calculation. First, Pirani contends that Hatfield must elect between his RICO

4

and civil conspiracy awards because Hatfield only suffered one injury and to allow collection on both would amount to double-recovery. See Pirani Damages Brief, ¶¶ 11–12. The Court disagrees.

This Court previously ruled that one method by which Hatfield could show injury on his RICO claim was by proving that he would have obtained a greater recovery on the underlying lawsuit than the Defendants in the instant case did. See Doc. 352, pp. 29–32. (The Court will refer to this as the "Better Result Theory" below.) But the Court also ruled that the amount of any damages proven under that theory of injury would be offset by the $1.5 million attorney's lien on the underlying lawsuit that Hatfield successfully enforced in state court. See id. at 25–27. Relatedly, the Court also ruled that the trebling of any such RICO damages under 18 U.S.C. § 1964(c) would occur *after*, not before, the credit for Hatfield's lien is applied. See id. In so ruling, the Court was persuaded by precedent from the Second and Fifth Circuits holding that recovery of wrongfully-withheld funds reduces the amount of "damages sustained" and that accordingly the return of such funds must be accounted for before the net damages are trebled. See id. (citing HCB Fin. Corp. v. McPherson, 8 F.4th 335, 343–44 (5th Cir. 2021); Stochastic Decisions, Inc. v. DiDomenico, 995 F.2d 1158, 1166 (2d Cir. 1993)).[1]

Another theory of injury the Court ruled Hatfield could prove was the amount of attorney fees and costs that he spent successfully enforcing his lien. See id. at 26–27. (The Court will refer to this as the "Fees and Costs Theory" below.) These two theories of injury are not mutually exclusive; they concern separate, albeit related, injuries that

---

[1] Hatfield disagrees with this ruling. But it is the law of the case in this matter; this Court remains persuaded of its correctness and will not revisit it here.

Hatfield claims to have suffered. Hatfield argued both theories of injury to the jury in the trial of this matter, and the jury appears to have concluded that he successfully proved both theories. The actual damages the jury awarded Hatfield on his civil conspiracy claim corresponded precisely to the $638,000.00 in attorney fees and costs that he testified he had incurred enforcing his lien. The RICO damages the jury awarded, on the other hand, corresponds to Hatfield's Better Result Theory of injury.

Specifically, the jury appears to have credited the testimony of Hatfield's economic expert witness Dr. Ralph Scott that the value of damages to the Recinos estate for lost income, fringe benefits, and household services would have been in the range of $617,158.00 to $862,295.00, and that punitive damages against J.B. Hunt roughly equivalent to a "$1,000 speeding ticket" would have been around $13,847,000.00. The jury appears to have based Hatfield's damages under this theory of injury on the one-third contingency fee agreement that was received into evidence, and to have further reduced his damages under this theory by the amount of his lien that he successfully recovered. For example, economic damages of $621,000.00 for lost income, fringe benefits, and household services, plus punitive damages of $13,800,000.00, would equal a hypothetical recovery for the Recinos estate of $14,421,000.00. Hatfield's one-third contingency fee for this amount would be $4,807,000.00. That amount exceeds the jury's RICO damages award of $3,945,000.00 by $862,000.00—which is the difference between the full amount of Hatfield's $1,500,000.00 attorney lien and the $638,000.00 in fees and costs that he incurred enforcing it.

In other words, the jury's RICO damages award is already consistent with this Court's ruling that Hatfield may not be awarded damages for funds he already recovered

through enforcement of his lien. Since the jury has already credited Hatfield's lien recovery to its damages award, the Court need not do so now. Furthermore, since the jury compensated Hatfield for his Better Result Theory of injury *only* through his RICO claim and compensated Hatfield for his Fees and Costs Theory of injury *only* through his civil conspiracy claim, neither award constitutes any double recovery for a single injury. Rather, the RICO and civil conspiracy awards are separate damages awards for separate, albeit related, injuries that the jury concluded Hatfield suffered.

The second argument regarding damages calculations raised in Pirani's Damages Brief is that the amount of credit the Court must apply pre-trebling exceeds the amount of damages that the jury awarded Hatfield in his RICO claim, meaning there are no RICO damages to be trebled. *See* Pirani Damages Brief, ¶ 12. There are two problems with this argument. The first is that, as explained above, the credit for Hatfield's lien recovery has already been applied to his RICO damages award—by the jury. The second problem is that Pirani contends the pre-trebling credit to be applied here should be not only for Hatfield's lien recovery, but also for the money that was paid to him under a settlement agreement he reached with Pirani's codefendants in this case. *See id.* ¶ 12.

But this Court never ruled that credit for settlements with codefendants in this case should be applied pre-trebling. It ruled that credit for Hatfield's successful enforcement of his *lien* in a *separate state court proceeding* should be applied pre-trebling. The cases on which this Court relied in reaching that ruling did not involve pre-trebling credits for settlements reached with codefendants in the RICO matter. Rather, each such case involved credit for money recovered from a defendant through that defendant's satisfaction of a judgment in a separate proceeding concerning the debt that was also the

7

subject of the RICO action. *See HCB Fin. Corp. v. McPherson*, 8 F.4th at 339; *Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d at 1165–66.  And, *Stochastic* explicitly distinguished its facts from cases in which a RICO defendant seeks an offset of a damage award against him by pretrial settlements the plaintiff has reached with his codefendants or his third-party co-conspirators in that same RICO action. *See* 995 F.2d at 1166.  In the latter scenario, the offset is applied *post*-trebling, not pre-trebling. *See id.*  The reason for this is that such settlement agreements are not merely satisfaction of the underlying debt which constitutes the RICO injury, but rather are settlements of the RICO claim itself—which always necessarily entails treble damages under 18 U.S.C. § 1964(c).  To apply such an offset pre-trebling would prevent RICO plaintiffs from obtaining full satisfaction of their RICO claims. *See, e.g., In re Nat'l Mortg. Equity Corp. Mortg. Pool Certificates Securities Litig.*, 636 F. Supp. 1138, 1151–52 (C.D. Cal. 1986).  Accordingly, Hatfield's RICO award against Pirani will be offset *post*-trebling by the pretrial settlement he reached with Pirani's codefendants in this action.

