## IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

**JASON M. HATFIELD, P.A.**                                          **PLAINTIFF**

**V.**                               **CASE NO. 5:22-CV-5110**

**TONY PIRANI and PIRANI LAW PA**                          **DEFENDANTS**

### OPINION AND ORDER

Before the Court are:

- Defendants Tony Pirani's and Pirani Law PA's (collectively, "Pirani" or "the Pirani Defendants") Renewed Motion for Judgment as a Matter of Law and Motion for New Trial or, Alternatively, Remittitur, and Incorporated Brief in Support and Rule 60(b) Notice (Doc. 445), Pirani's Joint Clarification Regarding Rule 60(b) Notice (Doc. 446), and Plaintiff Jason M. Hatfield, P.A.'s ("Hatfield") Response in Opposition (Doc. 447);

- Pirani's Rule 4(a)(5) Motion for Extension of Time to File Notice of Appeal (Doc. 448), and Hatfield's Response in Opposition (Doc. 449);

- Hatfield's Motion for Attorneys' Fees and Costs (Doc. 442) and Brief in Support (Doc. 443), and Pirani's Response in Opposition (Doc. 444); and

- This Court's July 31, 2025 Order to Show Cause (Doc. 432), Pirani's Response (Doc. 438), and Hatfield's Reply (Doc. 439) and Supplement (Doc. 450) thereto.

For the reasons given below, Pirani's Motions will all be **DENIED**, Hatfield's Motion will be **GRANTED IN PART AND DENIED IN PART**.

## I. Pirani's Motion for Judgment as a Matter of Law (Doc. 445) and Motion for Extension of Time to File Appeal (Doc. 448)

This case was tried to a jury from July 21 through July 28, 2025, after which the Court received briefing from the parties on the issue of damages. On August 28, 2025, Judgment was entered for Hatfield against both Pirani Defendants, jointly and severally, in the amount of $11,473,000.00. *See* Doc. 441. On September 26, 2025—29 days after the Judgment was entered—Pirani filed his Renewed Motion for Judgment as a Matter of Law and Motion for New Trial or, Alternatively, Remittitur, and Incorporated Brief in Support and Rule 60(b) Notice (Doc. 445).

This Motion is untimely. Rule 50(b) of the Federal Rules of Civil Procedure imposes a deadline of "[n]o later than 28 days after the entry of judgment" for the filing of a renewed motion for judgment as a matter of law. Likewise, the deadline for filing a motion for a new trial is "no later than 28 days after the entry of judgment." Fed. R. Civ. P. 50(d); *see also* Fed. R. Civ. P. 59(b). These deadlines are firm and immutable. Even if the Court wished to extend them, it could not do so, as Rule 6(b)(2) states that "[a] court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b)." The Eighth Circuit has emphasized that these deadlines "may not be extended by the court, nor by agreement of counsel." *See Dill v. General Am. Life Ins. Co.*, 525 F.3d 612, 616 (8th Cir. 2008). Of course, and in any event, there is no such agreement of counsel here: Hatfield objected to this Motion's untimeliness later on the very same day that it was filed. *See* Doc. 447, p. 1. Accordingly, the Court will not consider Pirani's Renewed Motion for Judgment as a Matter of Law and Motion for New Trial, and will **DENY** it as untimely.

After filing his Renewed Motion for Judgment as a Matter of Law, but also on the same day, Pirani filed a document styled as "Defendants' Joint Clarification Regarding Rule 60(b) Notice" (Doc. 446).  That document stated that "[t]he 'Rule 60(b) Notice' in ECF 445 was not intended to serve as a Rule 60(b) motion on the merits, but solely to memorialize Pirani's intent to seek Rule 60(b) relief at a later time if appropriate," and therefore requested "that the Court not construe ECF 445 as a 'Rule 60(b) motion' or adjudicate Rule 60(b) grounds at this time, as Pirani intends to file a separate, full Rule 60(b) motion . . . after the Court rules on the pending Rule 50(b)/59 motion."  *See id.* at ¶¶ 1–2.  This filing appears to simply be a notice of intent to make some future filing, rather than a proper motion seeking any sort of affirmative relief from the Court; and to whatever extent it might be construed as supplemental briefing in support of Pirani's Renewed Motion for Judgment as a Matter of Law, then it is of course untimely. Accordingly, Pirani's Joint Clarification will also be disregarded.

More than a month later, on October 27, 2025, Pirani filed a Joint Rule 4(a)(5) Motion for Extension of Time to File Notice of Appeal (Doc. 448).  Under the Federal Rules of Appellate Procedure, the deadline for Pirani to have filed his notice of appeal was "30 days after entry of the judgment or order appealed from," Fed. R. App. P. 4(a)(1)(A), or September 27, 2025.  However, since September 27 fell on a Saturday, that deadline was automatically extended to the following Monday, September 29.  *See* Fed. R. Civ. P. 6(a)(1)(C).  Under Appellate Rule 4, the filing of a motion "for judgment under Rule 50(b)," or "to alter or amend the judgment under Rule 59," or "for a new trial under Rule 59" tolls the running of this deadline—but only if the filing of those motions is done "within the time allowed by those rules."  *See* Fed. R. App. P. 4(a)(4)(A).  As discussed above, Pirani's

Motion under those rules was not timely filed, so the clock was never tolled on his appellate deadline.

Appellate Rule 4 allows the district court to extend the time to file a notice of appeal if the party seeking the extension moves for it "no later than 30 days after" his deadline to file a notice of appeal and if "that party shows excusable neglect or good cause" for the requested extension." *See id.* at 4(a)(5)(A). Here, Pirani's October 27 Motion for Extension came within 30 days of his September 29 deadline to file a notice of appeal, but he has not shown excusable neglect or good cause for the requested extension.

Courts consider four circumstances relevant when determining whether neglect is excusable: "the danger of prejudice to the non-moving party, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Gould on behalf of St. Louis – Kansas City Carpenters Regional Council v. Bond*, 1 F.4th 583, 588 (8th Cir. 2021). However, "[t]he movant's reason for missing the deadline is key to the analysis." *Id.* (internal quotation marks omitted). Importantly, "inadvertence, ignorance of the rules, or *mistakes construing the rules* do not usually constitute 'excusable neglect.'" *Id.* (emphasis added). Granting an extension of the appeal deadline where the purported "excusable neglect" is "nothing more than garden-variety attorney inattention" constitutes reversible error. *See id.* (internal quotation marks omitted). That is precisely the situation here. The only excuse Pirani offers for having missed his September 29 appeal deadline is that he mistakenly believed his untimely September 26 filings discussed above had tolled the appellate deadline. *See* Doc. 448, ¶¶ 7, 16–17, 21. But the Rules and well-settled caselaw discussed above all clearly say otherwise;

Pirani's "mistakes construing the rules" do not constitute excusable neglect.  And his Motion does not even attempt to argue that they constitute good cause.  Therefore, Pirani's Motion for Extension of Time to File Notice of Appeal will be **DENIED**.

### II.  Hatfield's Motion for Attorneys' Fees and Costs (Doc. 442)

Hatfield has filed a Motion seeking to recover his attorney fees and costs in bringing this action.  The jury found Pirani liable to Hatfield for violations of the Racketeer Influenced and Corrupt Organization Act ("RICO") as well as for Arkansas common law civil conspiracy.  *See* Doc. 429.  RICO states that a party who brings a successful civil claim through its private right of action "shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."  *See* 18 U.S.C. § 1964(c). The Eighth Circuit has interpreted this language to mean that "an award of reasonable attorney's fees and costs under RICO is mandatory."  *United HealthCare Corp. v. Am. Trade Ins. Co., Ltd.*, 88 F.3d 563, 575 (8th Cir. 1996).  Although in *United HealthCare* the Eighth Circuit questioned, without deciding, whether or to what extent the standard set forth in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), applies in cases involving mandatory rather than permissive fee-shifting statutes, *see* 88 F.3d at 576 n.10, the Eighth Circuit has in other contexts invoked the *Hensley* Court's statement that "[t]he standards set forth in [this] opinion are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party,'" *see Quigley v. Winter*, 598 F.3d 938, 957 n.6 (8th Cir. 2010) (quoting *Hensley*, 461 U.S. at 433 n.7), such that this Court believes it would be most prudent to apply *Hensley* here.

Under *Hensley*, to calculate a reasonable fee award, courts look to the "lodestar" amount, *i.e.*, "the number of hours reasonably expended on the litigation multiplied by a

reasonable hourly rate." *Id.* at 433.  When making this determination, courts may consider the twelve factors identified in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974).[1]  But often, these factors "are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434 n.9.

Hatfield's counsel was retained for this federal lawsuit under a contingency fee agreement that provided for Hatfield to pay all expenses and for Hatfield's counsel to receive a fee of 40% of the award in this case.  *See* Doc. 422-1, ¶ 2.  Accordingly, Hatfield seeks a recovery of $4,589,200.00 in attorney fees from Pirani, which is 40% of the Judgment that was entered in this matter.  However, Hatfield's counsel Mark Henry has also submitted a sworn declaration testifying that a total of 4,694 attorney hours were logged on this federal case.  *See id.* at ¶ 16.  More specifically, Mr. Henry logged 2,266.3 hours, and attorney Otto Bartsch logged 2,427.7 hours.  *Id.*  Mr. Henry has also testified that his standard hourly rate for complex federal litigation is $450–$500, and that Mr. Bartsch's typical hourly rate for complex federal litigation is $350–$400.

The Court notes that these attorneys' practice encompasses litigation in many different geographic areas.  *See id.* at ¶¶ 12 – 14.  But "[a]s a general rule, a reasonable hourly rate is the prevailing market rate, that is, 'the ordinary rate for similar work in the community where the case has been litigated.'"  *Moysis v. DTG Datanet*, 278 F.3d 819,

---

[1] "The twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."  *Hensley*, 461 U.S. at 430 n.3 (1983) (citing *Johnson*, 488 F.2d at 717–19).

828 (8th Cir. 2002) (quoting *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001)). And while the hourly rates that Mr. Henry and Mr. Bartsch typically charge for complex federal litigation are around the median charged for such work in some communities, *see, e.g.*, Doc. 442-1, ¶ 16, it is a little higher than what this Court understands the prevailing market rate to be in northwest Arkansas. Earlier this year, in a different case that was very complex and which resulted in a nine-figure judgment, this Court awarded a rate of $375.00 per hour for partners and $200.00 per hour for associates at the law firms representing the prevailing party in that matter. *See London Luxury, LLC v. Walmart, Inc.*, 2025 WL 965782, at *3 (W.D. Ark. Mar. 31, 2025). Endeavoring to maintain consistency in such matters across this Court's docket, this Court finds that a reasonable hourly rate in the instant case would be $375.00 for Mr. Henry and $300.00 for Mr. Bartsch.

The Court further finds that the number of hours that Mr. Henry and Mr. Bartsch expended on this lawsuit is reasonable and not at all excessive. This was an extremely complex case in a very specialized and complicated area of federal law, brought against ten different defendants, involving conduct occurring not only in several different states but in multiple countries. The case has dragged on for more than three years, and the number of docket entries has swelled to more than 450.

Multiplying these attorneys' logged hours by what this Court has found to be reasonable hourly rates for their work results in a reasonable attorney fee of $849,862.50 for Mr. Henry's time and $728,310.00 for Mr. Bartsch's time, the sum of which is a reasonable attorney fee of $1,578,172.50—the *Hensley* "lodestar." This amount is, of course, significantly less than the 40% contingency fee award of $4,589,200.00 that Hatfield has requested. But "there is a 'strong presumption' that the lodestar figure is

7

reasonable," and that presumption may be overcome only "in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010). Here, the requested fee award, being contingent in nature, is essentially a request that the award be based almost entirely on the quality of counsel's performance and the results obtained. The United States Supreme Court has explained that these factors may occasionally justify enhancing a fee award beyond the lodestar calculation, but that "these circumstances are indeed rare and exceptional, and require specific evidence that the lodestar fee would not have been adequate to attract competent counsel." *See id.* at 554. The quality of Hatfield's counsel's performance was certainly very high, and the results obtained were certainly very impressive. But Hatfield has not presented specific evidence that the lodestar fee of $1,578,172.50 would have been inadequate to attract competent counsel in this area. Accordingly, the Court finds that an attorney fee award of $1,578,172.50 is proper here.

Hatfield has also requested that he be awarded $93,388.40 in costs, which he has itemized in an attachment to his Motion. *See* Doc. 442-2. The Court has examined these line-item requests for reimbursement and finds that they correspond to charges for photocopies, service of process, transcripts, postage, court reporter fees, translation services, preparation of trial or hearing materials, and reasonable travel expenses. Accordingly, the Court will award Hatfield his requested $93,388.40 in costs.

Pirani argues that the amount of fees and costs awarded to Hatfield should be significantly reduced in a proportion to reflect the fact that the Pirani Defendants were only two of the ten defendants in this case, and to reflect Pirani's contention that his role

in the alleged scheme on which Hatfield's claims were based was relatively minor. The Court disagrees. It is certainly true that when, for example, a court is considering a motion for attorney fees in a case that involved some frivolous claims and some non-frivolous claims, it may be appropriate to distinguish fees incurred litigating the frivolous claims from fees incurred litigating the non-frivolous claims. *See, e.g.*, *Fox v. Vice*, 563 U.S. 826, 834–36 (2011). But that is not the situation here. There is no way to meaningfully segregate a portion of Hatfield's expenses in this lawsuit for which Pirani is responsible from a portion for which Pirani is not responsible. Hatfield's allegations in this case—with which the jury agreed—were that Pirani illegally conspired with the other defendants in this lawsuit to injure him. And although it is true that the Pirani Defendants were not named defendants in Hatfield's original Complaint, *see* Doc. 2, and were only added as defendants a month and a half later in Hatfield's First Amended Complaint, *see* Doc. 18, it is also true that Pirani was counsel of record in this lawsuit for Noe Jesus Mancia Polanco—who *was* one of the named defendants in Hatfield's original Complaint. *See* Doc. 15. Indeed, Pirani even filed a Motion to Dismiss (Doc. 16) on Mr. Mancia's behalf before Hatfield filed his First Amended Complaint. So for all practical purposes, Pirani was involved in this lawsuit, and directly causing Hatfield to incur expenses therein, from the beginning—and was doing so in coordination with his codefendants in this matter.

For the foregoing reasons, then, Hatfield's Motion is **GRANTED IN PART AND DENIED IN PART**. Hatfield will be awarded $1,578,172.50 in attorney fees and $93,388.40 in costs from Pirani.

### III.  The Court's Order to Show Cause (Doc. 432)

This Court previously found that Defendant Tony Pirani violated Rule 11(b)(2) of the Federal Rules of Civil Procedure by filing motions in limine that contained citations to nonexistent cases and quotations of nonexistent caselaw passages, and violated this Court's scheduling order by failing to confer with opposing counsel on pretrial submissions.  *See* Doc. 410, pp. 1–3.  Accordingly, the Court entered an Order (Doc. 432) directing Mr. Pirani to show cause why this Court should not impose monetary sanctions against him and refer the matter to the Arkansas Judiciary's Office of Professional Conduct.

In his Response (Doc. 438) to the Court's Show Cause Order, Mr. Pirani states that in June 2024 he contracted a severe medical illness, and that as a result of the lengthy absence from his work that this caused, his business "also suffered tremendous financial change and consequential structural personnel reductions."  *See* Doc. 438, ¶¶ 3–5.  His Response goes on to provide a timeline of how upon following his return to work, missed deadlines compounded and further frustrated his ability to manage his workload effectively.  *See id.* at ¶¶ 6–9, 12–14.  Mr. Pirani asserts that "he did the best he could on any given day in light of the circumstances as they existed at the time," and that his errors were "never for lack of trying, nor out of lack of concern or of respect for this Court, but simply inability and lack of time, despite best efforts."  *See id.* at ¶¶ 10–11.  He argues that financial sanctions are unnecessary because the Court's decision to strike his filings which contained artificial intelligence hallucinations was already a sufficiently severe sanction.  He also argues that it is unnecessary for this Court to refer the matter to the Office of Professional Conduct because he has already self-reported to them.

The Court does not doubt that Mr. Pirani contracted a severely debilitating illness in June of 2024, and that this made it more difficult upon his return to manage his workload than it otherwise would have been. But the Court does not believe this fact excuses or explains Mr. Pirani's filing of materials containing citations to nonexistent cases and quotations of nonexistent caselaw passages in June of 2025, nor his failure to confer with opposing counsel on pretrial submissions in June of 2025. This Court observed Mr. Pirani throughout the weeklong trial of this matter only one month later, and saw that he was capable then of working the same long hours on the same matter that his opposing counsel and this Court and its staff were working. Moreover, and importantly, the docket reflects that missed deadlines were a chronic problem for Mr. Pirani in this case well before he contracted his illness in June of 2024, *see, e.g.*, Doc. 83 (noting a missed deadline on December 27, 2022); Doc. 94 (noting a missed deadline on January 17, 2023); Doc. 306 (noting a missed deadline on December 14, 2023), and continues to be a problem for him up to this very day, *see* Section I of this Opinion and Order, *supra*.

The Court also does not believe the striking of Mr. Pirani's offending pretrial filings was a sufficiently severe sanction, nor even was it much of a sanction at all. The Court did not preclude Mr. Pirani from making objections during trial regarding the matters raised in his offending filings; the Court simply declined to waste time sifting through citations to nonexistent caselaw, separating the wheat from the chaff, in order to make pretrial rulings on these matters. As Plaintiff correctly observes in his Reply (Doc. 439) to Mr. Pirani's Response to this Court's Show Cause Order, Mr. Pirani "identifies no evidence admitted at trial that should have been excluded under those motions. The record shows he had a full and fair opportunity to object, which he did, often citing the same Rules of

11

Evidence . . . as in his motions in limine.  The Court heard and ruled on those objections." (Doc. 439, p. 1).  Nor does this Court believe that the fact Mr. Pirani has self-reported to the Office of Professional Conduct relieves this Court of its own duty to ensure that members of the bar practicing before it adhere to certain minimal ethical standards.

Rule 11 of the Federal Rules of Civil Procedure authorizes courts to sanction attorneys who violate its provisions.  It states that "[a] sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.  The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."  Fed. R. Civ. P. 11(c)(4).  Therefore, in order to deter similar misconduct by Mr. Pirani as well as all other attorneys who practice in this District, the Court believes the following sanctions are appropriate.  First, the Court will impose a $1,000.00 fine on Mr. Pirani, payable to the Clerk of the Court.  However, the Court will not order Mr. Pirani to pay Hatfield the attorney fees and other expenses directly resulting from his violations, as such payment is already encompassed within the lodestar calculation that this Court performed in Section II of this Opinion and Order, *supra*.  Second, Tony Pirani may not enter any new appearances as counsel of record in the Western District of Arkansas until his $1,000.00 fine is paid in full. Third, for a period of two years after his $1,000.00 fine is paid in full, Tony Pirani must associate counsel on all appearances in the Western District of Arkansas, and his co-counsel will be equally responsible to the Court for any missed deadlines or any future

improper conduct by Mr. Pirani.  And fourth, the Court will forward this Opinion and Order and related materials to the Arkansas Judiciary's Office of Professional Conduct.

### IV.  Conclusion

**IT IS THEREFORE ORDERED** that Defendants Tony Pirani's and Pirani Law PA's Renewed Motion for Judgment as a Matter of Law and Motion for New Trial or, Alternatively, Remittitur, and Incorporated Brief in Support and Rule 60(b) Notice (Doc. 445) and Rule 4(a)(5) Motion for Extension of Time to File Notice of Appeal (Doc. 448) are both **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff Jason M. Hatfield, P.A.'s Motion for Attorneys' Fees and Costs (Doc. 442) is **GRANTED IN PART AND DENIED IN PART**. Plaintiff is awarded attorney fees of $1,578,172.50 and costs in the amount of $93,388.40 from Defendants Tony Pirani and Pirani Law PA.

**IT IS FURTHER ORDERED** that Defendants Tony Pirani and Pirani Law PA must pay a sanction of $1,000.00 to the Clerk of the Court.  Tony Pirani may not enter any new appearances as counsel of record in the Western District of Arkansas until his $1,000.00 fine is paid in full.  For a period of two years after his $1,000.00 fine is paid in full, Tony Pirani must associate counsel on all appearances in the Western District of Arkansas, and his co-counsel will be equally responsible to the Court for any missed deadlines or any future improper conduct by Mr. Pirani.

**IT IS SO ORDERED** on this 3rd day of December, 2025.

_____
TIMOTHY L. BROOKS
CHIEF U.S. DISTRICT JUDGE