The third and final argument regarding damages calculation raised in Pirani's Damages Brief is that it would be unconstitutional for punitive damages to be assessed against him where no compensatory damages are awarded. *See* Pirani Damages Brief, ¶ 13 (and accompanying section header).  The Court does not understand this argument. The jury expressly awarded both compensatory *and* punitive damages on Hatfield's civil conspiracy claim, for $638,000.00 and $2,000,000.00, respectively.  Accordingly, this argument fails.  In light of the foregoing rulings, the jury's award on Hatfield's RICO claim will be trebled from $3,945,000.00 to $11,835,000.00, and added to the jury's award of $2,638,000 on Hatfield's civil conspiracy, for a subtotal award of $14,473,000.00, which

will then be offset by the amount that Hatfield received under the settlement agreement with Pirani's codefendants in this case.

Here, the Court must pause to address the matter of this settlement agreement's confidentiality. Pirani has filed a Motion for Leave to File Unredacted Version of Plaintiff's Settlement Agreement with Other Defendants (Doc. 434), which Plaintiff opposes because of that settlement agreement's confidentiality provision, see Doc. 436. Here there are competing public policies at play. On the one hand, federal courts have widely recognized and enforced in various contexts "the public policy to encourage settlements and to uphold confidentiality provisions." See Multi-Tech Sys., Inc. v. Dialpad.com, Inc., 2002 WL 27141, at *2 (D. Minn. Jan. 8, 2002) (quoting Young v. State Farm Mut. Auto Ins. Co., 169 F.R.D. 72, 76 (S.D.W. Va. 1996)). On the other hand, there are times when a settlement agreement's confidentiality provision may "run counter to the policy of public access to judicial documents," the latter of which carries a "strong presumption." See Kappelmeier v. Wil-Shar, Inc., 2019 WL 2870112, at *1 (W.D. Ark. July 3, 2019). Now that the trial of this matter has concluded and the issue of offsetting damages is before the Court, the Court does not see any point in continuing to shield the amount of this settlement agreement from the public, because anyone sufficiently dedicated to the task and versed in basic arithmetic would be able to calculate that settlement amount simply by reviewing how the Court resolved other issues in this publicly-filed Opinion and Order and then comparing the amount of the publicly-filed judgment ultimately entered in this case with the amounts in the jury's publicly-filed verdict form.

However, the Court finds that Pirani's Motion has not provided any reason why the aforementioned public policy of upholding confidentiality provisions to encourage

settlements should otherwise be overcome here. The only justifications Pirani provides for this request are the arguments that Hatfield breached the settlement agreement by proceeding to trial against Pirani, and that Pirani himself is not bound by the settlement agreement's confidentiality provisions. Setting aside whether either of these assertions is correct, they fundamentally fail to address any of the concerns which motivate the general public policy favoring such confidentiality provisions' enforcement, which are especially salient here given that all of Pirani's codefendants in this case maintain an ongoing interest in that provision's enforcement. Therefore, although the Court sees no practical way to avoid disclosure of the settlement amount, it will otherwise continue to enforce that agreement's confidentiality provision; so Pirani's Motion for Leave to File Unredacted Version of Plaintiff's Settlement Agreement with Other Defendants (Doc. 434) will accordingly be **DENIED**.

Returning now to the calculation of damages, then: the subtotal award of $14,473,000.00 arrived at above, will be offset by the $3,000,000.00 that Hatfield received under the settlement agreement with Pirani's codefendants in this case, for a final total of $11,473,000.00.

Finally, the Court recognizes that an award of "a reasonable attorney's fee," 18 U.S.C. § 1964(c), is mandatory in RICO cases, see *United HealthCare Corp. v. Am. Trade Ins. Co., Ltd.*, 88 F.3d 563, 575–76 (8th Cir. 1996), and notes that Hatfield has requested in his damages briefing a contingent attorney fee of 40% of his recovery in this matter. The Court will not address attorney fees at this time, as it would prefer for the issue of what constitutes a reasonable award of attorney fees in this case to be addressed by post-judgment motion practice under Rule 54(d)(2).

## III. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants Tony Pirani's and Pirani Law PA's Motion for Extension of Time to File Post-Trial Damages Brief (Doc. 433), Motion for Leave to File Unredacted Version of Plaintiff's Settlement Agreement with Other Defendants (Doc. 434), and Motion for Leave to File Attached Proffer (Doc. 435) are all **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Jason M. Hatfield, P.A. is entitled to a judgment against Defendants Tony Pirani and Pirani Law PA in the amount of $11,473,000.00. Judgment will enter contemporaneously with this Order.

**IT IS SO ORDERED** on this 28th day of August, 2025.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE